### IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DANA JENNINGS** | |
| And | |
| **JOSEPH A. FURLONG**, | |
| On their individual behalf and *on behalf of other similarly situated persons*, | Case No.:  5:21-cv-05400-EGS |
| Plaintiffs, | |
| v. | |
| **CARVANA, LLC** | |
| | **JURY TRIAL DEMANDED** |
| Defendant. | |

### AMENDED COMPLAINT - CLASS ACTION[1]

### I.    INTRODUCTION

This is a consumer protection action brought to redress and restrain common law violations as well as other violations under the Pennsylvania Unfair and Deceptive Trade Practices Act against a national used car dealer for its delay in permanently transferring car titles for months and months which it had contractually represented to hold and agreed to transfer. As a result, consumers are often unable to legally drive the cars they purchased because they cannot timely register the car or purchase adequate insurance coverage. In addition, Carvana's failure to timely register cars as it promised and received money to do – sometimes for a period exceeding two (2) years - causes consumers to be questioned and sometimes arrested by law enforcement while driving the temporarily registered cars.

Rather than correct its routine business practice when confronted by its consumer customers, Carvana has resorted to a myriad of dubious excuses for its dilatory conduct including blaming

---

[1]     Attached hereto as **Exhibit 1** is a comparison copy of the changes made from the original complaint.

COVID and administrative logjams caused by state Departments of motor vehicle administration and its third-party vendors to whom Carvana sub-contracts the registration process post-sale.  Other used car dealers have no such problems and Carvana's conduct not only harms the Plaintiffs and similar consumers but also harms Carvana's competitors who are at a competitive disadvantage for having complied with their promises and the law to properly register cars they have sold while Carvana's routine is the opposite.

## II.   PARTIES

1.      Plaintiff, DANA JENNINGS, is an adult individual presently residing at 1825 Penfield St., Philadelphia, PA 19126- 1539 tin Philadelphia County.

2.      Plaintiff, JOSEPH A. FURLONG, is an adult individual presently residing at 3013 Old Nazareth Rd., Palmer Township, PA 18045-2447.

3.      Defendant, CARVANA LLC ("CARVANA") is a Georgia corporation regularly conducting business nationally and in the Commonwealth of Pennsylvania and in the County of Philadelphia. CARVANA is also a licensed used car dealer required to comply with the laws of this Commonwealth.

## III.    JURISDICTIONAL AND VENUE ALLEGATIONS

4.       Based upon the representations of CARVANA when this action was removed, the Court has jurisdiction of this matter pursuant to general diversity under 28 U.S.C. § 1332 and also pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), 1453 ("CAFA"). Doc. 1.  The Court may also exercise supplemental jurisdiction over the claims presented pursuant to 28 U.S.C. § 1367. Should it later be determined that CARVANA's jurisdictional grounds for removal were in error, this action shall be remanded to the state court.  28 U.S.C. § 1447 ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

5.     This Court also has jurisdiction asserted for the claims herein because CARVANA transacts business, performs work in, or provide services in the Commonwealth of Pennsylvania and Philadelphia County in relation to this action and some of the putative class members.  Venue also lies in this judicial district in that the events which gave rise to this claim occurred here and the property which is the subject of the action is situated within this district.

6.     Under the substantive common law of Pennsylvania governing this action, the standard and uniform retail installment contract ("RISC") utilized by CARVANA with each of the Plaintiffs and putative class members constitutes the "entire agreement" and which subsumes any other agreements.  Further, given the facts at issue in this case, the laws of the Commonwealth will adequately protect the Plaintiffs and the putative class members alike since no other jurisdiction in the United States would find CARVANA's conduct and practices subject to this action to be in their interests as confirmed by the various public enforcement actions against CARVANA by government agencies based on the same conduct.

## IV.   <u>FACTUAL ALLEGATIONS</u>

7.     At all times relevant hereto, defendant acted by and through its agents, servants, and employees who acted within the scope of their authority and within the course of their employment or engagement by CARVANA.

8.     At all times relevant hereto, Arizona permits a non-resident to purchase a ninety (90) day non-resident permit, a temporary paper license plate, to allow the individual to drive their vehicle back to the state in which they reside, 28 § 2156.

9.     At all times relevant hereto, Tennessee does not permit renewal thirty (30) days after a temporary tag's issuance, Tenn. Code Ann. § 55-4-115(a)(1)-(2) other than upon the written authorization of the commissioner, but not ever as a subterfuge to avoid registering the vehicle.

10.     At all times relevant hereto, temporary registration plates for newly purchased motor vehicles expire within thirty (30) days of issuance and cannot be re-issued, Pa. Code 67 § 43.12. (c) (1)(C).

11.     Other states besides Arizona, Tennessee, and Pennsylvania have similar restrictions and expectations for the issuance of temporary tags and registrations as described in ¶¶ 8-10.

**A.  Facts Concerning Plaintiff Jenning's Transaction**

12.     On or around December 29, 2020, Plaintiff Jennings purchased online from Defendant a 2017 Kia Sportage, VIN# ending in XXXX2620 (hereinafter referred to as "the Vehicle") by executing a written retail installment contract ("RISC") (attached hereto as **Exhibit 2**) with the following material terms:

    a.  The RISC would be subject to Pennsylvania law.

    b.  The Parties agreed to a $14,990.00 cash sale price;

    c.  CARVANA imposed a State Registration Fee of $38.00;

    d.  CARVANA imposed a License Plate fee of $16.00;

    e.  CARVANA imposed a State Title Fee of $55.00; and

  f.  The RISC constituted the Parties' "entire agreement" and subsumed any other agreements.

13.     Jennings and CARVANA never amended the Jennings RISC by mutual, written agreement and signature.

14.     Shortly after purchase, CARVANA delivered the vehicle with an Arizona temporary license tag to Plaintiff Jenning's residence address in Pennsylvania.

