**IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DANA JENNINGS and JOSEPH A. FURLONG, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>CARVANA, LLC,<br><br>    Defendant. | Case No. 5:21-cv-05400<br><br>Hon. Edward G. Smith |

**MEMORANDUM OF LAW IN SUPPORT OF CARVANA, LLC's MOTION TO
<u>COMPEL ARBITRATION AND TO DISMISS</u>**

Paul G. Gagne (Pennsylvania ID No. 42009)
pgagne@kleinbard.com
KLEINBARD LLC
Three Logan Square
Philadelphia, PA 19103
Telephone:  (215) 523-5302

Eric Leon (New York Bar No. 2626562) (Admitted *Pro Hac Vice*)
eric.leon@lw.com
Marc S. Werner (New York Bar No. 5301221) (Admitted *Pro Hac Vice*)
marc.werner@lw.com
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
Telephone:  (212) 906-1200

Robert C. Collins III (Illinois Bar No. 6304674) (Admitted *Pro Hac Vice*)
robert.collins@lw.com
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL  60611
Telephone:  (312) 876-7700

January 28, 2022                                  *Attorneys for Defendant Carvana, LLC*

**<u>TABLE OF CONTENTS</u>**

INTRODUCTION ........................................................................................................1

FACTUAL BACKGROUND .......................................................................................2

      A.     The Fees At Issue Are Governed By Contracts That Contain An
             Arbitration Provision ...................................................................................2

      B.     Plaintiffs Waived The Right To File Class Litigation Or To Proceed In A
             Representative Capacity...............................................................................4

      C.     Plaintiffs Filed A Class Action Complaint In Court Despite Their Express
             Agreements to Submit Their Claims To Individual Arbitration ...........................5

ARGUMENT .............................................................................................................6

I.      THE COURT SHOULD ENFORCE PLAINTIFFS' AGREEMENTS TO
       ARBITRATE THEIR INDIVIDUAL CLAIMS ...................................................6

      A.     Plaintiffs And Carvana Entered Into Valid, Written Agreements To
             Arbitrate .....................................................................................................7

      B.     This Dispute Falls Within The Scope Of The Arbitration Agreements...................8

      C.     Plaintiffs Must Arbitrate Their Disputes On A Non-Class Basis ..........................9

      D.     Pennsylvania Law Does Not Bar The Enforcement Of Plaintiffs'
             Agreements To Arbitrate On A Non-Class Basis ...............................................10

II.     IN THE ALTERNATIVE, THE COMPLAINT SHOULD BE DISMISSED FOR
      FAILURE TO STATE A CLAIM .......................................................................13

      A.     Plaintiffs' Breach Of Contract Claims Should Be Dismissed For Failure
             To Allege A Breach Of Any Term In The RISCs ...............................................13

      B.     Plaintiffs' UTPCPL Claims Should Be Dismissed For Multiple Reasons ............15

CONCLUSION..........................................................................................................17

# TABLE OF AUTHORITIES

## CASES

*Angino v. Wells Fargo Bank, N.A.*,
    666 F. App'x 204 (3d Cir. 2016) ................................................................. 13, 14

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..................................................................................... 13

*AT&T v. Concepcion*,
    563 U.S. 333 (2011) ................................................................................... 6, 12

*Bankston v. RES-GA Twelve, LLC*,
    779 S.E.2d 80 (Ga. App. 2015) ..................................................................... 14

*Bell Atlantic v. Twombly*,
    550 U.S. 544 (2007) ..................................................................................... 13

*Berkery v. Cross Country Bank*,
    256 F. Supp. 2d 359 (E.D. Pa. 2003) ........................................................... 8, 9

*Brayman Constr. Corp. v. Home Ins. Co.*,
    319 F.3d 622 (3d Cir. 2003) .......................................................................... 6, 8

*Brooks v. Branch Banking & Tr. Co.*,
    107 F. Supp. 3d 1290 (N.D. Ga. 2015) ............................................... 13, 14, 15

*Brown v. City of Phil.*,
    2010 WL 4484630 (E.D. Pa. Nov. 9, 2010) ................................................. 8, 11

*Dean Witter v. Byrd*,
    470 U.S. 213 (1985) ........................................................................................ 6

*Downs v. Andrews*,
    639 F. App'x 816 (3d Cir. 2016) ..................................................................... 16

*eToll, Inc. v. Elias/Savion Advert., Inc.*,
    811 A.2d 10 (Pa. 2002) .................................................................................. 16

*Fallon v. Mercy Cath. Med. Ctr. of Se. Pa.*,
    877 F.3d 487 (3d Cir. 2017) ............................................................................. 2

*Friedman v. Yula*,
    679 F. Supp. 2d 617 (E.D. Pa. 2010) .............................................................. 11

*Gay v. CreditInform*,
    511 F.3d 369 (3d Cir. 2007) ........................................................................... 10

*Generational Equity LLC v. Schomaker*,
   602 F. App'x 560 (3d Cir. 2015) ........................................................ 12

*Homa v. Am. Express Co.*,
   494 F. App'x 191 (3d Cir. 2012) ..................................................... 6, 9

*Hopkins v .GNC Franchising, Inc.*,
   2006 WL 2266253 (W.D. Pa. Jan. 13, 2006) ...................................... 15

*Hrapczynski v. Bristlecone, Inc.*,
   2021 WL 3209852 (E.D. Pa. July 29, 2021) ........................................ 2

*Huegel v. Contstr. Co., Inc.*,
   796 A.2d 350 (Pa. Super. 2002) ......................................................... 7

*Hunt v. U.S. Tobacco Co.*,
   538 F.3d 217 (3d Cir. 2008) ............................................................. 16

*In re Remicade (Direct Purchaser) Antitrust Litig.*,
   938 F.3d 515 (3d Cir. 2019) ............................................................... 6

