## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DANA JENNINGS and JOSEPH A. FURLONG, Individually and on Behalf of All Others Similarly Situated, <br><br>                            Plaintiffs, <br>      v. <br><br> CARVANA, LLC, <br><br>                       Defendant. | Case No. 5:21-cv-05400 |

## PLAINTIFFS' OPPOSITION TO
## DEFENDANT'S MOTION TO COMPEL ARBITRATION AND TO DISMISS

By their undersigned counsel, Plaintiffs hereby opposed Defendant's Motion to Compel

Arbitration and to Dismiss Plaintiffs' Complaint (ECF. 18), and say as follows:

### I.   INTRODUCTION & RELEVANT FACTS

This putative class action against Defendant CARVANA, LLC ("CARVANA" or

"Defendant") by Plaintiffs Joseph Furlong ("Furlong") and Dana Jennings

("Jennings")(collectively "Plaintiffs") concerns CARVANA's breach of contract and violation of

the Pa. UTPCPL, 73 *et seq.*.  Specifically, Plaintiffs allege their shared car buying experience

involving CARVANA promising and agreeing to collect title, plate, and registration fees to be

paid to public officials in their RISCs for the purpose of acquiring permanent title and registration

of  the vehicles sold by CARVANA. Am. Compl. ¶¶ 12-13, 24-25.

Plaintiffs relied upon the RISC and CARVANA's promises to have the vehicle properly

registered in the Commonwealth of Pennsylvania as evidenced by the agreements in the RISC,

trade-in of prior vehicles, and continued payments on the purchased vehicles, Am. Compl. ¶¶ 15,

26. Plaintiffs were deceived into relying upon Carvana's promises because Carvana concealed by

omission that its standard business practices routinely breached the aforesaid promises by delaying permanent title and registration by Carvana through unlawful issuance of temporary tags from multiple state jurisdictions other than Pennsylvania, Am. Compl. ¶¶ 17-19, 21, 28-29, 31.

As a result of CARVANA's foregoing acts and omissions, Plaintiffs and other consumers have been damaged by Carvana's breach of its promises in the sale of vehicles to the Plaintiffs, and it has been unfairly enriched by receiving fees from services it never timely performed. As a direct proximate result of Carvana's unfair conduct in breach of its promise to them, Plaintiffs were denied lawful ownership and operation of the subject vehicles purchased from Carvana.  Am. Compl. ¶¶ 21, 32-167.  In addition, Carvana's failure to timely register cars as it promised and received money to do – sometimes for a period exceeding two (2) years - causes consumers to be questioned and sometimes arrested or detained by law enforcement while driving the temporarily registered cars.  Am. Compl. ¶¶ 92-96.

While CARVANA's Motion (ECF. 18) seeks for this Court to compel arbitration or, in the alternative, seek dismissal of all of Plaintiffs' claims before the Court, CARVANA fails to fundamentally understand Pennsylvania law governing its sales practices which, in turn, dooms the relief it requests.  Plaintiffs discuss *infra* more specific, well pled facts related to subjects to the Motion and will not repeat them here.  Based on their well pled Amended Complaint (ECF 8) and the argument herein, Plaintiffs request that the CARVANA's Motion be DENIED.  In the alternative, if the Court believes that additional facts are necessary for Plaintiffs to proceed on their claims, they request leave of the Court to file a Second Amended Complaint to address those deficiencies.

## II.   LEGAL STANDARD

This Court recently described the standard of review for a motion to dismiss as follows:

> "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare" recitations of the elements of a claim supported only by "conclusory statements" will not suffice. *Id.* at 683, 129 S.Ct. 1937. Rather, a plaintiff must allege some facts to raise the allegation above the level of mere speculation. *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 176 (3d Cir. 2010) (citing *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). In analyzing a motion to dismiss legal conclusions are disregarded, well-pleaded factual allegations are taken as true, and a determination is made whether those facts state a "plausible claim for relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

*Frompovicz v. Niagara Bottling, LLC*, --- F.Supp.3d ----, No. CV 18-54, 2018 WL 4465879, at *2 (E.D. Pa. Sept. 18, 2018).