15.     Jennings has performed all of the requirements of his RISC agreement with CARVANA.

16.     After repeated promises in six (6) emails from February through October 2021, CARVANA failed to provide Plaintiff with his permanent registration as it was required to do so pursuant to Plaintiff's payment for such service reflected in the RISC.

17.     Instead, without the legal right or authorization to do so, CARVANA provided plaintiff with six (6) temporary license tags, from the date of sale through the most recently issued one which expired on October 23, 2021, from the Arizona Department of Transportation (2), the Tennessee Department of Revenue (2) and the Commonwealth of Pennsylvania (1).

18.     Upon information and belief, some or all of the temporary plates CARVANA provided were not even issued in plaintiff's name, but rather in the name of CARVANA only.

19.     When it provided the aforesaid improper temporary registrations, CARVANA concealed from the Plaintiff that it was not authorized by either the States of Tennessee or Arizona to do so.  Plaintiff and no other reasonable person would believe that a publically traded entity like CARVANA would operate in violation of the law.

20.     Plaintiff relied upon the RISC and CARVANA's promises to have the vehicle properly registered in the Commonwealth of Pennsylvania as evidenced by her agreements in the RISC, her trade-in of his prior vehicle, and her payments on the purchased vehicle (which included the fees imposed and thereafter collected by CARVANA that are specified in ¶ 12 *supra*).

21.     As of the date of this filing, CARVANA has still not provided Plaintiff permanent registration as it was required to do so pursuant to the RISC and for which Plaintiff paid it to do so.

### B.  Facts Concerning Plaintiff Furlong's Transaction

22.     At all times relevant hereto, Arizona permits a non-resident to purchase a 90-day non-resident permit and a temporary paper license plate, to allow the individual to drive their vehicle back to the state in which they reside, 28 § 2156.

23.     At all times relevant hereto, Tennessee does not permit renewal 30 days after a temporary tag's issuance, Tenn. Code Ann. § 55-4-103(a)(1)-(2).

24.     On or around June 3, 2021, Plaintiff Furlong purchased online from Defendant a 2020 Toyota RAV4, VIN# ending in XXXX5526 (hereinafter referred to as "the Vehicle") by executing a written retail installment contract ("RISC") (attached hereto as **Exhibit C**) with the following material terms:

    a.  The RISC would be subject to Pennsylvania law.

    b.  The Parties agreed to a $33,990.00 cash sale price;

    c.  CARVANA imposed a State Registration Fee of $38.00;

    d.  CARVANA imposed a License Plate fee of $16.00;

    e.  CARVANA imposed a State Title Fee of $55.00; and

    f.  The RISC constituted the Parties' "entire agreement" and subsumed any other agreements.

25.     Furlong and CARVANA never amended the Furlong RISC by mutual, written agreement and signature.

26.     Furlong has performed all of the requirements of his RISC agreement with CARVANA.

27.     CARVANA delivered the vehicle with an Arizona temporary license tag to Plaintiff Furlong's residence address in Pennsylvania.

28.     After the first temporary license tag expired on October 12, 2021, CARVANA failed to provide Plaintiff Furlong with his permanent registration as it was required to do so pursuant to Plaintiff Furlong's payment for such service reflected in the RISC.

29.     Instead, on or about October 7, 2021, without the legal right or authorization to do so, CARVANA provided plaintiff with a new temporary license tag for the duration of thirty (30) days issued by Tennessee's Department of Motor Vehicles. When it provided the improper Tennessee registration, CARVANA concealed from the Plaintiff Furlong that it was not authorized by the State of Tennessee to do so.

30.     Plaintiff relied upon the RISC and CARVANA's promises to have the vehicle properly registered in the Commonwealth of Pennsylvania as evidenced by his agreements in the RISC, his trade-in of his prior vehicle, and his payments on the purchased vehicle (which included the fees imposed and thereafter collected by CARVANA that are specified in ¶ 23 *supra*).

31.     As of December 16, 2022, CARVANA finally provided Plaintiff Furlong permanent registration as it was required to do so pursuant to the RISC and for which Plaintiff paid it to do so.

### C.  CARVANA's Relevant Unlawful Activities in Other State Jurisdictions

32.     In August 2021, the State of North Carolina revoked CARVANA's Raleigh area dealers license for, among other infractions of dealer licensing laws, not delivering vehicle titles to the DMV in a timely manner and improperly issuing out-of-state temporary tags and plates to buyers similarly situated to the Plaintiff who otherwise had no connection to the states from which the temporary tags and plates were issued.

33.     In December 2021, the Florida Department of Highway Safety and Motor Vehicles sent an email to CARVANA, stating that it "remains concerned with CARVANA's apparent inability to comply with the provisions of Florida law requiring a dealer to apply for title within 30 days of the sale and the impact that has on Florida consumers."

34.     The Florida agency's email includes a list of 300 CARVANA vehicle sales with titles that are awaiting transfers, including 100 in Florida, and gives CARVANA a January 31,

2022, deadline before it launches administrative action to suspend CARVANA's Florida dealer license.

35.    Upon information and belief, it is averred that CARVANA's state law compliance policies and practices are such that it routinely issues multiple temporary license tags in violation of state laws governing the issuance of temporary license tags. More specifically, based on public records and media reports, discovery will reveal that CARVANA's records indicate routine repeated generation of temporary license tag reissuances by CARVANA's computer system in connection with sales transactions in the Commonwealth of Pennsylvania and throughout the United States in the same manner and form as what occurred with the Plaintiffs. This belief is based in part on other consumer's experiences and also the administration action taken against CARVANA recently by the State of North Carolina.

36.    Plaintiff Jennings suffered actual damages from CARVANA's aforesaid conduct in that he paid CARVANA fees and charges in the amount of $93.00 for licensing and registration for the vehicle which CARVANA failed to complete.

37.    Plaintiff Furlong suffered actual damages from CARVANA's aforesaid conduct in that he paid CARVANA fees and charges in the amount of $93.00 for licensing and registration for the vehicle which CARVANA failed to complete.