*Ins. Co. v. Kinsale Ins. Co.*,
   253 F. Supp. 3d 796 (E.D. Pa. 2017) ............................................... 11

*Kahn v. Option One Mortg. Corp.*,
   2006 WL 156942 (E.D. Pa. Jan. 18, 2006) .......................................... 8

*KBZ Commc'ns Inc. v. CBE Techs. LLC*,
   634 F. App'x 908, 911 (3d Cir. 2015) ............................................... 17

*Kemezis v. Matthews*,
   394 F. App'x 956 (3d Cir. 2010) ...................................................... 15

*Knight v. Springfield Hyundai*,
   81 A.3d 940 (Pa. Super. 2013) .................................................... 10, 11

*LaSonde v. CitiFinancial Mortg. Co., Inc.*,
   614 S.E.2d 224 (Ga. App. 2013) ...................................................... 11

*Lorah v. SunTrust Mortg., Inc.*,
   2010 WL 5342738 (E.D. Pa. Dec. 17, 2010) ..................................... 15

*Mitsubishi v. Soler*,
   473 U.S. 614 (1985) ........................................................................... 6

*Nelson v. Gobrands, Inc.*,
   2021 WL 4262325 (E.D. Pa. Sept. 20, 2021) ...................................... 9

*Pan Pac. Aviation, Inc. v. Premier Aircraft Sales, Inc.*,
    2010 WL 11601001 (N.D. Ga. Jan. 6 2010) ........................................................... 7

*Parks IP Law, LLC v. Wood*,
    755 F. App'x 884 (11th Cir. 2018) ............................................................... 7, 8, 9

*Pendergast v. Sprint Nextel Corp.*,
    592 F.3d 1119 (11th Cir. 2010) .......................................................................... 9

*Quilloin v. Tenet HealthSys. Phil., Inc.*,
    673 F.3d 221 (3d Cir. 2012) ......................................................................... 6, 12

*Richardson v. Coverall N. Am., Inc.*,
    811 F. App'x 100 (3d Cir. 2020) ........................................................................ 6

*Sanford v. Bracewell & Guiliani, LLP*,
    618 F. App'x 114 (3d Cir. 2015) .................................................................... 6, 11

*Schwartz v. Comcast Corp.*,
    256 F. App'x 515 (3d Cir. 2007) ........................................................................ 7

*Sheinman Provisions, Inc. v. Nat'l Deli, LLC*,
    2008 WL 2758029 (E.D. Pa. July 15, 2008) .................................................... 14, 15

*Sofran Peachtree City, LLC v. Peachtree City Holdings*,
    250 Ga. App. 46 (2001) .................................................................................. 7

*Sw. Energy Prod. Co. v. Forest Res., LLC*,
    83 A.3d 177 (Pa. Super. 2013) .......................................................................... 7

*Taylor v. Extendicare Health Facilities, Inc.*,
    147 A.3d 490 (Pa. 2016) ................................................................................. 12

*Valentin v. ADECCO*,
    777 F. App'x 50 (3d Cir. 2019) ......................................................................... 6

*Velazquez v. State Farm Fire & Cas. Co.*,
    2020 WL 1942784 (E.D. Pa. Mar. 27, 2020) ....................................................... 15

*Weiss v. Fritch, Inc.*,
    2018 WL 1940109 (Pa. Super. Apr. 25, 2018) ..................................................... 16

## STATUTES

9 U.S.C. § 2 .................................................................................................. 6

Pennsylvania Motor Vehicle Sales Finance Act ....................................... 10, 11, 12, 13

Pennsylvania's Unfair Trade Practice Consumer Protection Law ......................... passim

iv

**RULES**

Rule 12(b)(6)...................................................................................................................... 6, 13

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Carvana, LLC ("Carvana") respectfully submits this memorandum of law in support of its Motion to Compel Arbitration and to Dismiss ("Motion") the claims asserted by Plaintiffs Dana Jennings and Joseph A. Furlong (together, "Plaintiffs") in their Amended Complaint (Dkt. 8) (the "Complaint").

## INTRODUCTION

Each Plaintiff alleges that, upon purchasing a vehicle from Carvana, he or she entered into a contract with Carvana that called for the payment of specified, line-item fees for state-specific registrations, license plates, and titles. Plaintiffs allege that Carvana failed to properly register and license their vehicles in exchange for these fees in breach of contract and in violation of Pennsylvania's Unfair Trade Practice Consumer Protection Law ("UTPCPL"). The *only* contract that addresses the state registration, license plate, and state title fees at issue is the Retail Purchase Agreement ("RPA") that each Plaintiff entered into with Carvana at the time of their respective purchases. Each RPA includes an arbitration provision that, in turn, incorporates an Arbitration Agreement that encompasses the claims asserted in the Complaint and requires binding arbitration on a non-class basis. Carvana, therefore, respectfully requests that the Court compel arbitration on an individual basis and dismiss or stay Plaintiffs' claims.

Plaintiffs' assertion that they can litigate their claims on a class basis because an entirely different contract—a retail installment sales contract ("RISC")—lacks an arbitration provision is meritless. The RISCs, which apply when customers purchase vehicles and agree to pay the purchase price (plus interest) in periodic installments, have nothing to do with this dispute. As the Complaint makes clear, this dispute is about state registration, license plate, and state title fees. The *only* contracts that mention such fees are the RPAs, *not* the RISCs. Having brought claims to enforce the terms of the RPAs, Plaintiffs are bound by the RPAs' arbitration provisions.

1

In addition to being subject to individual arbitration, Plaintiffs' claims fail as a matter of law.  Plaintiffs contend that the only enforceable terms of the parties' agreements are those expressly set forth within the four corners of the RISCs.  But the RISCs have no terms or provisions that speak to the registration, license plate, and title fees that Plaintiffs place at issue in this lawsuit, and Plaintiffs thus have no basis for their breach-of-contract or UTPCPL claims.  Thus, should the Court decline to compel arbitration, it should dismiss the Complaint for failure to state a claim.