When considering an effort to compel arbitration, as in Carvana's request here in its Motion,

> the FAA "creates substantive federal law regarding the enforceability of arbitration agreements, requiring courts to place such agreements upon the same footing as other contracts," *Arthur Andersen*, 556 U.S. at 630, 129 S.Ct. 1896 (internal quotation marks and citation omitted), it does not "alter background principles of state contract law regarding the scope of agreements," *id.*

*O'Hanlon v. Uber Techs., Inc.*, 990 F.3d 757, 766 (3d Cir. 2021).

Finally, "upon granting a motion to dismiss, 'a district court must permit a curative amendment, unless an amendment would be inequitable or futile.' *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008)." *Bramlett v. United States Dep't of Treasury*, No. CV 16-257, 2017 WL 1048366, at *8 (E.D. Pa. Mar. 20, 2017).

### III.    ARGUMENT

### A.  Plaintiffs Cannot be Compelled to Arbitration under the RISC and controlling Pennsylvania Law.

CARVANA attempts in its Motion to replace the transactions' retail installment contract ("RISC") with the Retail Purchase Agreements ("RPA") as the operative or governing document for the transactions' material terms in order to enforce the arbitration agreement in the latter document. This attempt fails because CARVANA asks the Court to misconstrue Pennsylvania motor vehicle law governing its contractual promises, legal duties, and conduct herein.

CARVANA's arbitration contention is premised on the false factual assertion that the RFA only - and not the RISC - references the registration, license, and title fees in dispute. Mot. at 1. In fact, the RISC identifies these fees as a total in its standard form RISC contract, page 2, section 4c, as a total of those fees under the description, "Paid to Public Officials," in each named plaintiff's RISC, i.e. $135.00 in the Furlong's and $140.00 in Jennings'. More specifically the totals of the foregoing fees stated in the RISCs from those fees itemized in the RFA are as follows for each:

| Paid to Public Officials | Jennings RISC (ECF 13-2) | Furlong RISC (ECF 13-3) |
|---|---:|---:|
| Registration fee | 38.00 | 38.00 |
| Title fee | 55.00 | 55.00 |
| Plate fee | 16.00 | 16.00 |
| Lien filing | 26.00 | 26.00 |
| Phila. Local Use Fee | 5.00 | 0.00 |
| TOTAL | 140.00 | 135.00 |

To the extent that only the RPA specifically itemizes the disputed title/plate/registration fees rather than the RISC doing so, this is so only because CARVANA's standard form RISC

document's construction violates Pennsylvania's "Motor Vehicle Sales Finance Act" ("MVSFA")

which requires itemization of those fees on the RISC, to wit:

> **An installment sale contract shall contain the following:**
> (1) The full name and address of all the parties to the contract.
> (2) The date that the buyer signed the contract.
> (3) A description of the motor vehicle sold, which shall be sufficient for accurate identification.
> (4) The notice under section 6223 (relating to notice).
> (5) **The following items in writing and in a clear and conspicuous manner, with each component of each subparagraph listed separately:**
> …
>
> > **(v) Other charges necessary or incidental to the sale or financing of a motor vehicle:**
> > **(A) which the seller contracts to retain, receive or pay on behalf of the buyer;**

12 Pa. C.S.A. § 6222 (emphasis added).

Furthermore:

> **Costs and charges under sections 6222 (relating to contents) and 6242 (relating to other costs included in amount financed) shall be separately itemized in an installment sale contract as to their nature and amounts.**

12 Pa. C.S.A. § 6224.

Deprived of its specious factual argument that the RISC does not govern (since it asks the

Court to ignore it legal duties understate law related to its contractual requirements), CARVANA

cannot overcome by the RFA's terms the Pennsylvania Superior Court's opinion in *Knight v.*

*Springfield Hyundai*, 81 A.3d 940 (Pa. Super. Ct. 2013) respecting the unenforceability of an

arbitration clause in a document separate from the RISC like the aforementioned RPA.  In *Knight*,

the arbitration clause was <u>not</u> within the terms of the RISC and, instead, the arbitration clause

existed solely in a separate document, a Buyer's Order (which is substantively equivalent to the

RPA herein in that it contains itemized sale terms, but not financing terms).  The court held in

*Knight* that, to be enforceable in connection with a financed sale of a motor vehicle in