38.    The RISC contains *no* forced arbitration clause.

39.    CARVANA did create a standalone separate document entitled "Arbitration Agreement" purporting to require the Parties to participate in forced arbitration, but this clause is void under the Pennsylvania Motor Vehicles Sales Finance Act ("MVSFA"), 69 P.S. § 613(A) and (B) which requires, respectively, that all retail installment agreements between the parties must be placed

on __one (1)__ document and must be complete as to all material provisions. *Knight v. Springfield Hyundai*, No. 3089 EDA 2012, (Pa. Super. 2012).

      **D.**      **Additional Allegations of CARVANA's Pattern And Practice with Class Members and Others**

**William Stalls**

      40.      On or about January 6, 2021, Stalls, a South Carolina resident employed as a Phlebotomist/Lab Assistant with Mission Hospital, purchased from CARVANA a 2012 Hyundai Sonata, VIN# ending in XXX 391927.

Thereafter, CARVANA issued temporary tags for the vehicle from Georgia, Tennessee, Arkansas, and Arizona.

      41.      While driving with the temporary tags provided by CARVANA without the right to do so, Stalls received a speeding ticket.

      42.      When the officer checked the vehicle's history and realized that Stalls had not permanently registered the vehicle, the officer stated that his record search running the vehicle VIN revealed that the vehicle was still registered to the previous owner.

      43.      Despite Stalls showing the officer his sale paperwork and explaining he was waiting for permanent tags from CARVANA, Stalls was arrested and confined to jail for eight (8) hours before posting bond.

      44.      Since September 4, 2021, Stalls has been unable to insure or drive the vehicle for lack of permanent registration and cannot otherwise dispose of the vehicle by sale or trade for lack of permanent registration caused by CARVANA.

      45.      Stalls confronted CARVANA regarding its failure to issue him a permanent registration and CARVANA blamed the delay on South Carolina's DMV and on its third-party

vendor failing to timely process his registration and to provide specific timing to CARVANA for completion of its processing.

46.     On or about January 11, 2022, while driving with Arizona temporary tags with an expiration date of February 22, 2022, Stalls was stopped by law enforcement and received a citation for lack of permanent registration.

47.     Stalls was also advised by the officer conducting the stop that his database search revealed the temporary tag on his vehicle was issued to CARVANA, not Stalls.

48.     Thereafter, Stalls was once again confined at a police station and ultimately permitted to sign himself out of custody rather than again posting bond.

49.     Stalls is scheduled to appear in a South Carolina Court for both citations.


**Sonya Jackson**

50.     On or about May 24, 2021, Jackson, a Pennsylvania resident, purchased from CARVANA a 2017 Jaguar, VIN # XE 966851. Thereafter, CARVANA issued Jackson temporary tags from Georgia, Pennsylvania, Arizona, and Tennessee.

51.     After the last temporary tag issued by CARVANA expired on October 15, 2021, Jackson has been unable to lawfully drive the vehicle for lack of permanent registration.

52.     Jackson confronted CARVANA regarding its failure to issue her permanent registration and, after repeatedly asking for insurance and other documents it insisted it did not have and those documents being repeatedly resent, CARVANA has most recently responded that it is working with a third-party vendor to complete the registration.


**George Dvorcek**

53.      On or about September 10, 2021, Dvorcek, a Pennsylvania resident, purchased a 2015 Mercedes, VIN# ending in XXX 510475 from CARVANA.

54.      Thereafter, Dvorcek received from CARVANA temporary tags for the vehicle from Pennsylvania and then Arizona, the latter which will expire in March 2022.

55.      Dvorcek has been unable to the vehicle undergo state inspection for lack of permanent registration.

**Zerius Brittain**

56.      On or about July 15, 2021, Brittain, a resident of Texas, purchased from CARVANA a 2015 Mercedes, VIN# ending in XXX 113997.

57.      Thereafter, Brittain received from CARVANA temporary tags from Texas for the vehicle.

58.      After the temporary tags issued by CARVANA expired on September 5, 2021, Brittain has been unable to insure or drive the vehicle for lack of permanent registration.

59.      Brittain confronted CARVANA regarding its failure to issue his permanent registration and Carvana responded that it could not do so because it had to "rebuild" the sales contract into a new contract before agreeing to permanently register the vehicle.

60.      CARVANA advised that the "rebuilt" contract will not contain the same cash price or interest rate for purchase of the vehicle.

**Kelly Burgess**

61.      On or about December 11, 2020, Burgess, a Texas resident, purchased from CARVANA a used 2018 Kia Forte LX, VIN# ending in XXX 164589.

62.     Thereafter, Burgess received temporary tags issued by CARVANA from Arizona and Tennessee.

63.     After the last temporary tag issued by CARVANA expired on August 6, 2021, Burgess was unable to drive the vehicle for lack of permanent registration.

64.     CARVANA stated to Burgess that it could no longer provide any more temporary plates.

65.     After two (2) weeks without use of the vehicle, Burgess took her paperwork to the local tax assessor's office and was able to obtain a Texas temporary tag herself on August 24, 2021.

66.     Burgess renewed the Texas temporary registration two more times until no more Texas temporary tags were allowed for the lifetime of the vehicle.

67.     CARVANA overnighted a check to Burgess for $100.00 to cover the $32.50 charge for each of the three (3) temporary tags.

68.     Before the final Texas temporary tag issued by CARVANA expired on November 24, 2021, CARVANA provided Burgess a 90-day temporary tag issued from Arizona that expires on February 6, 2022.

69.     In or around August 2021, Burgess confronted CARVANA regarding its failure to issue her permanent registration. CARVANA responded that it lost the original title to the vehicle and would have to overnight paperwork to the previous owner in California so that CARVANA could request a duplicate title from California DMV and then use that title to file for Burgess's permanent registration in Texas.

70.     Burgess filed a formal complaint with the Texas DMV regarding CARVANA's failure to provide registration within 45 days of her purchase.