## FACTUAL BACKGROUND

### A.     The Fees At Issue Are Governed By Contracts That Contain An Arbitration Provision

Plaintiffs allege that they each purchased a vehicle online from Carvana.  Compl. ¶¶ 12, 24.  According to the Complaint, Plaintiffs each paid a state registration fee of $38, a license plate fee of $16, and a state title fee of $55 (totaling $93.00 per Plaintiff), but Carvana "failed to complete" the registration of their vehicles in exchange for these fees.[1]  *Id.* ¶¶ 12-16, 24-28, 36-37.  The *only* document that identifies the individual registration, license plate, and title fees at issue is the RPA that each Plaintiff signed, which specifically references a "Registration Fee" of $38, a "License Plate – Electronic Issuance Fee" of $16, and a "Title Fee" of $55.  *See* Jennings RPA (Ex. A) at 2; Furlong RPA (Ex. C) at 2.[2]

---

[1] Plaintiffs also mention in passing an alleged "transit fee," Compl. ¶ 203, but they do not allege any facts that any agreement with Carvana required a transit fee, that Plaintiffs paid a transit fee, or that Carvana failed to provide an alleged transit service.

[2] Citations to "Ex. _" refer to exhibits attached to the Declaration of Robert C. Collins III submitted herewith.  The Court may consider any agreements or documents "integral to or explicitly relied on" in the Complaint.  *See Fallon v. Mercy Cath. Med. Ctr. of Se. Pa.*, 877 F.3d 487, 493 (3d Cir. 2017); *see also, e.g.*, *Hrapczynski v. Bristlecone, Inc.*, 2021 WL 3209852, at *3 (E.D. Pa. July 29, 2021) (observing that "[i]t would frustrate the purposes of the Federal Arbitration Act if plaintiffs could avoid having their claims quickly compelled to arbitration simply by failing to mention the existence of clearly applicable arbitration agreements in their complaints").

Plaintiffs allege that they also signed RISCs as part of their vehicle transactions (Compl. ¶¶ 12, 24), which would indicate that these particular Plaintiffs agreed to pay for their vehicles over time.  Notably, the RISCs do not mention registration, license plate or title fees, much less the specific amounts owed for each.  *Compare* Jennings RPA at 1 *with* Jennings RISC (Dkt. 13 at Ex. 2); *compare* Furlong RPA at 1 *with* Furlong RISC (Dkt. 13 at Ex. 3).

Each RPA provides that it is "governed by federal law and the law of the state of the [listed] Dealership Address" and that each Plaintiff "agreed to accept title and ownership of the Vehicle in the state of" that same dealership.  *See* Jennings RPA (Ex. A) at 1; Furlong RPA (Ex. C) at 1. Jennings' RPA states that Jennings purchased a vehicle from a Carvana dealership located in Pennsylvania, and the RPA is thus governed by Pennsylvania law.  *See* Jennings RPA (Ex. A) at 1. Furlong's RPA provides that Furlong purchased a vehicle from a Carvana dealership located in Georgia, and the RPA is thus governed by Georgia law.  Furlong RPA (Ex. C) at 1.

Each RPA contains a provision titled (in bold) "**Arbitration Agreement**" that expressly incorporates the Arbitration Agreements that Plaintiffs executed with Carvana at the time of their respective purchases.  *See* Jennings RPA (Ex. A) at 2; Furlong RPA (Ex. C) at 2 ("The arbitration agreement entered into between you and Dealer is incorporated by reference into and is part of this Agreement").  The Arbitration Agreements likewise confirm that they are "part of, and . . . hereby incorporated into," the RPAs (as well as the RISCs).  *See* Jennings Arb. Agmt.  (Ex. B) at 1; Furlong Arb. Agmt. (Ex. D) at 1.

Pursuant to the arbitration provision, each Plaintiff broadly agreed to "final and binding" arbitration of "any claim, dispute [or] controversy between" themselves and Carvana "arising from or related to" the RPAs, the "vehicles" Plaintiffs bought, the "sale of the vehicles," the "provision or sale of any goods and services . . . covered by" the RPAs "or related to the vehicle,"

"[a]dvertisements, promotions or oral or written statements related to" the RPAs, and the

"collection of amounts" owed by Plaintiffs.  *See* Jennings Arb. Agmt. (Ex. B) at 1; Furlong Arb.

Agmt. (Ex. D) at 1.  Plaintiffs agreed that the definition of a "claim" subject to arbitration should

be construed to have "the broadest reasonable meaning," encompassing "claims of every kind of

nature," and including "statutory claims" and "contract claims."  *See* Jennings Arb. Agmt. (Ex. B)

at 2; Furlong Arb. Agmt. (Ex. D) at 2.  The parties' Arbitration Agreements are governed by the

Federal Arbitration Act ("FAA").  *See* Jennings Arb. Agmt. (Ex. B) at 4; Furlong  Arb. Agmt. (Ex.

D) at 4.

**B.**     **Plaintiffs Waived The Right To File Class Litigation Or To Proceed In A Representative Capacity**

In addition to agreeing to submit their disputes to arbitration, Plaintiffs also agreed to a

class waiver.  *See* Jennings Arb. Agmt. (Ex. B) at 3; Furlong Arb. Agmt.  (Ex. D) at 3.  The

Arbitration Agreements that Plaintiffs executed and that are incorporated into the RPAs provide:

> No Class Action or Private Attorney General Action
> Notwithstanding any language herein to the contrary, if you or we
> elect to arbitrate a Claim, ***neither you nor we will have the right to***:
> (1) ***participate in a class action in court or in arbitration, either as
> a class representative, class member or class opponent***; (2) act as a
> private attorney general in court or in arbitration, or (3) ***join or
> consolidate your Claim(s) with claims of any other person***, and the
> arbitrator shall have no authority to conduct any such class, private
> attorney general or multiple-party proceeding.