Pennsylvania, an arbitration clause must be contained in the RISC because the RISC "shall contain

all of the agreements between the buyer and the seller relating to the installment sale of the motor vehicle sold[.]" *Knight*, 81 A.3d at 940, 948-49 citing Pennsylvania's Motor Vehicle Sales Finance Act ("MVSFA"), 69 P.S. § 613(A).[1] Accordingly, the Court vacated the non-judicial arbitration judgment reached in AAA forum. *Id.* at 953. *See also Walker v. Metro Auto Sales Inc.*, No. 254 EDA 2013, 2014 WL 10937074, at *3 (Pa. Super. Ct. Apr. 7, 2014)("The agreement to arbitrate, included solely in the Buyer's Order, was invalid and the trial court erred as a matter of law by transferring the case to private arbitration").

The relevant provision of the MVSFA addressed in *Knight* states:

General rule.--An installment sale contract shall:
(1) be in writing;
(2) contain all the agreements between a buyer and an installment seller relating to the installment sale of the motor vehicle sold;
(3) be signed by the buyer and seller; and
(4) be complete as to all essential provisions before the buyer signs the contract.

12 P.S. § 6221(a).[2]

The Courts of this District continue to recognize *Knight*'s interpretation of 12 P.S. § 6221(a) as the governing law. *See Guia v. World CDJR LLC*, 2019 WL 1745656, at *3 (E.D. Pa.

---

[1]    Now re-codified as 12 P.S. § 6221(a).

[2]    Nothing in 12 P.S. § 6221(a) discriminates against arbitration and therefore is not subject to Federal preemption arguments advanced by CARVANA to escape judicial relief of their practices. The RISC is required pursuant to § 6221(a) to "contain all the agreements" between the Sellers and Buyers and side agreements desired by CARAVA based upon foreign state laws are not enforceable as a matter of policy as stated by the Legislature. There is nothing unusual about the policy choice that all RISCs must contain "all" terms among the parties.    CARVANA knew when it drafted the RISCs subject to Pennsylvania law that it was barred under Pennsylvania law from attempting what it tries to do here—enforce some other agreement not contained in the RISCs.   Yet, with knowledge of the laws incorporated into the actual RISCs (i.e. the laws of the Commonwealth of Pennsylvania)(Page 2 of both ECF. ECF 13-2 and ECF. ECF 13-3) but it now basically claims ignorance of the law and it's claimed right to arbitration in violation of contract law of the Commonwealth is irrelevant.   This contention should be rejected.  If CARVANA actually wished to contract for arbitration it was required to include that provision in the RISC and instead it forfeited the right to do so at its own election (as the party who drafted the RISC).

Apr. 17, 2019) stating "that [statutory provision of the MVSFA] means that if a purchaser of a vehicle via an installment sale signs both a retail installment sales contract and a buyer's order, the buyer's order is subsumed by the sales contract. If only the buyer's order—and not the sales contract—contains an arbitration clause, that arbitration clause is unenforceable." *See also Gregory v. Metro Auto Sales, Inc.*, 158 F. Supp. 3d 302, 305 (E.D. Pa. 2016); *Walker v. Metro Auto Sales Inc.*, No. 254 EDA 2013, 2014 WL 10937074, at *3 (Pa. Super. Ct. April 7, 2014); *Knight v. Springfield Hyundai*, 81 A.3d 940, 948-49 (Pa. Super. Ct. 2013); *Mount v. Peruzzi of Langhorne LLC*, No. CV 21-2166, 2021 WL 3708714, at *3 (E.D. Pa. Aug. 20, 2021).

Simply put, *Knight* is on all fours with the facts of Plaintiffs' claims based upon their RISCs that are before the Court respecting the unenforceability of an arbitration clause being contained exclusively in a document separate from the RISC (here in the separate RFAs which are not enforceable under 12 P.S. § 6221(a)).. Against the weight of this state appellate and federal law interpreting the same issue presented, CARVANA argues disingenuously a single (1) state lower court holding which was stated in one paragraph of the opinion and with no supporting reasoning, and which is not controlling on this Court (*see* Def. Motion Exhs. E & F).  Simply put, CARVANA's authority concerning *Burden* is neither controlling nor persuasive authority on which this Court can reasonably rely.