71.     The DMV investigator closed her complaint on October 14, 2021, and notified Burgess that CARVANA was in violation of Texas law.

72.     CARVANA assigned a "Senior Executive Resolution" agent to her registration dispute and was told by CARVANA to only contact the assigned agent via email.

73.     Burgess emailed the agent as instructed, but after September 4, 2021, he stopped responding to her email messages.

74.     CARVANA has otherwise failed to provide any update to her thereafter.

75.     Burgess' Texas state inspection expired December 31, 2021. Texas requires a valid state inspection within 60 days of applying for permanent registration of a vehicle which, after thirteen (13) months, Burgess remains deprived of by CARVANA.

**Terri Burton**

76.     On or about June 1, 2021, Burton purchased from CARVANA a 2017 VW Golf GTI, VIN# ending in XXX 065599.

77.     Thereafter, Burton received temporary tags issued by CARVANA from Texas (2) and Arizona (3) with the last temporary tag set to expire on February 8, 2022, after which Burton will be unable to insure or drive the vehicle for lack of permanent registration.

78.     Burton has confronted CARVANA regarding its failure to issue her permanent registration and CARVANA responded by admitting it didn't have title to the subject vehicle and therefore offered to buy back the vehicle and pay Burton money on top of the buy-back amount conditioned on Burton using the excess funds to purchase another vehicle from CARVANA.

**Christopher Flanders**

79.     On or about September 3, 2021, Flanders, a Missouri resident, purchased from CARVANA a 2015 Chrysler 200, VIN# ending in XXX 507760.

80.     CARVANA promised Flanders delivery of the vehicle by September 7, 2021, but, after being informed by CARVANA on September 13, 2021, that the delivery driver left the vehicle in Florida, CARVANA refunded the $599 delivery fee charged in the sales transaction on September 17, 2021.

81.     Thereafter, CARVANA delivered the vehicle to Missouri with an Indiana state temporary tag bearing an expiration date of October 22, 2021.

82.     On September 18, 2021, Flanders completed all paperwork CARVANA required of him to register his vehicle and returned it by Fed-Ex back to CARVANA.

83.     Flanders confirmed a "K. Mendez" signed for receipt of the aforesaid registration paperwork for CARVANA on September 21, 2021, at CARVANA's corporate office in Tempe AZ.

84.     On October 1, 2021, Flanders received from CARVANA a notice that CARVANA had lost his registration paperwork.

85.     Flanders received a temporary tag from the State of Florida with an expiration date of November 17, 2021.

86.     Thereafter, CARVANA emailed Flanders an Arizona temporary tag which expires on February 12, 2022, and told Flanders in the email that his vehicle's Missouri Inspection and Odometer reading expired on February 18, 2021, and that it would give Flanders $500.00 to obtain a new one and send it to CARVANA.

87.     After the thirty (30) day period to title and register his vehicle had passed, Flanders telephoned "Tyler" at CARVANA to request it send him the title and registration paperwork in order to title and register the vehicle himself.

88.     CARVANA denied Flanders' request stating that it is illegal in his resident state of Missouri to self-register the vehicle.

89.     On November 20, 2021, Flanders called the Missouri DMV and was told it was <u>not</u> illegal to register the vehicle and that there was no record of CARVANA having attempted to title or register his vehicle in the state of Missouri and that, on September 24, 2021, CARVANA had titled the vehicle in Arizona under its name at its corporate address and was given a title number.

90.     On or about November 21, 2021, Flanders called the Arizona DMV in an attempt to get a copy of the title and was told that he could not because the vehicle was titled to CARVANA.

91.     To date, CARVANA has failed to title and register the vehicle permanently in Flanders' name as promised by CARVANA in the sale contract.

**Gerald Hawthorne**

92.     On or about September 2, 2020, Hawthorne, a Louisiana resident, purchased from CARVANA a 2013 Mercedes Benz E class, VIN# ending in XXX 768031.

93.     Thereafter, Hawthorne received temporary tags issued by CARVANA from Arizona (3x), Tennessee, and Ohio (2x).

94.     Hawthorne has been stopped by police while driving the vehicle on three (3) occasions:

a.     In Plain Dealing, LA, where the officer expressed that CARVANA failing to register vehicles was a widespread issue;

b.     In Arkansas; and,

c.     In Cullen, LA, when, after being stopped, the officer had Hawthorne call CARVANA on his cell phone and the CARVANA "advocate" who responded stated that CARVANA didn't yet have title to the vehicle and was having trouble obtaining it.

95.     Hawthorne fears driving the vehicle for lack of permanent registration given his past experiences.

96.     Hawthorne has repeatedly confronted CARVANA regarding its failure to issue him permanent registration and CARVANA has promised numerous times to deliver permanent registration but has failed to do so despite more than one (1) year passing since its purchase.

**Stuart Sendlebach**

97.     On or about September 20, 2021, Sendlebach purchased from CARVANA a 2016 Subaru Crosstrek, VIN# ending in XXX 298509.

98.     Thereafter, Sendlebach received temporary tags issued by CARVANA from Texas and Arizona the last of which expires on February 10, 2022.

99.     Sendlebach has confronted CARVANA regarding its failure to issue him permanent registration and CARVANA replied that the delays in Sendlebach gaining registration were due to COVID

100.    Contrary to CARVANA's aforesaid COVID delay explanation, Sendlebach had purchased another vehicle from a brick-and-mortar automobile dealer on or around the same time as the CARVANA purchase and received permanent registration within three (3) weeks of the purchase date prior to the expiration of the first temporary tag.

**Javier Snowbeck**

101.    On or about July 22, 2021, in Las Vegas, Nevada, Snowbeck purchased a 2013 Toyota Corolla, VIN# ending in XXX105237 from CARVANA.