*Id.*[3]  The first page of the Arbitration Agreement, in a section titled "NOTICE OF ARBITRATION

AGREEMENT," further notified Plaintiffs as follows:

> If you or we choose arbitration, only our individual claims will be
> arbitrated.  Claims by groups of individuals or "Class" arbitrations,
> are not allowed.  By choosing to arbitrate, you will be giving up your

---

[3] Unless otherwise indicated herein, all internal citations and quotations are omitted, and emphasis
is added.

right to participate in a class action or a private attorney general action in court or in arbitration with respect to the dispute.

*Id.* at 1.

**C.      Plaintiffs Filed A Class Action Complaint In Court Despite Their Express Agreements to Submit Their Claims To Individual Arbitration**

Notwithstanding their agreements to arbitrate on a non-class basis, Plaintiffs filed a putative class action complaint in the Court of Common Pleas, Philadelphia County on November 5, 2021, and filed an amended complaint on January 14, 2022. *See* Dkt. 1, 8. Plaintiffs allege claims for breach of contract and violation of the UTPCPL. *See* Compl. ¶¶ 190-208. All of Plaintiffs' claims arise out of their RPAs with Carvana and the state registration, license plate, and state title fees set forth therein. *See id.* ¶¶ 12-16, 24-28, 36-37, 194, 202. Plaintiffs seek to represent a class of individuals (the "Nationwide Class") defined as:

> All persons in the United States east of the Mississippi River who entered into contracts with CARVANA to purchase vehicles since November 5, 2019, and CARVANA agreed to provide car registration services with non-temporary and permanent vehicle registrations in the state of their residence.

*See id.* ¶ 169(a).

Plaintiffs also seek to represent a subclass of "[a]ll persons from the Commonwealth of Pennsylvania who are members of the Nationwide Class." *See id.* ¶ 169(b). Plaintiffs seek to proceed in a representative capacity even though they specifically waived the right to act as class representatives. *See* Jennings Arb. Agmt. (Ex. B) at 1; Furlong Arb. Agmt. (Ex. D) at 1.[4]

---

[4] The Complaint includes allegations related to other individuals who allegedly purchased vehicles from Carvana. Compl. ¶¶ 40-167. None is named as a plaintiff in this action, and no class has been certified by the Court. Those allegations are thus irrelevant for purposes of this motion.

**ARGUMENT**

## I.   THE COURT SHOULD ENFORCE PLAINTIFFS' AGREEMENTS TO ARBITRATE THEIR INDIVIDUAL CLAIMS

There is a strong federal policy in favor of arbitration.  *See, e.g.*, *AT&T v. Concepcion*, 563 U.S. 333, 339 (2011); *Quilloin v. Tenet HealthSys. Phil., Inc.*, 673 F.3d 221, 228 (3d Cir. 2012). That policy is embodied in the FAA, which provides that an agreement to arbitrate "shall be valid, irrevocable, and enforceable."  9 U.S.C. § 2; s*ee also In re Remicade (Direct Purchaser) Antitrust Litig.*, 938 F.3d 515, 519 (3d Cir. 2019).  Indeed, the FAA was enacted "in response to widespread judicial hostility to arbitration agreements," *Homa v. Am. Express Co.*, 494 F. App'x 191, 197 (3d Cir. 2012); *see also Concepcion*, 563 U.S. at 339, and "leaves no place for the exercise of discretion by a district court," mandating instead that "district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration provision has been signed."  *Dean Witter v. Byrd*, 470 U.S. 213, 218 (1985).

Federal courts follow a two-step analysis to determine whether to enforce an arbitration clause, asking (i) whether there was a valid agreement to arbitrate, and if so, (ii) whether that agreement encompasses the dispute at issue.  *Richardson v. Coverall N. Am., Inc.,* 811 F. App'x 100, 103 (3d Cir. 2020).  "[W]hen it cannot be said with *positive assurance* that the parties have clearly and unequivocally excepted a certain dispute from arbitration, the court must compel arbitration," *Valentin v. ADECCO*, 777 F. App'x 50, 51 (3d Cir. 2019), and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *See Brayman Constr. Corp. v. Home Ins. Co.*, 319 F.3d 622, 625 (3d Cir. 2003); *see also Mitsubishi v. Soler*, 473 U.S. 614, 626 (1985).  Dismissal based on an arbitration provision can be sought pursuant to Rule 12(b)(6).  *See Sanford v. Bracewell & Guiliani, LLP*, 618 F. App'x 114, 118 (3d Cir. 2015).

**A.      Plaintiffs And Carvana Entered Into Valid, Written Agreements To Arbitrate**

There can be no dispute that each Plaintiff entered into a valid and enforceable agreement to arbitrate with Carvana.  *See* Jennings RPA (Ex. A) at 3 (incorporating Jennings Arb. Agmt.  (Ex. B));  Furlong RPA (Ex. C) at 3 (incorporating Furlong Arb. Agmt. (Ex. D)).  Plaintiffs signed the RPAs as part of the purchase of their vehicles, and the RPAs contain a provision titled (in bold) "**Arbitration Agreement**" that expressly incorporates the respective Arbitration Agreement.[5]  *Id.  See Sw. Energy Prod. Co. v. Forest Res., LLC*, 83 A.3d 177, 187 (Pa. Super. 2013) (terms expressly incorporated into a contract must be enforced as if stated therein); *Sofran Peachtree City, LLC v. Peachtree City Holdings*, 250 Ga. App. 46, 50 (2001) (construing separate contracts as one where they referenced each other).  Each Plaintiff also separately signed the Arbitration Agreement itself, which contains the arbitration provision and class waiver as well as a "NOTICE OF ARBITRATION AGREEMENT."  *See* Jennings Arb. Agmt. (Ex. B) at 1; Furlong Arb. Agmt. (Ex. D) at 1; *Schwartz v. Comcast Corp.*, 256 F. App'x 515, 520 (3d Cir. 2007) (arbitration agreement was formed under Pennsylvania law where terms were plainly available to consumer); *Pan Pac. Aviation, Inc. v. Premier Aircraft Sales, Inc.*, 2010 WL 11601001, at *4 (N.D. Ga. Jan. 6, 2010) (arbitration agreement was formed under Georgia law where clause was "clear and conspicuous").  Plaintiffs thus clearly entered into valid agreements to arbitrate their disputes with Carvana.  *See*, *e.g.*, *Huegel v. Contstr. Co., Inc.*, 796 A.2d 350, 357 (Pa. Super. 2002); *Parks IP Law, LLC v. Wood*, 755 F. App'x 884, 886-87 (11th Cir. 2018) (applying Georgia law).