In contrast to CARVANA's desire, this Circuit holds that the Superior Court's holding in *Knight* is entitled to great deference and cannot be disregarded.

> In the absence of guidance from the state's highest court, we are to consider decisions of the state's intermediate appellate courts for assistance in predicting how the state's highest court would rule. *McKenna,* 32 F.3d at 825; *Rolick v. Collins Pine Co.,* 925 F.2d 661, 664 (3d Cir.1991) (in predicting state law, we cannot disregard the decision of an intermediate appellate court unless we are convinced that the state's highest court would decide otherwise). Our review of the district court's determination of state law is *de novo. Kowalsky,* 72 F.3d at 388.

*Gares v. Willingboro Twp.*, 90 F.3d 720, 725 (3d Cir. 1996).  *See also U.S. Underwriters Ins. Co. v. Liberty Mut. Ins. Co.*, 80 F.3d 90, 93 (3d Cir. 1996)("The rulings of intermediate appellate courts must be accorded significant weight and should not be disregarded absent a persuasive indication that the highest state court would rule otherwise").

Finally, CARVANA's standard form RISC, common to both named plaintiffs' transactions, states that Pennsylvania Law governs the contract: "This Contract is governed by the law of Pennsylvania and applicable federal law and regulations."  *See* Am. Compl. Exhibits 2 (ECF 13-2) and 3 (ECF 13-3), pg. 2.   "Arbitration is strictly a matter of contract."  *Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 444 (3d Cir. 1999).  Since the contractual requirements of § 6221 require "all the agreements" between the Plaintiffs and CARVANA, the purported side agreements made by CARVANA in contravention of the mandatory requirements of Pennsylvania law cannot be enforced. This is not such an unusual conclusion since just this week the same result occurred in a case before the Fourth Circuit in which a purported side agreement containing an arbitration agreement between the parties was barred from enforceability based upon the statutory scheme governing their contractual relationship.  *Compare Lyons v. PNC Bank, Nat'l Ass'n*, No. 21-1058, --- F.4th ----,  2022 WL 453060 (4th Cir. Feb. 15, 2022).  *See also Ampex Corp. v. Appel Media, Inc.*, 374 F. Supp. 1114, 1119 (W.D. Pa. 1974) (holding that the disputed contract provision was invalid because it did not comply with a relevant statutory requirement).

Based upon the foregoing CARVANA's request to compel arbitration should be DENIED. CARVANA has not shown it is entitled to a judicially created exception to § 6221 to permit it to enter into side agreements when other retain car sellers are able to comply with the same requirements.  If CARVANA wishes to obtain that relief, its remedy is to go to the Legislature and

explain why it cannot do what most other similar parties in the Commonwealth have done by putting all terms into their RISCs.

**B.  Plaintiffs Sufficiently Plead their causes of action**

**1.  Plaintiffs Sufficiently Plead Breach of Contract**

In its effort to dismiss this action, CARVANA continues to seek for the Court to ignore Pennsylvania law governing its sales conduct and its apparent contempt for its own customers by the breathtaking argument that the RISC does not require it to permanently register their vehicles to their consumer purchasers. As already pointed out above, Carvana collects title and registration fees in the RISC contract from consumers, including the Plaintiffs, clearly described as to be paid over by Carvana to public officials.  Pennsylvania law provides:

> (a)  Costs payable by buyer.—An installment seller of a motor vehicle under an installment sale contract may require the buyer to pay the following other costs incurred in the sale of a motor vehicle under the contract:
> (1)  **Fees payable to the Commonwealth for filing a lien or encumbrance on the certificate of title to a motor vehicle sold under the contract or collateral security for the motor vehicle**.
> (2)  Fees payable to a public official for filing, recording, satisfying or releasing the contract or instruments securing the buyer's obligation.
> …
>
> (b)  Costs for which buyer voluntarily contracts.—The installment seller of a motor vehicle under an installment sale contract may contract with the buyer to pay on behalf of the buyer the following other incidental costs relating to the sale of the motor vehicle, for which the buyer has voluntarily contracted:
> (1)  **Fees payable to the Commonwealth for registration of the motor vehicle and issuance or transfer of registration plates.**
> …

12 P.S. § 6242 (emphasis added).

Moreover, CARVANA cannot argue that it is not otherwise legally bound to permanently register the subject vehicles for the plaintiffs because it also has a statutory duty under Pennsylvania law to only use temporary registration paper plates for a period of thirty (30) days:

(a)  *Applicability.* This section pertains to the use of a temporary registration plate by the person to whom it was issued.