102.    Thereafter, Snowbeck received temporary tags issued by CARVANA from Arizona (1x) and from Georgia (2x).

103.    On or about September 2021, CARVANA required Snowbeck to get a smog test because the one it had on file expired.

104.    Snowbeck's Insurance policy is set to expire on January 15, 2022.

105.    CARVANA advised Snowbeck that it can't process his permanent registration because it takes 32 days to do so which is beyond the time his aforesaid insurance expiration date.

106.    Snowbeck confronted CARVANA regarding its failure to issue him permanent registration and CARVANA responded it needed an extension on his insurance policy before they can proceed with the registration process.

**Tina Biller**

107.    On or about August 13, 2021, Biller, an Indiana resident, purchased from CARVANA a 2011 BMW 1 series convertible, VIN# ending in XXX 77959.

108.    Thereafter, Biller received temporary tags issued by CARVANA from Indiana and Arizona.

109.    The Arizona temporary tag which Biller received was not lawful because Indiana law requires permanent registration of a vehicle within forty-five (45) days of its purchase.

110.    After the last temporary tag expired on September 24, 2021, Biller was unable to insure or drive the vehicle for lack of permanent registration.

111.    On October 24, 2021, CARVANA advised Biller that it sent her registration paperwork to its Third-Party Vendor.

112.    CARVANA advised Biller that it couldn't process her permanent registration because it takes thirty-two (32) days to do so which is beyond the time her insurance will expire.

113.    Biller has confronted CARVANA regarding its failure to issue her permanent registration and Carvana responded by offering her reimbursements for Uber ride share while

accusing the BMW dealer from whom CARVANA allegedly purchased the vehicle for the registration delay.

**Todd Birmann**

114.    In March 2021, Birmann, a North Carolina resident, purchased from CARVANA a 2016 BMW 428i, VIN# ending in XXX 226039.

115.    Thereafter, Birmann received seven (7) temporary tags issued by CARVANA from various states including Tennessee (multiple) and Florida (current expired tag).

116.    After the last temporary tag expired in September 2021, Birmann has been unable to insure or drive the vehicle for lack of permanent registration. Birmann has confronted CARVANA regarding its failure to issue him permanent registration and Carvana has responded that "this is part of the contract rebuild."

117.    Birmann does not understand why there is any problem with the sale contract he signed with CARVANA and is currently without permanent registration.

**Kimberly & James Carroll**

118.    On or about August 21, 2021, the Carrolls, New Hampshire residents, purchased from CARVANA a 2018 Audi Q5, VIN # ending in XXX 23114.

119.    The Carrolls received a temporary tag from Georgia which expired on September 30, 2021, and then CARVANA sent to the Carrolls a second temporary tag issued from Arizona.

120.    On or about November 23, 2021, the Carrolls finally received New Hampshire permanent Registration for the vehicle.

121.    As of December 22, 2021, despite numerous conversations between the Carrolls and CARVANA, CARVANA has not yet sent the Carrolls a vehicle title listing Digital Federal Credit Union ("DFCU"), assignee of the CARVANA RISC, as the primary lienholder.

122.    As a result of not receiving vehicle title listing it as the lienholder, DFCU has declared the Carrolls' loan in default.

123.    In New Hampshire, residents are allowed to register their own vehicles, but CARVANA required the Carrolls to go through its service to register the vehicle and charged them a total of $705.90 when the registration cost was actually only a total of $187.00.

**Jeffrey Harris**

124.    On May 27, 2021, Harris, an Indiana resident, purchased from CARVANA a 2015 Chevy Camaro, VIN# ending in XXX 842995.

125.    CARVANA issued to Harris three (3) temporary tags for Kentucky, Arizona, and Tennessee with the last temporary tag being issued on December 10, 2021, with a 90-day expiration date.

126.    Harris confronted CARVANA many times by telephone and CARVANA responded variously that there was an issue with its "third party vendor" or that it was otherwise "working on it".

127.    Harris has not obtained permanent registration of his vehicle.

**Robert Jennis**

128.    On or about July 2020, Jennis, a resident of Florida, purchased from CARVANA a 2017 Jeep vehicle, VIN# ending in XXX 637291.

129.    Thereafter, Jennis received three (3) temporary tags issued by CARVANA from various states including Arizona.

130.    After one of the temporary tags expired, Jennis was unable to drive the vehicle for lack of permanent registration until CARVANA finally issued permanent tags to Jennis in December 2020.

**Brandon Johnson**

131.    On or about December 26, 2020, Brandon Johnson, a resident of Georgia, purchased from CARVANA a 2015 Chevy Cruze, VIN# ending in XXX 228934.

132.    Thereafter, Johnson received from CARVANA temporary tags from Alabama, Arizona (3x) North Carolina, Tennessee (3x), and from South Carolina.

133.    When Johnson previously confronted CARVANA regarding its failure to issue him permanent registration, CARVANA responded that COVID was delaying the title registration process.

134.    After his last temporary tag expired in October 2021, CARVANA advised Johnson that it could not provide him title to the vehicle and that, instead, Johnson, despite wanting to retain the vehicle, but exhausted by the year plus long dispute, returned the CARVANA to Carvana in exchange for a refund of the ten (10) $290.00 payments made under the sale/financing agreement for the vehicle.

**Brandon Boucher**

135.    On or about July 3, 2021, Brandon Lee Boucher, a resident of Michigan, purchased from CARVANA a 2016 Nissan LEAF, VIN# ending in XXX 305696.

136.    Thereafter, Johnson received from CARVANA temporary tags from Michigan (2x) and Arizona.

137.    After his Arizona temporary tag expired, Boucher has been unable to use the vehicle for lack of permanent registration.

**William Walker**

138.    On or about August 25, 2021, Walker purchased from CARVANA a 2013 Lexus ES, VIN# ending in 064940.

139.    Thereafter, Walker received temporary tags issued by CARVANA from Florida (3x) and from Arizona.

140.    In or around December 2021, Walker confronted CARVANA regarding its failure to issue him permanent registration after the last temporary tag expired and CARVANA unwound the transaction for the vehicle.