---

[5] The Arbitration Agreements likewise confirm that they are "part of, and . . . hereby incorporated into," the RPAs.  *See* Jennings Arb. Agmt. (Ex. B) at 1; Furlong Arb. Agmt. (Ex. D) at 1.

**B.     This Dispute Falls Within The Scope Of The Arbitration Agreements**

Nor can there be any dispute that the claims asserted in the Complaint fall squarely within the scope of the parties' arbitration agreements.  *See* Jennings Arb. Agmt. (Ex. B) at 2; Furlong Arb. Agmt. (Ex. D) at 2.  The Court's inquiry into the scope of an arbitration clause is limited to "ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract."  *Berkery v. Cross Country Bank*, 256 F. Supp. 2d 359, 365 (E.D. Pa. 2003). Courts adhere to a "presumption of arbitrability," *id*., and any and all doubts regarding the scope of the arbitration clause must be resolved in favor of arbitration.  *See Brayman*, 319 F.3d at 625.

The Arbitration Agreements here cover, without limitation, "any claim, dispute [or] controversy . . . arising out of or related to" the "Contract" (including the RPA), the "vehicle" and "sale of the vehicle," the "provision or sale of any goods and services . . . covered by" the RPA or "related to the vehicle," and the "collection of amounts" owed by Plaintiffs.  Jennings Arb. Agmt. (Ex. B) at 2; Furlong Arb. Agmt. (Ex. D) at 2.  The scope of the claims covered by the arbitration provision has "the broadest reasonable meaning" and "includes claims of every kind of nature," including "statutory claims" and "contract claims" like those asserted here.  *See id.*; *see also Brown v. City of Phil.*, 2010 WL 4484630, at *7 (E.D. Pa. Nov. 9, 2010) (compelling arbitration where claims covered by the agreement had "the broadest possible interpretation"); *Kahn v. Option One Mortg. Corp.*, 2006 WL 156942, at *4 (E.D. Pa. Jan. 18, 2006) (compelling arbitration where agreement applied to "any claim or controversy of any nature whatsoever arising out of or in any way related to the [contract]"); *Wood*, 755 F. App'x at 886 (finding "no difficulty in concluding" that claim was subject to arbitration agreement where clause covered all claims "arising out [of] or relating to" the contract).

Plaintiffs' claims here plainly arise out of or relate to their "Contract[s]," and, in particular, the RPAs.  Plaintiffs' claims hinge on the allegation that they paid state registration, license plate,

and state title fees in connection with the purchase of their vehicles, but that Carvana failed to properly provide licenses and registration. *See* Compl. ¶¶ 12-21, 30-31, 194, 202-03, 206. These challenged fees are found only in the RPAs, and any disputes pertaining to the RPA are within the scope of the arbitration provision. Even more generally, Plaintiffs' claims arise out of and relate to the "vehicle" and the "sale of the vehicle," "goods and services" allegedly related to the sale and the vehicles, and the "collection of amounts" owed by Plaintiffs, all of which likewise fall within the scope of the arbitration provision. *See* Jennings Arb. Agmt. (Ex. B) at 2; Furlong Arb. Agmt. (Ex. D) at 2. Because Plaintiffs' claims fall within the scope of the Arbitration Agreements, they belong in binding arbitration. *Berkery,* 256 F. Supp. 2d at 366; *Wood,* 755 F. App'x at 888.

### C.    Plaintiffs Must Arbitrate Their Disputes On A Non-Class Basis

Once in arbitration, Plaintiffs must arbitrate their disputes on an individual basis. Plaintiffs agreed that they do not have the right to "participate in a class action in court or in arbitration," including as a class representative. *See* Jennings Arb. Agmt. (Ex. B) at 3; Furlong Arb. Agmt. (Ex. D) at 3. This class waiver is valid and fully enforceable under Pennsylvania and Georgia law. *See, e.g., Homa*, 494 F. App'x at 197; *Nelson v. Gobrands, Inc.*, 2021 WL 4262325, at *8 (E.D. Pa. Sept. 20, 2021) ("Pennsylvania recognizes and enforces class action waivers in arbitration agreements."); *Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1140 n.22 (11th Cir. 2010) ("In cases under Georgia law or federal law, this Court has concluded that arbitration agreements precluding class action relief generally are valid and enforceable and not unconscionable."). Plaintiffs were provided with the opportunity to opt out of the Arbitration Agreement, including the class waiver, and elected not to do so. *See* Jennings Arb. Agmt. (Ex. B) at 2; Furlong Arb. Agmt. (Ex. D) at 2. The Court should thus enforce the parties' arbitration agreements as written and compel Plaintiffs to arbitration on a non-class basis only.