…

(c) *Expiration of temporary registration plates.* Temporary registration plates shall expire as follows)

   *(1) Rules pertaining to cardboard plates*

   (i) A cardboard temporary registration plate shall expire and become void upon the occurrence of one of the following :

   (A)     Issuance of registration from another state.

   (B)     Rescission of a contract to purchase a vehicle.

   (C)     Expiration of 30 days from the date of issuance.

   (ii)  Upon expiration of a cardboard temporary registration plate, the person to whom it was issued shall destroy it.

Pa. Code § 43.12.

Of course, as the well pled allegations show, CARVANA recklessly and knowingly disregards the law in this respect.  It also presents no legal basis to the Court to permit it to issue a temporary tag or plate from another jurisdiction unrelated to the purchaser's state of residence or location purchased.  Indeed, the laws of the applicable jurisdictions from which CARVANA issued temporary plates only contemplate such issuance for vehicle owners anticipating operating the vehicles in the state of issue, as in Pennsylvania and Tennessee, or purchasing the vehicle in the state of issuance, as in Arizona, to wit:

• In Tennessee, the statues states in relevant part that "'temporary operation permit' means a permit which the commissioner or the commissioner's designee is authorized to issue to an applicant desiring to operate a motor vehicle, otherwise subject to registration in

Tennessee, over the streets and highways of this state for a temporary period of thirty (30) days…". Tn. Code § 55-4-115;

- In Pennsylvania, "Temporary registration plates shall be issued only in conjunction with an application for title and registration of a vehicle within this Commonwealth or for the purpose of driving or otherwise moving a vehicle purchased in this Commonwealth to another state or country for titling, registration, use or resale there." Pa. Code § 43.6;

- In Arizona, "A nonresident who purchases an unregistered vehicle ***in this state for removal to the state of residence of the purchaser*** shall obtain a special ninety-day nonresident registration permit for the vehicle under § 28-2154.01. Furthermore, "[c]ompliance with this section and § 28-2154 allows delivery of the vehicle to a nonresident purchaser in this state."

To the extent that CARVANA appears to have breached its contractual obligations in this regard, it should reimburse the plaintiffs and class members affected thereby:

> (e)  Costs not disbursed.-- Costs that are collected from a buyer or included in the buyer's obligation under an installment sale contract but that are not disbursed by the seller as contemplated shall be immediately refunded or credited to the buyer.
> 12 P.S. § 6242.To state a claim for breach of contract, the plaintiff must establish:
> "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." *Gorski v. Smith*, 812 A.2d 683, 692 (Pa. Super. Ct. 2002).

*Stein v. Matheson*, 539 F. Supp. 3d 463, 472 (E.D. Pa. 2021).

Here, the well pled facts show that the Plaintiffs entered in contracts (i.e. the RISCs) with CARAVA subject to Pennsylvania law, CARAVA breached those contracts by failing to timely obtain permanent registration(s), and as a result Plaintiffs paid sums to CARVANA for services

not performed.   Therefore Plaintiffs have properly stated their breach of contract claims against

CARVANA and its motion to dismiss that claim should be DENIED.  See also 12 P.S. § 6242(e).

> **2.  Plaintiffs Sufficiently Plead Violation of the UTPCPL, and The Gist-Of-The-Action Doctrine ("GOTAD") Does Not Apply**

The GOTAD is not a bar to plaintiff's UTPCPL claims because CARVANA's duties

relevant herein with respect to Plaintiffs are not solely a matter of contract, but are instead imposed

by law under the cited licensing and registration regulations and statutes herein (as well asunder

the prohibition of deceptive practices under the UTPCPL).  CARVANA's arguments are simply

not based on guiding appellate law regarding application of the GOTAD.