**Christopher James Budny**

141.    On or about May 4, 2021, Budny, a Pennsylvania resident, purchased from CARVANA a 2018 Mazda CX-5 vehicle, VIN# ending in XXX 302289.

142.    Thereafter, Walker received temporary tags issued by CARVANA from Tennessee (2 times), Arizona (2), and from New Jersey (1).

143.    Budny has confronted CARVANA multiple times regarding its failure to issue him permanent registration and CARVANA has responded that it is no longer allowed to provide temporary tags at this time.

144.    On or around October 30, 2021, CARVANA reached out to Budny to offer to buy the car back from Budny, or trade it in for another similar vehicle. Budny refused that offer.

145.    Thereafter, CARVANA issued another temporary operating tag.

146.    Budny currently has still not received permanent registration to his vehicle.

**Dena Devlin**

147.    On or about June 4, 2021, Devlin, an Arkansas resident, purchased a 2019 VW Jetta, VIN# ending in XXX 138144, from CARVANA.

148.    Thereafter, Devlin received temporary tags issued by CARVANA from various states including Arizona.

149.    After the temporary tags expired in early October 2021, plaintiff was unable to insure or drive the vehicle for lack of permanent registration until roughly mid-October when it was finally registered.

150.    Devlin confronted CARVANA regarding its failure to issue her permanent registration and CARVANA responded that the delay was:

"…because the registration process is so dependent on state DMVs, it's really difficult for [Carvana] to provide an accurate timeline of how long the process will take", and, explaining further;

"These deals are kept with a third-party vendor until the DMV actually accepts your packet for processing. Once the DMV actually accepts your packet for processing they will complete it all at once."

151.    Devlin responded to CARVANA after 3 months of not having permanent registration that:

"The DMV said Arkansas only allows 30 days to register a vehicle and then they start charging penalties."

152.    CARVANA sent Devlin two (2) separate checks in the amount of $250.00 under the stated pretext of compensating her for the aforesaid registration delays.


**Ollie Hoops**

153.    On or about June 2021, Hoops, a Texas resident, purchased from CARVANA a 2018 Land Rover, VIN# ending in XXX 777251.

154.    Thereafter, Hoops received temporary tags from Arizona which have since expired.

155.    Hoops' has not received permanent registration to his vehicle leaving him unable to currently use the vehicle.

**Jeffrey Williams**

156.    On or about August 18, 2021, Williams, a Nevada resident, purchased from CARVANA a 2019 Kia Optima, VIN# ending in XXX 295931.

157.    Thereafter, Williams received temporary tags issued by CARVANA from Georgia and Arizona.

158.    Due to the delay in receiving permanent registration to his vehicle, Williams filed a complaint with the Better Business Bureau.

159.    CARVANA responded by stating:

Mr. Williams … sent CARVANA the Limited Power of Attorney documentation on August 23, and after the 7-Day Money Back Guarantee, the registration process began.

After reviewing the paperwork, we submitted the documentation to the third-party vendor on August 31. The third-party vendor submitted the registration documentation to the Department of Motor Vehicles (DMV) on September 8.

The temporary operating plate initially provided to Mr. Williams expired, so we issued a second Arizona temporary operating plate that will remain valid for ninety days. Our

dealer license restricts which states can obtain temporary operating plates, **so we created an Arizona temporary operating plate**.

Carvana apologizes for the inconvenience caused to Mr. Williams. At this time, we are not providing Mr. Williams the option to return or exchange his vehicle. Once the DMV completes the registration, his license plates and registration will be sent via FedEx. If he has any questions or concerns, we encourage him to contact Carvana at the number below.

(emphasis added).

160.    In November 2021, Williams received permanent registration to his vehicle leaving him unable to currently use the vehicle.


**Janice Anderson**

161.    On or about January 19, 2021, Anderson, a Delaware resident, purchased from CARVANA a 2013 Infiniti G, VIN# ending in XXX 588030.

162.    Thereafter, Anderson received numerous temporary tags issued by CARVANA from various states including Pennsylvania and Arizona, but she has still not received permanent registration of the vehicle.


**Leann Anderson**

163.    On or about October 23, 2021, Anderson, a Utah resident, purchased from CARVANA a Hyundai Elantra GT, the Last 6 of VIN#: 302014 .

164.    Thereafter, Anderson received temporary tags from Georgia.

165.    After the temp tags expired on December 9, 2021, Anderson received another temporary tag with an expiration date in March 2022.

166.    Anderson has been unable to insure or drive the vehicle for lack of permanent registration.

167.    Anderson confronted Carvana regarding its failure to issue her permanent registration and Carvana responded that it is actively working on completing the final step in registering the vehicle and apologized for the delay.

## III.    Class Action Allegations

168.    The allegations above are re-alleged and incorporated herein by reference.

169.    This action is properly brought on behalf of a class of similar persons, pursuant to Fed. R. Civ.P. 23(a) and 23(b).  The prerequisites Fed. R. Civ.P. 23 can be met by the following proposed class action proposing the following class, subject to amendment:

a.    **Nationwide Title Class:**  All persons in the United States east of the Mississippi River who entered into contracts with CARVANA to purchase vehicles since November 5, 2019, and CARVANA agreed to provide car registration services with non-temporary and permanent vehicle registrations in the state of their residence.

b.    **Pennsylvania Title Class**:  All persons from the Commonwealth of Pennsylvania who are members of the Nationwide Class.

170.    Plaintiffs both qualify as a member of each of the proposed classes in the preceding paragraph.

171.    Excluded from each of the putative classes are any person who falls within the definitions if the person is (i) an employee or independent contractor of CARVANA; (ii) a relative of

an employee or independent contractor of the CARVANA; or (iii) an employee of the Court where this action is pending. Excluded from the Pennsylvania Title Class are any persons were purchased vehicles from CARVANA in the Commonwealth of Pennsylvania for business purposes.