**D.      Pennsylvania Law Does Not Bar The Enforcement Of Plaintiffs' Agreements To Arbitrate On A Non-Class Basis**

To anticipate Plaintiffs' response, Plaintiffs seem to take the position that the Arbitration Agreements are unenforceable under Section 613(A) of the Pennsylvania Motor Vehicle Sales Finance Act ("MVSFA").  Section 613(A) of the MVSFA was superseded by 12 Pa. C.S. § 6221(a), which provides:  "An installment sale contract shall…contain all the agreements between a buyer and an installment seller relating to the installment sale of the motor vehicle sold" and "be complete as to all essential provisions before the buyer signs the contract."  In support of their position, Plaintiffs point to the decision in *Knight v. Springfield Hyundai*, where the Court held that "when a buyer makes a purchase of a vehicle by installment sale, the RISC subsumes all other agreements relating to the sale."  81 A.3d 940, 948  (Pa. Super. 2013).  Plaintiffs' reliance on *Knight* and the MVSFA is misplaced.[6]

In *Knight*, the plaintiff's claims arose specifically out of the RISC, which, as the Court noted, "delineated the details of the sale and the financing agreement."  *Knight*, 81 A.3d at 943. Indeed, the dispute in *Knight* was ignited when the plaintiff advised the financing company "that she was canceling the RISC because of Dealer's misconduct."  *Id*. at 944–45 (claims arising from concealment of prior vehicle history and wrongful repossession).  Although a different agreement, the Buyer's Order, contained an arbitration provision, the RISC that was the subject of the parties' dispute did not, and the Court thus found that the dispute was not subject to arbitration.  *Id*. at 947-49.

---

[6] Plaintiffs' meritless MVSFA argument is separately inapplicable to Furlong's claims, which are governed by Georgia law.  *See* Furlong RPA (Ex. C) at 1; *see also Gay v. CreditInform*, 511 F.3d 369, 390 (3d Cir. 2007) (finding Virginia had substantial relationship where agreement stated plaintiff purchased services at defendant's location in Virginia).

This case could not be more different.  Here, Plaintiffs' claims have nothing to do with the RISCs.  Instead, Plaintiffs' claims arise out of and relate solely to the RPAs and, specifically, to the state registration, license plate, and state title fees contained therein.  Having chosen to bring claims based upon the terms of the RPAs, Plaintiffs cannot avoid the Arbitration Agreements that govern disputes under those same RPAs.  *See, e.g., Friedman v. Yula*, 679 F. Supp. 2d 617, 628 (E.D. Pa. 2010) ("having embraced the written agreement . . . to prove his claims and his damages, [plaintiff] cannot now walk away from the arbitration clauses in the Agreements"); *LaSonde v. CitiFinancial Mortg. Co.*, *Inc.*, 614 S.E.2d 224, 226 (Ga. App. 2013) ("a party cannot have it both ways; it cannot rely on the contract when it works to its advantage and then repute it when it works to its disadvantage").  The doctrine of equitable estoppel, in fact, exists precisely so that Plaintiffs cannot pick and choose among the provisions of the RPAs to which they are bound.  *Guiliani*, 618 F. App'x at 118 (equitable estoppel precludes an "attempt to claim the benefit of [a] contract and simultaneously avoid its burdens"); *see also Ins. Co. v. Kinsale Ins. Co.*, 253 F. Supp. 3d 796, 803 (E.D. Pa. 2017) ("given that [plaintiff's] claims [were] entirely dependent on" the contract, plaintiff was "equitably estopped from objecting to the arbitration clause" in the contract); *LaSonde*, 614 S.E.2d at 226.[7]

Moreover, Plaintiffs' expansive interpretation of *Knight* is self-defeating.  According to Plaintiffs, *Knight* stands for the proposition that the RISC is the only operative agreement between Plaintiffs and Carvana relating to the purchase of Plaintiffs' vehicles.  If that were true (and it is

---

[7] Because the MVSFA only applies to installment sales, it also clearly would not bar the arbitration of claims brought by any member of the proposed class who purchased a vehicle from Carvana without an installment purchase.  *See* 12 Pa. C.S. § 6221(a); *see also*, *e.g.*, *Brown*, 2010 WL 4484630, at *4-5 (rejecting argument that an arbitration agreement was barred by the MVSFA because the MVSFA "applies only to installment financing contracts for the sale of motor vehicles," and plaintiff had borrowed money using a vehicle he already owned as collateral).

not), it would lead inexorably to the conclusion that there is no basis for any of the claims asserted by Plaintiffs in this action.  That is because, as discussed, the registration, license, and title fees that form the basis of Plaintiffs' claim appear only in the RPAs, and nowhere else.  Thus, to accept Plaintiffs' contention that the MVSFA applies even where, as here, the dispute is unrelated to the RISCs would leave Plaintiffs with no agreements about which to complain.

Applying the MVSFA to the facts of this case would also create preemption concerns because the law is clear that a statute is preempted by the FAA if it would "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" in enacting the FAA.  *See Generational Equity LLC v. Schomaker,* 602 F. App'x 560, 563 (3d Cir. 2015); *see also Concepcion*, 563 U.S. at 343, 346 (invalidating California's *Discover Bank* rule because its application interfered with arbitration).  The FAA binds courts to compel arbitration of claims subject to an arbitration agreement, "even if a state law would otherwise exclude it from arbitration."  *Taylor v. Extendicare Health Facilities, Inc.*, 147 A.3d 490, 509 (Pa. 2016).  To construe the MVSFA as precluding enforcement of an arbitration provision even where the provision is part and parcel of the very contract that forms the basis of Plaintiff's claims would plainly create an "obstacle to the accomplishment of the FAA's objectives" of enforcing arbitration agreements.  *See Taylor*, 147 A.3d at 505 (citing *Concepcion*, 563 U.S. at 341-43); *see also Quilloin*, 673 F.3d at 230.

Not surprisingly, another court has already rejected Plaintiffs' contention that the MVSFA automatically bars enforcement of any arbitration provision not contained in the RISC.  In a recent action in the Philadelphia Court of Common Pleas, the court was presented with the question of whether the MVSFA invalidated a substantially similar arbitration agreement between Carvana and a vehicle purchaser in light of an installment contract they also executed.  *See* First Am.