It should first be noted before exploring relevant case law that CARVANA attempts to

have it both ways regarding the title and registration fees. Its motion opposes Plaintiffs' breach of

contract allegations by arguing that Carvana did not contractually promise payment of

title/registration fees to "permanently license and register the vehicles properly in exchange for the

fee it charged,"[3] but when opposing Plaintiffs' UTPCPL arguments thereafter, it characterizes

payment of title/registration fees as a contractual matter which the GOTAD overrules.

In *Dixon v. Northwestern Mutual*, 146 A.3d 780, 790 (Pa. Super. Ct. 2016), the Court

analyzed the UTPCPL in the context of the GOTAD as to whether an involved breach of duty

arises from contract or broader social duties. In *Dixon*, the plaintiff alleged defendants negligently

misrepresented the premium amount due under an insurance contract which constituted actionable

misstatements under the UTPCPL. The court held a UTPCPL violation was proven:

> Under the UTPCPL's catchall provision, "unfair or deceptive acts or practices" can
> include "engaging in any fraudulent or deceptive conduct which creates a likelihood
> of confusion or misunderstanding." 73 P.S. 201-2(4)(xxi).

---

[3]      Mem. in Sup. of Motion, p. 14.

> Deceptive conduct ordinarily can only take one of two forms, either fraudulent or negligent. As noted above, the pre-1996 catchall provision covered only fraudulently deceptive practices. The broadening of the UTPCPL so as to not require fraud therefore *ipso facto* makes negligent deception, *e.g.,* negligent misrepresentations, actionable under the post-1996 catchall provision.

*Dixon*, *supra* at 789-790.

In *Earl v. NVR*, the Third Circuit endorsed expressly the Pennsylvania Superior Court's analysis and holding in *Knight v. Springfield Hyundai*, 81 A.3d 940 (Pa.Super. 2012) and held the GOTAD does not apply to almost exactly the same type of pre-sale marketing and advertising-based claims instantly at issue herein.   In *Earl*, the plaintiff's UTPCPL claims were based on the defendant's "marketing, describing the home as one which would contain 'quality architecture, timeless design, and beautiful finishes.'"  *Earl v. NVR, Inc.*, 990 F.3d 310, 314-15 (3d Cir. 2021). Like the instant matter, the promises were entirely prospective, in *Earl* involving the promise to remedy any deficiencies in the future construction of the home rather than a promise to pay fees to public officials for registration.  *Id.* at 312.  The Court stated in relevant part:

> As did the plaintiff in *Knight*, Earl alleges NVR made false representations to her about the Home prior to the formation of the contract (in terms of how the Home was "marketed"), in further discussions held during the contract period, and while the Home was in the process of being constructed. Earl also alleges that NVR made false representations after the contract period, once she moved into the house. These alleged actions are collateral to the terms of the contract itself.

*Id.* at 315.

"[T]he mere existence of a contract between two parties does not" turn a claim "for injury or loss suffered as the result of actions of the other party in performing the contract" into "one for breach of contract."  *Bruno v. Erie Ins. Co.*, 106 A.3d 48, 69 (Pa. 2014).  Instead, "the nature of the duty alleged to have been breached, as established by the underlying averments supporting the claim in a plaintiff's complaint, [is] the critical determinative factor in determining whether the claim is truly one in tort, or for breach of contract." *Id.* at 68 (footnote omitted).  If "the facts

establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the Case law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort." *Id.* (citations omitted).  As the court in *Earl v. NVR* recognized, the duties arise out of the licensing and registration regulations and statutes in this case, discussed *supra*, which exist independent of the contract and apply to all individuals and support Plaintiffs' UTPCPL claims.

The *Bruno* Court, in fact, refused to dismiss the insured's Bad Faith Insurance Claim under the GOTAD, because "the duty at issue in that claim is the statutorily created obligation of Erie to have acted in good faith with respect to payment of the Brunos' first party claims for property damage under their insurance policy.  *Bruno*, 106 A.3d at 71 n18; *Reitmeyer; Ash v. Cont'l Ins. Co.,* 593 Pa. 523, 932 A.2d 877, 885 (2007) (holding that action against insurer for bad faith conduct pursuant to 42 Pa. C.S.A. § 8371 is for breach of a duty "imposed by law as a matter of social policy, rather than one imposed by mutual consensus"; thus, action is in tort).