172. The proposed class definitions in ¶ 163 as limited by ¶ 165 may be amended or modified from time to time.

173. The particular members of the (i) **Nationwide Title Class**, and (ii) **Pennsylvania Title Class**, (collectively referred to "**Proposed Classes**") are capable of being described without difficult managerial or administrative problems. The members of the putative classes are also readily identifiable from the information and records in the possession or control of the Defendant or its affiliates and agents, and from public records. CARVANA is required by the laws governing its practices to keep records of all temporary vehicle registration tags issued by it during the class period and also to retain records of all permanent vehicle registrations it acquires on behalf of its customers.

174. The Proposed Classes are sufficiently numerous and exceed more than fifty persons each, such that individual joinder of all members is impractical. This allegation is based on a publically filed data disclosed by CARVANA's public filings. CARVANA has also alleged in its Notice of Removal to this Court (Doc. 1 at ¶¶ 9-10) that the Proposed Classes "give the information available to Carvana shows that, from November 5, 2019 through November 5, 2021, more than 100 people in the states east of the Mississippi River (including more than 100 persons in the Commonwealth of Pennsylvania) entered into contracts to purchase vehicles and paid certain fees related to registration, title, and/or licenses." Doc. 1 at ¶ 10.

175. The Proposed Classes are so numerous that joinder of all members is impracticable as the sheer number of cases would clog the court systems and other forums—especially given the delays to judicial proceedings caused by the COVID-19 pandemic.

176.     There are questions of law and fact common to the Proposed Classes which predominate over any questions affecting only individual members of the putative class and subclass. The wrongs alleged against Defendant by the members of the Proposed Classes and the remedies sought by Named Plaintiffs and the putative class members against CARVANA are identical—i.e. the return of "fees related to registration, title, and/or licenses" (Doc. 1 at ¶ 10) paid to CARVANA and appropriate injunctive relief to require CARVANA to obtain permanent registration tags for the putative class members within thirty days who have not yet received them.

177.     The Proposed Classes meet the requirements of Fed. R. Civ.P. 23 relating to classes that seek monetary relief as the common issues identified above are also the predominant issues in this action in that the common issues related to the members of the Proposed Classes and include, but are certainly not limited to:

    a.   Whether CARVANA breached its contracts by failing to provide the agreed upon non-temporary automobile registrations agreed to with the class members;

    b.   Whether CARVANA had the right to issue temporary registrations from the States other than class members' legal residence to the class members' vehicles when the transaction did not concern vehicles purchased from or sold to class members from outside their state of residence; and

    c.   Whether CARVANA's conduct was unfair, unconscionable, or constituted unfair competition;

    d.   Whether CARVANA is liable to the class members for the damages and losses, including nominal damages, in the form of the fees agreed upon for the services not reasonable provided.

178.    CARVANA's defenses (which defenses are denied) would be typical or identical for each of the member of the Proposed Classes and will be based on the same legal and factual theories.

179.    Certification of the Proposed Classes is appropriate as to the members of the Proposed Classes in that common questions predominate over any individual questions and a class action is superior for the fair and efficient adjudication of this controversy.

180.    A class action will cause an orderly and expeditious administration of claims by the members of the Proposed Classes and economies of time, effort and expenses will be fostered and uniformity of decisions will be insured.

181.    The only individual questions concern the identification of members of the Proposed Classes. This information can be determined by a ministerial examination of public records or from CARVANA's business records or other sources including those from the state agencies, which are admissible as an exception to the hearsay rule and as a statement by a party or qualify as government records to which the Court may take judicial notice.

182.    The Named Plaintiffs' class claims are typical of the claims of the members of the Proposed Classes since they are based on and arise out of identical facts constituting the wrongful conduct of the CARVANA (directly and indirectly).

183.    Plaintiffs will also fairly and adequately represent and protect the interests of the Proposed Classes. They are similarly situated with, and have suffered similar injuries as, the Proposed Classes they propose to represent. Plaintiffs do not have any interests which might cause them not to vigorously prosecute this action or are otherwise adverse to the interests of the members of the Proposed Classes. They feel that they and the putative class members have been

wronged wish to obtain redress of the wrong, and want CARVANA stopped from failing to comply with its mandatory duties that form the basis of the class claims.

184.    Plaintiffs have also hired attorneys who meet the criteria of Fed. R. Civ.P. 23 as they can adequately represent the classes since they are experienced attorneys with substantial class action experience and focus their practices in the areas of consumer law. Plaintiffs and counsel have adequate financial resources to assure that the classes will not be harmed.

185.    The Proposed Class members have suffered actual damages, losses, and harm similar to those sustained by the Plaintiffs.

186.    The Proposed Class members are also entitled to injunctive relieve to require CARVANA to comply with its promises to obtain permanent vehicle registrations for the members of the Proposed Classes.

## PATTERN AND PRACTICE

187.    The allegations regarding the additional victims set forth herein are pleaded in accordance with case law and Pa.R.E. 404(b)(2) to demonstrate CARVANA's motive, knowledge, notice, plan, scheme and the absence of mistake or accident, and to demonstrate the propriety of exemplary damages under the UTPCPL. Pa.R.E. 404(b)(2) ("[e]vidence of other crimes, wrongs, or acts may be admitted [into evidence] for other purposes, such as proof of **motive**, opportunity, **intent**, **preparation**, **plan knowledge**, identity or **absence of mistake or accident**.") (emphasis added). These allegations also substantiate and support the Plaintiffs' claim(s) for punitive and/or exemplary damages.

188.    CARVANA is a repeat offender.

189.    CARVANA has engaged in a pattern and practice of fraud and deceit and have defrauded and deceived and harmed numerous consumers.

## IV.      CAUSES OF ACTION

### COUNT I - BREACH OF CONTRACT

**(CLASS CLAIM ON BEHALF OF THE NATIONWIDE TITLE CLASS AND THE PENNSYLVANIA TITLE CLASS)**

190.      Plaintiffs incorporate the preceding paragraphs herein. This claim is brought on behalf of the Plaintiff individually and on behalf of the Nationwide Title Class and the Pennsylvania Title Class members.