Compl., *Burden v. Carvana, LLC*, No. 200801110 (Pa. Ct. Com. Pl.) (Nov. 3, 2020) (Ex. E) ¶ 193

(alleging that "[t]he subject RISC does not contain a pre-disputed Forced Arbitration Clause (FAC)

or any other arbitration clause."), ¶ 194 (alleging that "[u]nder Pennsylvania law, the RISC controls

the terms and conditions in a financed motor vehicle purchase, and any provisions set forth outside

the RISC are unenforceable."), ¶ 199 (alleging that defendants filed a motion to compel arbitration

"asserting an FAC that is found in documents that defendants admit is separate from the RISC").

The court **rejected** plaintiff's argument that the MVSFA barred enforcement of the arbitration

agreement and **compelled arbitration**. *See* Order, *Burden* (Dec. 4, 2020) (Ex. F).  Respectfully,

this Court should do the same.

## II.   IN THE ALTERNATIVE, THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

Should the Court decline to compel arbitration of Plaintiffs' claims, Carvana respectfully

submits that the Court should dismiss each of Plaintiffs' claims for failing to "state a claim upon

which relief can be granted."  Fed. R. Civ. P 12(b)(6).  A complaint fails to state a claim either

when it lacks a cognizable legal theory or when it fails to allege sufficient facts to support such a

theory.  *See Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007).  To survive a motion to

dismiss, "[t]he complaint must contain sufficient factual matter, accepted as true, to state a claim

to relief that is plausible on its face."  *Angino v. Wells Fargo Bank, N.A.*, 666 F. App'x 204, 206

(3d Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

### A.   Plaintiffs' Breach Of Contract Claims Should Be Dismissed For Failure To Allege A Breach Of Any Term In The RISCs

Under both Pennsylvania and Georgia law, to state a claim for breach of contract a plaintiff

must plead (i) the existence of a contract, including its essential terms, (ii) the defendant's breach

of a duty imposed by those terms, and (iii) actual loss or injury as a direct result of the breach.  *See*

*Angino*, 666 F. App'x at 207; *Brooks v. Branch Banking & Tr. Co.*, 107 F. Supp. 3d 1290, 1295

(N.D. Ga. 2015).  Plaintiffs here allege that Carvana breached the RISC by "failing to permanently license and register the vehicles properly in exchange for the fee it charged and collected from the Plaintiffs."  Compl. ¶ 194.  Yet, Plaintiffs "point to no provision" in the RISCs that requires Carvana to "permanently license and register the vehicles properly in exchange for the fee it charged and collected from" Plaintiffs.  *See Angino*, 666 F. App'x at 208; *Brooks*, 107 F. Supp. 3d at 1296.  Nor can they.  The RISC contains no provisions related to registration, license, and title fees.  Plaintiffs thus fail to "identify any provisions of the [RISCs] that [Carvana] violated," and their breach of contract claim should be dismissed.  *Angino*, 666 F. App'x at 208 (affirming dismissal of breach of contract claim).

Plaintiffs cannot salvage their breach of contract claims by invoking the implied duty of good faith and fair dealing.  *See* Compl. ¶¶ 192, 197; *Sheinman Provisions, Inc. v. Nat'l Deli, LLC*, 2008 WL 2758029, at *2-3 (E.D. Pa. July 15, 2008).  "Pennsylvania does not recognize a claim for breach of the covenant of good faith and fair dealing as an independent cause of action." *Sheinman Provisions*, 2008 WL 2758029, at *3.  Georgia law is in accord.  *See Brooks*, 107 F. Supp. 3d at 1297 (under Georgia law, "there is no independent cause of action for violation of the covenant apart from a breach of an express term of the contract").  Pennsylvania and Georgia law instead require that Plaintiffs allege facts that would establish that Carvana violated the duty of good faith and fair dealing by breaching an express term of the contract.  *See, e.g., Sheinman Provisions*, 2008 WL 2758029, at *3 (dismissing claim where plaintiff did not allege that defendant "failed to comply with the covenant of good faith and fair dealing by breaching a specific duty imposed by the contract *other than the covenant of good faith and fair dealing*[.]"); *Bankston v. RES-GA Twelve, LLC*, 779 S.E.2d 80, 82 (Ga. App. 2015) (trial court properly dismissed breach of contract claim, and thus the claim for breach of good faith and fair dealing was also properly

dismissed).  As discussed, Plaintiffs cannot adequately allege that Carvana breached the RISCs because the RISCs contain no terms related to the registration, licensing, and titling of the vehicles.  *See* disc. *supra* 2-3.  Plaintiffs' claim for breach of contract should thus be dismissed.  *See Sheinman*, 2008 WL 2758029, at *3; *Lorah v. SunTrust Mortg., Inc.*, 2010 WL 5342738, at *6 (E.D. Pa. Dec. 17, 2010) (dismissing claim for breach of duty of good faith and fair dealing where "Plaintiffs [did] not aver that [defendant] breached specific provisions of the [contracts]"); *Brooks*, 107 F. Supp. 3d at 1297 (dismissing claim for breach of duty of good faith and fair dealing because "that claim fails absent a breach of an express term of the contract").

### B.     Plaintiffs' UTPCPL Claims Should Be Dismissed For Multiple Reasons

Plaintiffs' claims under the UTPCPL also fail.  As a threshold matter, Furlong's claim under the UTPCPL must be dismissed, because Georgia—not Pennsylvania—law governs his claims.  *See supra* 3, 10 n.6; *Hopkins v .GNC Franchising, Inc.*, 2006 WL 2266253, at *4 (W.D. Pa. Jan. 13, 2006) (dismissing consumer protection claim under Florida statute where Pennsylvania law governed contract).  Furlong agreed to accept title and ownership of the vehicle in Georgia and agreed that Georgia law applies to the RPA.  *See supra* 3, 10 n.6; *see also* Furlong RPA (Ex. C) at 1.