Thus based on the foregoing, CARVANA had a duty independent of contract not to violate licensing and registration laws and the UTPCPL by its acts or omissions.

Finally regarding CARVANA's argument that Plaintiffs have not sufficiently plead reliance for their UTPCPL claim in Count II, CARVANA again resorts to its failed argument that there can be no reliance on the RISC because the RPA is the operative document. Beyond same, Plaintiffs agreed to pay the fees in their RISC in reliance to CARVANA's promise and agreement with them.  Plaintiffs are also entitled to rely upon CARVANA's express promise to pay the fees paid to public officials in the RISC implicitly being administered in a timely lawful manner to gain permanent title and registration.  Moreover, the element of justifiable reliance is also satisfied, in addition by the Plaintiffs agreement to pay the fees sought for the services, with respect to

Plaintiffs' UTPCPL claim to the extent this claim is also based on material omissions, namely failing to disclose.[4]

Many cases dealing with misleading and deceptive practices hold that reliance is presumed where – as here – the defendant omitted rather than misrepresented material information. *See Cave v. Saxon Mortgage Services, Inc*., No. 11-cv-4586 (E.D. Pa. Feb. 6, 2013)(plaintiffs entitled to a presumption of reliance where mortgage servicer giving borrowers an In-house loan modification omitted an estimate of the amount of Plaintiffs' balloon payment, an explanation of how the balloon payment would be calculated, or an amortization schedule for Plaintiffs' payments); *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 159, 128 S.Ct. 761, 169 L.Ed.2d 627 (2008) (proof of reliance not required if there is an omission of a material fact by one with a duty to disclose); *Zwiercan v. General Motors Corp.*, 2002 WL 31053838, 58 Pa. D. & C. 4th 251, 259 (Pa.Com.Pl. 2002) (under the UTPCPL, plaintiff not required to prove reliance where manufacturer failed to disclose a safety defect stating "a manufacturer has a duty to disclose a known latent defect to a purchaser when the purchaser is unsophisticated and does not have access to the same information as the manufacturer." *Zwiercan*, 2002 WL 31053838, at *3, 58 Pa. D. & C. 4th at 259); *Drayton v. Pilgrim's Pride Corp.*, No. 03-cv-2334, 2004 WL 765123, at *7 (E.D. Pa. Mar. 31, 2004)(under the UTPCPL, plaintiff not required to plead reliance where defendants failed to disclose their poultry product was adulterated).

---

[4]   Not only have the Plaintiffs pled such facts but the pattern is supported by dozens of experiences of the putative class members' stories alleged in the Amended Complaint, that Carvana has a systemic ability to timely and lawfully convey title and registration to buyers for the cars it sells to them, e.g. where Carvana confessed lacking title to a vehicle sold as with Burton and Johnson, respectively Am. Compl. ¶¶ 80-82, 131-134, and due to grossly extended wait times in excess of a year and counting that defy reasonable explanation as with Stalls, Burgess, and Hawthorne, respectively Am. Compl. ¶¶ 40-49, 61-75 92-96.

Based upon the foregoing CARVANA's motion to dismiss Plaintiffs' UTPCPL claims should be DENIED.

## IV. CONCLUSION

Plaintiffs believe their well pled Amended Complaint sufficiently states claims for relief and they should not have their claims compelled to arbitration under Pennsylvania contract laws governing their relationship with CARVANA. For this reason, CARVANA's motion should be DENIED.  If the Court believes Plaintiffs have not properly pled claims, they seek leave to amend their pleading to correct any deficiencies.

Dated: February 18, 2022

*/s/Robert P. Cocco*
Robert P. Cocco, Esquire
Attorney I.D. No. 61907
1500 Walnut St., Ste. 900
Philadelphia, PA  19102

*/s/ Phillip R. Robinson*
Phillip R. Robinson
*Admitted Pro Hoc Vice*
Consumer Law Center LLC
8737 Colesville Road, Suite 308
Silver Spring, MD 20910
(301) 448-1304
phillip@marylandconsumer.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify a copy of the foregoing was sent to all counsel of record through the Court's CM/ECF system when filed with the Court.

*/s/Robert Cocco*
Robert Cocco