191.      As described herein, Plaintiffs, theNationwide Title Class, and the Pennsylvania Title Class members formed contracts with CARVANA.

192.      Every contract imposes the duty of good faith and fair dealing upon the parties in performance and enforcement of the contract.

193.      An express and/or implied term of the contracts between the Plaintiffs, the Nationwide Title Class, and the Pennsylvania Title Class members, is thatCARVANA agreed that the sale was being conducted in compliance with all laws and regulations governing such sales.

194.      By failing to permanently license and register the vehicles properly in the fees it charged and collected from the Plaintiffs, the Nationwide Title Class, and the Pennsylvania Title Class members, Defendant CARVANA failed to conduct the sale of the vehicles to the Plaintiffs and class members in compliance with all laws and regulations governing such sales and it improperly issued temporary registrations from various states including Arizona and Tennessee without the right to do so since, under both Arizona and Tennessee law, it could not issue temporary vehicle registrations to vehicles with no nexus to the States of Arizona and Tennessee in the sales transaction.

195.      By its aforesaid conduct, Defendant CARVANA breached the terms of the contracts it had with the Plaintiffs, the Nationwide Title Class, and the Pennsylvania Title Class members, including any implied or express warranties therein, and acted in bad faith.

196.    Defendant CARVANA has wrongfully, recklessly, and/or intentionally breached the duty of good faith by denying Plaintiffs and the Nationwide Title Class and the Pennsylvania Title Class members the benefits to which they bargained and paid for in their sales contracts.

197.    Defendant CARVANA's breaches of the covenant of good faith and fair dealing have proximately and directly caused damages to Plaintiffs, the Nationwide Title Class, and the Pennsylvania Title Class members.

## COUNT II - UNFAIR TRADE PRACTICE CONSUMER PROTECTION LAW ("UTPCPL")

### (CLASS CLAIM ON BEHALF OF THE PENNSYLVANIA TITLE CLASS)

198.    Plaintiffs incorporate the preceding paragraphs herein. This claim is brought on behalf of the Plaintiffs individually and on behalf of the Pennsylvania Title Class members.

199.    The used motor vehicle sales practices described herein related to Defendant constitute trade and commerce under the UTPCPL, 73 P.S. §201-2(3).

200.    The UTPCPL, 73 P.S. §§201-2(4) prohibits unfair or deceptive trade practices in the sale of goods such as used motor vehicle sales as provided by CARVANA, and also prohibits unfair or deceptive trade practices in the sale or provision of such services as described in this action.

201.    Plaintiffs and the Pennsylvania Title Class members purchased their vehicles for personal, family, and/or household purposes.

202.    CARVANA by its acts or omissions described herein, made materially false, misleading oral or written statements or other representations, directly and indirectly through authorized agents and employees, including but not limited to the following:

    e.   Imposing and collecting car registration fees for which it did not perform the agree upon service and/or utilized an unfair and deceptive practice of issuing temporary registrations from the States of Arizona and Tennessee without the right to do so.

203.    Plaintiffs suffered an ascertainable loss of money by payment of the title/registration and transit fees described herein.

204.    As a licensed installment seller CARVANA knew or should have known prior to making the sales to Plaintiffs and Pennsylvania Title Class members the laws governing the transactions.

205.    CARVANA's routine business practices subject to this claim disregarded the laws governing the transaction.

206.    No reasonable person would assume that a licensed installment seller like CARVANA would violate the laws governing its activities. Plaintiffs and the Pennsylvania Title Class members justifiably relied on CARVANA's acts and omissions by believing the fees charged to them were lawful and bona fide and they paid the fees as further evidence of that reasonable reliance.

207.    By the aforesaid misrepresentations and others referenced herein, these misrepresentations and omissions had the capacity, tendency, or effect of deceiving or misleading the plaintiff to purchase the subject vehicle in violation of the UTPCPL by, including but not limited to causing a likelihood of confusion or misunderstanding as to the propriety of the registration fee, all in violation 73 P.S. § 201-1(4)(xxi).

**208.**    By its deceptive conduct towards plaintiff as described above, CARVANA is strictly liable to Plaintiffs and the Pennsylvania Title Class members for damages they incurred.

## **PRAYER FOR DAMAGES**

WHEREFORE, Plaintiffs request that the Court grant judgment against the Defendant as follows:

A.  Certifying this action as a Class Action with the Proposed Classes as defined above and with Plaintiffs as the representative of the Proposed Classes and their Counsel as Class Counsel;

B.  Awarding Plaintiffs and the members of the Proposed Classes appropriate actual damages under the legal theories alleged herein together with pre-judgment interest;

C.  Ordering Defendant to pay treble damages to the Plaintiffs and the members of the Pennsylvania Title Class under the UTPCPL;

D.  Ordering Defendant to pay costs, penalties, and attorney's fees;

E.  Granting such other relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Respectfully Submitted,

*/s/Robert  P. Cocco*
ROBERT P. COCCO, P.C.
Pa. Id. No. 61907
1500 Walnut Street, Suite 900
Philadelphia, PA 19102
215-351-0200
bob.cocco@phillyconsumerlaw.com

*/s/ Phillip Robinson*
Phillip Robinson, Attorney
*Pro Hac Vice pending*
CONSUMER LAW CENTER LLC
10125 Colesville Road, Suite 378
Silver Spring, MD  20901
Phone (301) 448-1304
Email: phillip@marylandconsumer.com

Dated:  January 13, 2022                   ***Attorney for Plaintiffs and the Putative
                                           Classes***


## Certificate of Service

I hereby certify that a copy of the foregoing and the attached exhibits were sent

through the Court's CM/ECF system to counsel for the Defendant when filed with the Court.

                                      */s/Robert  P. Cocco*
                                      Robert P. Cocco