Moreover, the Complaint fails to state a UTPCPL claim as to either Plaintiff under Pennsylvania law.  To state a UTPCPL claim, a private plaintiff must allege (1) a deceptive act that is likely to deceive a consumer acting reasonably under the circumstances; (2) justifiable reliance; and (3) ascertainable loss caused by that justifiable reliance.  *Velazquez v. State Farm Fire & Cas. Co.*, 2020 WL 1942784, at *3 (E.D. Pa. Mar. 27, 2020); *see also Kemezis v. Matthews*, 394 F. App'x 956, 959 (3d Cir. 2010) (a private plaintiff must allege sufficient "facts from which plausible inferences of deceptive conduct and justifiable reliance thereon can be drawn").

Here, Plaintiffs allege that they paid the fees at issue as part of their purchase of vehicles

from Carvana in reliance on Carvana's alleged representations in connection with those vehicle sales. *See* Compl. ¶¶ 203-206. Plaintiffs in particular allege that Carvana's alleged representations deceived each Plaintiff "to purchase the subject vehicle in violation of the UTPCPL." *Id.* ¶ 207. Carvana's only alleged misrepresentations relevant to Plaintiffs' claims, however, are line-item entries in the RPAs for the state registration, license plate, and state title fees. *See* Compl. ¶¶ 12, 20, 24, 30. As already discussed, *see* disc. *supra* 2-3, the RISC contains no terms or provisions related to the fees at issue in this case. *See* Jennings RPA (Ex. A) at 1; Furlong RPA (Ex. C) at 1. Plaintiffs thus do not, and cannot, show that they relied on any alleged misrepresentation in the RISC in deciding to pay the fees at issue, and their statutory claim should be dismissed. *See, e.g., Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 227 (3d Cir. 2008).

Dismissal of the UTPCPL is also consistent with the gist of the action doctrine, which "provides that a tort claim based on a party's actions undertaken in the course of carrying out a contractual agreement[] is barred when the gist or gravamen of the cause action[,] although sounding in tort, is, in actuality, a claim against the party for breach of its contractual obligations." *Downs v. Andrews*, 639 F. App'x 816, 819 (3d Cir. 2016); *see also eToll, Inc. v. Elias/Savion Advert., Inc.*, 811 A.2d 10, 20-21 (Pa. 2002). The gist of the action doctrine applies in the context of statutory claims under the UTPCPL. *See, e.g., Weiss v. Fritch, Inc.*, 2018 WL 1940109, at *8 (Pa. Super. Apr. 25, 2018) (holding that UTPCPL claim was barred by gist of the action doctrine).

Here, Plaintiffs purport to base their UTPCPL claims on allegedly false or misleading representations Carvana made by "[i]mposing and collecting car registration fees for which it did not perform[.]" Compl. ¶ 202. Plaintiffs allege that they were misled into believing that "the fees charged to them were lawful and bona fide," when in fact they were not. *Id.* ¶ 206. But those allegations suggest nothing more than conduct that necessarily "arose in the course of the parties'

contractual relationship." *See eToll*, 811 A.2d at 20.  In other words, Plaintiffs' statutory claims—through which they seek to recover for the "loss of money by payment of the title/registration and transit fees" in connection with their vehicle sales, Compl. ¶ 203—are nothing more than dressed-up breach of contract claims.  *KBZ Commc'ns Inc. v. CBE Techs. LLC*, 634 F. App'x 908, 911 (3d Cir. 2015) (claims were prohibited by the gist of the action doctrine where alleged damages were "exactly the same as [the] contract damages").  The gist of the action doctrine therefore bars the UTPCPL claims.  *See id.*

## CONCLUSION

For the reasons set forth above, Carvana respectfully requests that the Court compel arbitration on a non-class basis and dismiss or stay this case.  Alternatively, Carvana requests that the Court dismiss the Complaint with prejudice for failure to state a claim on which relief can be granted.  Carvana further respectfully requests all such other relief as the Court deems appropriate.

Dated:  January 28, 2022                         Respectfully submitted,

/s/ *Eric Leon*
Eric Leon, one of the Attorneys for
Carvana, LLC

Eric Leon (New York Bar No. 2626562) (Admitted *Pro Hac Vice*)
eric.leon@lw.com
Marc S. Werner (New York Bar No. 5301221) (Admitted *Pro Hac Vice*)
marc.werner@lw.com
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
Telephone:  (212) 906-1200
Facsimile:  (212) 751-4864

Robert C. Collins III (Illinois Bar No. 6304674) (Admitted *Pro Hac Vice*)
robert.collins@lw.com
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL  60611
Telephone:  (312) 876-7700
Facsimile:  (312) 993-9767

Paul G. Gagne (Pennsylvania ID No. 42009)
pgagne@kleinbard.com
KLEINBARD LLC
Three Logan Square
Philadelphia, PA 19103
Telephone:  (215) 523-5302

## <u>CERTIFICATE OF SERVICE</u>

I, Eric Leon, hereby certify that I caused a copy of the foregoing to be served on the parties

listed below, via the Court's ECF system, on January 28, 2022.

> Robert P. Cocco
> ROBERT P. COCCO, P.C.
> Pa. Id. No. 61907
> 1500 Walnut Street, Suite 900
> Philadelphia, PA 19102
> Telephone:  (215) 351-0200
> Email:  bob.cocco@phillyconsumerlaw.com
>
> *Attorney for Plaintiffs*

Dated:  January 28, 2022

> /s/ *Eric Leon*
> Eric Leon, One of the Attorneys for
> Carvana, LLC
>
> Eric Leon
> eric.leon@lw.com
> LATHAM & WATKINS LLP
> 1271 Avenue of the Americas
> New York, NY 10020