**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DANA JENNINGS and JOSEPH A. FURLONG, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>CARVANA, LLC,<br><br>Defendant. | Case No. 5:21-cv-05400<br><br>Hon. Edward G. Smith |

**REPLY IN SUPPORT OF CARVANA, LLC's**
**MOTION TO COMPEL ARBITRATION AND TO DISMISS**


Paul G. Gagne (Pennsylvania ID No. 42009)
pgagne@kleinbard.com
KLEINBARD LLC
Three Logan Square
Philadelphia, PA 19103
Telephone: (215) 523-5302

Eric Leon (New York Bar No. 2626562) (Admitted *Pro Hac Vice*)
eric.leon@lw.com
Marc S. Werner (New York Bar No. 5301221) (Admitted *Pro Hac Vice*)
marc.werner@lw.com
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200

Robert C. Collins III (Illinois Bar No. 6304674) (Admitted *Pro Hac Vice*)
robert.collins@lw.com
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700


March 11, 2022

*Attorneys for Defendant Carvana, LLC*

**TABLE OF CONTENTS**

INTRODUCTION ....................................................................................................................1

ARGUMENT ........................................................................................................................2

I. The Court Should Enforce Plaintiffs' Agreements to Arbitrate Their Individual Claims ...........................................................................................................................2

A. *Knight* And Its Progeny Do Not Prevent Individual Arbitration Here ....................3
B. Furlong's Claims Are Governed By Georgia Law .................................................5
C. Plaintiffs' Interpretation Of The MVSFA Is Preempted By The FAA....................6
D. The Only State Court To Have Evaluated The One-Document Rule In The Context Of Carvana's RISC Compelled Arbitration ..............................................8

II. Alternatively, Plaintiffs' Claims Should Be Dismissed.....................................................8

A. Plaintiffs' Breach Of Contract Claims Should Be Dismissed ................................8
B. Plaintiffs' UTPCPL Claims Should Be Dismissed.................................................9

CONCLUSION....................................................................................................................10

## TABLE OF AUTHORITIES

**Pages**

**CASES**

*Ampex Corp. v. Appel Media, Inc.*,
374 F. Supp. 1114 (W.D. Pa. 1974) .................... 4

*Angino v. Wells Fargo Bank, N.A.*,
666 F. App'x 204 (3d. Cir. 2016) .................... 9

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) .................... 6, 7, 8

*Brooks v. Branch Banking & Tr. Co.*,
107 F. Supp. 3d 1290 (N.D. Ga. 2015) .................... 9

*Bruno v. Erie Ins. Co.*,
106 A.3d 48 (Pa. 2014) .................... 10

*Burden v. Carvana, LLC*,
No. 20081110 (Pa. Ct. Com. Pl.) .................... 8

*Cahill v. Alt. Wines, Inc.*,
2013 WL 427396 (N.D. Ia. Feb. 4, 2013) .................... 7

*Commonwealth v. Chesapeake Energy Corp.*,
247 A.3d 934 (Pa. 2021) .................... 5

*Dean v. Draughons Jr. College, Inc.*,
917 F. Supp. 2d 751 (M.D. Tenn. 2013) .................... 7

*Debbs v. Chrysler Corp.*,
810 A.2d 137 (Pa. Super. 2002) .................... 10

*Dixon v. Nw. Mut.*,
146 A.3d 780 (Pa. Super. 2016) .................... 10

*Drayton v. Pilgrims Pride Corp.*,
2004 WL 765123 (E.D. Pa. Mar. 31, 2004) .................... 10

*Earl v. NVR, Inc.*,
990 F.3d 310 (3d Cir. 2021) .................... 10

*eToll, Inc. v. Elias/Savion Advert., Inc.*,
811 A.2d 10 (Pa. Super. 2002) .................... 9

*Fitz v. Islands Mech. Contractor, Inc.*,
2010 WL 2384585 (D.Vi. June 9, 2010) ........ 7

*Gregory v. Metro Auto Sales, Inc.*,
158 F. Supp. 3d 302 (E.D. Pa. 2016) ........ 4

*Guia v. World CDJR LLC*,
2019 WL 1745656 (E.D. Pa. Apr. 17, 2019) ........ 4

*HA & W Fin. Advisors, LLC v. Johnson*,
782 S.E.2d 855 (Ga. Ct. App. 2016) ........ 4

*Huegel v. Mifflin Const. Co.*, 796 A.2d 350 (Pa. Super. 2002) ........ 4

*Hunt v. U.S. Tobacco Co.*,
538 F.3d 217 (3d Cir. 2008) ........ 10

*Kiessling v. Am. Bankers Life Assur. Co. of Fla.*,
2008 WL 5248246 (M.D. Pa. Dec. 16, 2008) ........ 7

*KKW Enters. Inc. v. Gloria Jean's Gourmet Coffees Franchising Corp.*,
184 F.3d 42 (1st Cir. 1999) ........ 7

*Knight v. Springfield Hyundai*,
81 A.3d 940 (Pa. Super. 2013) ........ 3, 4, 5, 6

*Litman v. Cellco P'ship*,
655 F.3d 225 (3d Cir. 2011) ........ 5, 6

*Lyons v. PNC Bank, Nat'l Assoc.*,
2022 WL 453060 (4th Cir. 2022) ........ 4

*Mount v. Peruzzi of Langhorne LLC*,
2021 WL 3708714 (E.D. Pa. Aug. 20, 2021) ........ 4

*Norfolk S. Ry. Co. v. Basell USA Inc.*,
512 F.3d 86 (3d Cir. 2008) ........ 5

*Southland Corp. v. Keating*,
465 U.S. 1 (1984) ........ 7

*Taylor v. Extendicare Health Facilities, Inc.*,
147 A.3d 490 (Pa. 2016) ........ 8

*Walker v. Metro Auto Sales Inc.*,
2014 WL 10937074 (Pa. Super. Apr. 7, 2014) ........ 4

*Weiss v. First Unum Life Ins. Co.*,
482 F.3d 254 (3d Cir. 2007) ........ 5

*Yamarick v. Unum Grp.*,
2017 WL 3008751 (E.D. Pa. July 14, 2017) ........ 5

*Zwiercan v. Gen. Motors Corp.*,
2002 WL 31053838, 58 Pa. D. & C 4th 251 (Pa. Com. Pl. 2002) ........ 10

**STATUTES**

12 Pa. C.S.A. § 6221 ........ 1, 4, 5, 6

12 Pa. C.S.A. § 6222 ........ 2

12 Pa. C.S.A. § 6224 ........ 2

12 Pa. C.S.A. § 6242 ........ 8

69 P.S. § 602(a) (1947) ........ 3, 5, 6

9 U.S.C. § 2 ........ 5, 6, 7

Pa. Code § 43.12(a) ........ 9

## INTRODUCTION

Plaintiffs concede that (i) there is a strong federal policy in favor of arbitration, (ii) they signed Arbitration Agreements that include class waivers, (iii) their claims fall within the scope of the Arbitration Agreements, and (iv) the RPAs incorporate the Arbitration Agreements.[1] The only dispute is whether Section 6221(a) of the MVSFA voids their agreements to arbitrate. It does not.

*First*, Plaintiffs cannot have it both ways. Having opted to bring suit challenging the registration, license, and title fees set forth in the RPAs, Plaintiffs cannot avoid the binding agreement to arbitrate set forth in those same contracts. *Second*, Plaintiffs' reliance on *Knight* is misplaced. The claims in *Knight* arose out of the installment contract governing the financing of the vehicle, which did not contain an arbitration clause, whereas Plaintiffs' claims in this case arise out of the RPAs, which do contain an arbitration clause. *Third*, each Plaintiff executed his or her RISC, RPA, and Arbitration Agreement as part of a single transaction and, under basic principles of contract interpretation, those agreements must be read as a single agreement, rather than as disconnected agreements that can be adopted or rejected according to Plaintiffs' litigation needs. *Fourth*, Furlong's RPA is governed by Georgia law, such that the MVSFA would not apply to his claims. *Fifth,* in any event, the FAA preempts any application of Section 6221(a) or *Knight* that would void the agreements to arbitrate.

The Court should alternatively dismiss the Complaint for failure to state a claim. Plaintiffs fail to plead that Carvana breached any term of the RISCs. They also fail to distinguish their UTPCPL claims from their (baseless) breach of contract claims, and thus the UTPCPL claims are barred by the gist of the action doctrine.

[1] Capitalized but undefined terms have the meaning ascribed to them in Carvana's Motion.

## ARGUMENT

### I. THE COURT SHOULD ENFORCE PLAINTIFFS' AGREEMENTS TO ARBITRATE THEIR INDIVIDUAL CLAIMS

In an attempt to evade the arbitration clause in the RPAs, Plaintiffs insist that their claims are actually based on the RISCs, noting that the RISCs identify the disputed fees "***as a total***" summed amount. Opp. (Dkt. 22) ("Opp.") 4. But that "total" does not identify the specific amounts that each Plaintiff allegedly paid for each of the separate registration, license, and title services at issue. *See* Compl. ¶¶ 12, 24. Plaintiffs also note that the RISCs aggregate the disputed fees "under the description, 'Paid to Public Officials.'" Opp. 4. But that description does not describe the specific registration, license, and title services that Carvana allegedly promised to provide. *See* Compl. ¶¶ 12-30; Jennings RISC (Dkt. 13-2); Furlong RISC (Dkt. 13-3). Without reference to the RPAs, it is impossible to determine what portion of the "total" fee was attributable to those registration, license, and title services.[2]

Plaintiffs argue that "[t]o the extent that only the RPA specifically itemizes the disputed title/plate/registration fees rather than the RISC," the RISCs violate a requirement in the MVSFA that these fees be itemized in the RISCs. Opp. 4-5 (citing 12 Pa. C.S.A. §§ 6222(5)(v), 6224). This argument is unavailing, as there is no such requirement in the MVSFA. Section 6222(5) only requires that "each component of each subparagraph" of Section 6222(5) be "listed separately." 12 Pa. C.S.A. § 6222(5)(v). Subparagraph 5(i), for example, requires the RISC to list the "purchase price," including six (6) separate "components" listed in Subparagraphs 5(i)(A)–(F). In contrast, Section 6222(5)(v), upon which Plaintiffs rely, only requires that one line item for certain "other charges"—plural—be included. *See* 12 Pa. C.S.A. § 6222(5)(v). The RISCs do just that, setting

[2] Plaintiffs submit a misleading chart that proves the point. Opp. 4. That chart outlines the specific fees at issue and cites only to the RISCs, but the RISCs do not provide the information in the body of the chart. That information comes from the RPAs, not the RISCs.

forth the fees "Paid to Public Officials" in a separate line item. *See* Jennings RISC (Dkt. 13-2); Furlong RISC (Dkt. 13-3). The MVSFA does not require more.

In addition to being wrong, Plaintiffs' argument about the MVSFA itemization requirement is irrelevant. The purpose of the MVSFA is to govern the *financing* of motor vehicle sales. *See* 69 P.S. § 602(a) (1947) (MVSFA intended to regulate the "financing of the sale of motor vehicles"). Plaintiffs, however, allege no claims or injuries relating to the *financing* of their purchases.[3] They instead allege that Carvana "breach[ed] its promises" to provide permanent registration, license, and title and that Carvana was "unfairly enriched by receiving fees from services it never timely performed."[4] Opp. 2. Having based their claims on the RPAs, Plaintiffs cannot avoid the arbitration and class-waiver provisions therein.

### A. ***Knight*** And Its Progeny Do Not Prevent Individual Arbitration Here

Plaintiffs rely heavily on *Knight v. Springfield Hyundai* and its progeny, but *Knight* does not bar arbitration here. *See* Opp. 5-8. *Knight* dealt with a plaintiff who said she was "canceling the RISC because of Dealer's misconduct, but would retain possession of the vehicle as security against the amounts owed her." *Knight v. Springfield Hyundai*, 81 A.3d 940, 944 (Pa. Super. 2013). In response, the financier "repossessed the vehicle without notice or warning." *Id.* The dispute in *Knight* centered on whether there had been a breach of the terms of the parties' RISC and whether a lender had wrongfully repossessed a purchaser's vehicle, and it was governed exclusively by the RISC, which, as the court noted, "delineated the details of the sale and the financing agreement." *See id.* at 943. On ***those*** facts, the *Knight* court applied the predecessor of

[3] Plaintiffs also do not allege that the RISCs violate the MVSFA's itemization requirements, and the allegations in Plaintiffs' Complaint would undermine any such claim, if asserted. *See* Compl. ¶¶ 12(c)-(e), 24(c)-(e); *see also* Opp. 4.

[4] Notably, Furlong admits that he now has title and permanent registration. Compl. ¶ 31.

Section 6221(a)(2) to find that a separate arbitration agreement was not enforceable to the dispute at hand. *See id.* at 948-49. Here, in contrast, Plaintiffs seek to enforce a contract for the provision of specific services that are referenced only in, and are governed by, the RPAs. On ***these*** facts, *Knight* cannot be read to invalidate the RPAs and the Arbitration Agreements they incorporate. Indeed, such a result would nullify the very agreements on which Plaintiffs base their claims.[5]

Invalidating the RPAs and the Arbitration Agreements would also violate basic tenets of state contract law. Under Pennsylvania and Georgia law, agreements executed by the same parties as part of the same transaction are read together as a single, integrated whole. *See Huegel v. Mifflin Const. Co.*, 796 A.2d 350, 354-55 (Pa. Super. 2002) ("Where several instruments are made as part of one transaction they will be read together, and each will be construed with reference to the other."); *accord HA & W Fin. Advisors, LLC v. Johnson*, 782 S.E.2d 855, 866 (Ga. Ct. App. 2016). As noted, each Plaintiff executed a RISC, RPA, and Arbitration Agreement at the same time and as part of a single transaction; in fact, the Arbitration Agreements provide that they apply to and are incorporated into the RISCs and RPAs.[6] It would contravene state law and common sense if, as Plaintiffs argue, two of these agreements were of no force or effect at the time they were signed.

---

[5] Plaintiffs' other cases are also distinguishable, including because they involved claims arising from installment contracts. *See Guia v. World CDJR LLC*, 2019 WL 1745656, at *1-2 (E.D. Pa. 2019) (claims based on the fact that *both* the RISC and the buyer's order contained varying purchase prices); *Gregory v. Metro Auto Sales, Inc.*, 158 F. Supp. 3d 302, 304 (E.D. Pa. 2016) (claims based on allegedly inflated trade-in price designed "to make the RISC more attractive"); *Walker v. Metro Auto Sales Inc.*, 2014 WL 10937074, at *1 (Pa. Super. 2014) (plaintiff sued dealership *and* financier (party to RISC) for alleged overpayment); *Mount v. Peruzzi of Langhorne LLC*, 2021 WL 3708714, at *1-2 (E.D. Pa. 2021) (claims arose from wrongful repossession under RISC); *Lyons v. PNC Bank, Nat'l Assoc.*, 2022 WL 453060, at *6 (4th Cir. 2022) (not involving MVSFA and addressing effect of amendment to federal Dodd-Frank Act); *Ampex Corp. v. Appel Media, Inc.*, 374 F. Supp. 1114, 1119 (W.D. Pa. 1974) (not involving MVSFA and considering the Uniform Commercial Code statute-of-frauds requirement).

[6] *See* Furlong RPA (Dkt. 19-2) (executed on June 3, 2021); Furlong Arb. Agmt. (Dkt. 18-6) (same); Furlong RISC (Dkt. 13-3) (same); Jennings RPA (Dkt. 19-1) (executed on January 2, 2021); Jennings Arb. Agmt. (Dkt. 18-4) (same); Jennings RISC (Ex. A to Decl. of R. Collins III) (same).

Additionally, *Knight* is not binding on this Court. This Court is bound only by decisions of the Pennsylvania Supreme Court, which has not addressed whether Section 6221(a)(2) voids an otherwise enforceable arbitration agreement, particularly where, as here, the claims are not based on the RISCs at all. *See Yamarick v. Unum Grp.*, 2017 WL 3008751, at *3 (E.D. Pa. 2017). In this circumstance, the Court must predict how the Pennsylvania Supreme Court would rule, *Norfolk S. Ry. Co. v. Basell USA Inc.*, 512 F.3d 86, 91-92 (3d Cir. 2008),[7] and it would look first to the plain language of Section 6221(a)(2). *See Commonwealth v. Chesapeake Energy Corp.*, 247 A.3d 934, 942, 948 (Pa. 2021). Section 6221(a)(2) states that the RISC shall "contain all the agreements between a buyer and an installment seller *relating to the installment sale* of the motor vehicle sold," 12 Pa. C.S.A. § 6221(a)(2), limiting words that the Pennsylvania legislature chose to include and that must be given effect. *See Chesapeake Energy*, 247 A.3d at 943; *see also* 69 P.S. § 602(a) (1947) (The MVSFA was passed to regulate "*the financing* of the sale of motor vehicles in this Commonwealth"); *Knight*, 81 A.3d at 947 (MVSFA's purpose was "to protect [] citizens from abuses presently existing *in the installment sale* of motor vehicles"). Because the registration, license, and title fees and services at issue here do not relate to the installment sale—that is, the financing terms for the vehicles Plaintiffs purchased—Section 6221(a)(2) does not apply. *See* 9 U.S.C. § 2; *Litman v. Cellco P'ship*, 655 F.3d 225, 230 (3d Cir. 2011).

### B. Furlong's Claims Are Governed By Georgia Law

Furlong's claims are premised on his RPA, and Furlong agreed that Georgia law governs his RPA. Furlong RPA (Dkt. 19-2) at 1. Section 6221(a)(2) and the holding in *Knight* are thus inapplicable. In addition, even if his claims were based on the RISC, Furlong contracted to

[7] Plaintiffs' suggestion that the Court should blindly follow the state's intermediate courts, even in the face of different facts, is not correct. *See, e.g., Weiss v. First Unum Life Ins. Co.*, 482 F.3d 254, 266 (3d Cir. 2007) (rejecting district court's reliance on intermediate court decisions).

purchase his vehicle in Georgia, also agreeing to accept title to and ownership of the vehicle in Georgia. *Id.* The MVSFA was passed to regulate "the financing of the sale of motor vehicles *in this Commonwealth*," *not* out-of-state sales. *See* 69 P.S. § 602(a) (1947). Because Furlong agreed that his sale occurred outside the state, the MVSFA has no applicability to his claims.

**C. Plaintiffs' Interpretation Of The MVSFA Is Preempted By The FAA**

Plaintiffs seek to avoid the preemptive effect of the FAA by erroneously arguing that "[n]othing in 12 P.S. § 6221(a) discriminates against arbitration." Opp. 6 n.2 Adopting Plaintiffs' interpretation of Section 6221(a) would plainly discriminate against arbitration by placing arbitration agreements in motor-vehicle installment contracts on unequal footing with other agreements. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) ("courts must place arbitration agreements ***on an equal footing*** with other contracts").

By its terms, the one-document rule in Section 6221(a)(2) applies only to installment contracts, *not* to all contracts "generally" or even to "any contract" for the sale of a motor vehicle. *See* 12 Pa. C.S. § 6221(a) (applying only to "[a]n installment sale contract"); *Knight*, 81 A.3d at 948 ("not all sales of a motor vehicle are made by installment sales agreements, and thus not all sales require that all agreements be contained in a single document"). As such, the one-document rule is not a generally applicable contract defense; indeed, it would not even apply to all arbitration agreements in all motor vehicle sales contracts. *See Litman*, 655 F.3d at 231 (arbitration agreements can only be invalidated "upon such grounds as exist at law or in equity for the revocation ***of any contract***," 9 U.S.C. § 2, meaning "***generally applicable*** contract defenses, such as fraud, duress, or unconscionability"). Instead, the one-document rule would impermissibly place arbitration agreements in the financed motor-vehicle space on ***unequal footing*** by subjecting certain arbitration agreements to a requirement (the one-document rule) that applies to some motor vehicle contracts, but not others. *See Knight*, 81 A.3d at 948 (noting that unlike another statute

discussed, the MVSFA does not apply "to all motor vehicle sales generally"). More broadly, the one-document rule would place arbitration agreements in the financed motor-vehicle context on ***unequal footing*** with arbitration agreements in all other contexts that are not subject to the rule.[8] *See Kiessling v. Am. Bankers Life Assur. Co. of Fla.*, 2008 WL 5248246, at *3 (M.D. Pa. 2008). Such an application of the one-document rule is impermissible and preempted. *See Southland Corp. v. Keating*, 465 U.S. 1, 11 (1984) ("We see nothing in the [FAA] indicating that the broad principle of enforceability is subject to any additional limitations under State law.").

Even if the one-document rule were not preempted on its face, it would still be preempted because, as applied, it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" in enacting the FAA. *See Concepcion*, 563 U.S. at 352. *Knight* and its progeny have fashioned a rule that "disproportionately disfavor[s] arbitration agreements." *Dean v. Draughons Jr. College, Inc*., 917 F. Supp. 2d 751, 763 (M.D. Tenn. 2013). Proving the point, Plaintiffs' own brief lists a number of cases in which courts applied *Knight* to invalidate otherwise enforceable arbitration agreements. *See, e.g.*, Opp. 7. As a result, the rule announced in *Knight* frustrates the "principal purpose" of the FAA to "ensur[e] that private arbitration agreements are enforced according to their terms." *See Concepcion*, 563 U.S. at 344. Indeed, if presented with the question, both the U.S. Supreme Court and the Pennsylvania Supreme Court would find that the state rule is preempted, and this Court should do the same. *See*

---

[8] Courts hold that state laws that only apply to a specific type of contract or industry are not "generally applicable" contract defenses, do not meet the FAA's saving clause, and are preempted. *See, e.g., Cahill v. Alt. Wines, Inc.*, 2013 WL 427396, at *5 (N.D. Ia. 2013) ("Iowa Code section 537A.10(3)(a) is not a generally applicable contract defense comparable to fraud, duress or unconscionability. Rather, section 537A.10(3)(a) applies only to franchise agreements and, therefore, violates the Supremacy Clause because it directly conflicts with § 2 of the FAA."); *Fitz v. Islands Mech. Contractor, Inc.*, 2010 WL 2384585, at *7 (D.Vi. 2010); *KKW Enters. Inc. v. Gloria Jean's Gourmet Coffees Franchising Corp.*, 184 F.3d 42, 50 (1st Cir. 1999).

*Concepcion*, 563 U.S. at 344-51; *Taylor v. Extendicare Health Facilities, Inc.*, 147 A.3d 490, 509-10 (Pa. 2016) (Pennsylvania rule "[stood] as an obstacle to achieving the objectives of Congress in enacting the FAA" and was thus preempted).

**D. The Only State Court To Have Evaluated The One-Document Rule In The Context Of Carvana's RISC Compelled Arbitration**

Contrary to Plaintiffs' assertion, the Court can and should consider the decision of the Pennsylvania state court in *Burden v. Carvana, LLC*, No. 20081110 (Pa. Ct. Com. Pl.). *See* Opp. 7. The *Burden* court is the *only* court that has considered Section 6221(a) and *Knight* in ruling on a motion to compel arbitration of a dispute between a customer and Carvana. The plaintiff in *Burden* asserted that the "subject RISC" did not contain an arbitration clause and that the MVSFA thus precluded arbitration. *See* Dkt. 18-7, ¶¶ 193-94. The court nonetheless compelled arbitration of the claims. Dkt. 18-8. This Court should do the same for the reasons discussed.

**II. ALTERNATIVELY, PLAINTIFFS' CLAIMS SHOULD BE DISMISSED**

**A. Plaintiffs' Breach Of Contract Claims Should Be Dismissed**

Plaintiffs no longer assert that Carvana breached the implied duty of good faith and fair dealing and argue instead that Carvana breached the terms of the RISCs. But Plaintiffs still do not, because they cannot, point to any provision in the RISCs that Carvana supposedly breached.

*First*, Plaintiffs suggest that the RISCs "clearly described" the title and registration fees at issue. *See* Opp. 9. As discussed, that is simply not true; the RISCs make no mention of title and registration fees. *See supra* at 2-3; Mem. 2-3. Plaintiffs then seem to suggest that Sections 6242(a) and 6242(b) of the MVSFA require the RISCs to individually describe these fees and that Carvana violated the statute by not doing so. Opp. 9 (citing 12 Pa. C.S.A. § 6242(a) & (b)). For one thing, those sections are permissive, merely identifying certain fees an installment sale contract "may" set forth. *See* 12 Pa C.S.A. § 6242(a) & (b). More importantly, Carvana's supposed violation of

the statute would not supply grounds for a breach of contract claim; the fact remains that the RISCs here do not outline the title and registration fees at issue, much less the alleged services that were to be provided for those fees, and thus do not support a breach of contract claim.

*Second*, Plaintiffs contend that Carvana was "otherwise legally bound to permanently register the subject vehicles" under Pennsylvania law and to not issue temporary plates in violation of Pennsylvania, Tennessee, and/or Arizona law. Opp. 9-11. But again, Plaintiffs do not, and cannot, point to any term of the RISCs that imposes such duties or that even discusses registration services at all.[9] *See, e.g., Angino v. Wells Fargo Bank, N.A.*, 666 F. App'x 204, 208 (3d. Cir. 2016); *Brooks v. Branch Banking & Tr. Co.*, 107 F. Supp. 3d 1290, 1296 (N.D. Ga. 2015).

**B. Plaintiffs' UTPCPL Claims Should Be Dismissed**

Plaintiffs' UTPCPL claims fare no better. *First*, Plaintiffs suggest that Carvana "attempts to have it both ways regarding the title and registration fees" by "oppos[ing] Plaintiffs' breach of contract allegations by arguing that Carvana did not contractually promise payment of title/registration fees" while also opposing Plaintiffs' UTPCPL claims under the gist of the action doctrine ("GOTAD"). Opp. 12. There is no inconsistency. Plaintiffs allege that Carvana breached terms of the RISCs (which terms simply do not exist) and that Carvana violated the UTPCPL by charging fees for services that it did not perform. Compl. ¶ 202. Plaintiffs allege (incorrectly) that the assessment of those fees occurred under the RISC, *id.* ¶¶ 16, 20, 28, 30, meaning "in the course of the parties' contractual relationship." *See eToll, Inc. v. Elias/Savion Advert., Inc.*, 811 A.2d 10, 20 (Pa. Super. 2002). Thus, accepting Plaintiffs' own allegations, their UTPCPL claims are based in contract and barred by the GOTAD. The cases Plaintiffs cite do not change this conclusion

[9] Plaintiffs also fail to articulate how Carvana's alleged conduct amounted to a violation of the state statutes they reference. *See* Opp. 9-11. For instance, Plaintiffs cite a Pennsylvania statute that imposes obligations on *drivers*—not dealers like Carvana. *See* Pa. Code § 43.12(a) ("This section pertains to the use of a temporary registration plate *by the person to whom it was issued*.").

because they involved UTPCPL claims based on statements "collateral" to the relevant contracts, not ones allegedly contained within those contracts. *See Earl v. NVR, Inc.*, 990 F.3d 310, 315-16 (3d Cir. 2021) (misrepresentations made prior to contract period); *Dixon v. Nw. Mut.*, 146 A.3d 780, 789 (Pa. Super. 2016) (claims based on post-contract statements).[10]

*Second*, Plaintiffs fail to allege reliance, Mem. 15-16, and are incorrect that reliance should be presumed. Opp. 14-15. As Plaintiffs' cases make clear, under Pennsylvania law, reliance is only presumed where a *manufacturer* has duty to disclose a known defect. *Drayton v. Pilgrims Pride Corp.*, 2004 WL 765123, at *7 (E.D. Pa. Mar. 31, 2004) (reliance could be presumed only because manufacturer had duty to disclose latent defects); *Zwiercan v. Gen. Motors Corp.*, 2002 WL 31053838, at *3 (Pa. Com. Pl. 2002) (similar). Carvana is not a manufacturer, and it has no "duty to warn" under the UTPCPL, so Plaintiffs are not relieved from the requirement to plead reliance. Their attempt to avoid this requirement by claiming "material omissions" (which they do not plead) is equally unavailing. *See Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 227 (3d Cir. 2008) ("A presumption of reliance is . . . inconsistent with Pennsylvania Superior Court precedent," including where plaintiff alleges he relied on material omission) (citing *Debbs v. Chrysler Corp.*, 810 A.2d 137, 157-58 (Pa. Super. 2002)). Plaintiffs have not alleged reliance and cannot sustain a UTPCPL claim. Mem. 16-17.

## CONCLUSION

For the reasons set forth above and in Carvana's Motion, the Court should compel arbitration on a non-class basis and dismiss or stay this case. Alternatively, the Court should dismiss the Complaint for failure to state a claim on which relief can be granted.

[10] Contrary to Plaintiffs' suggestion, this case does not involve Carvana's alleged "violation of a broader social duty owed to all individuals." Opp. 14 (quoting *Bruno v. Erie Ins. Co.*, 106 A.3d 48, 69 (Pa. 2014)). Rather, Plaintiffs claim they paid fees for licensing and registration services that Carvana did not provide. Plaintiffs' reliance on *Bruno* is therefore misplaced.

Dated: March 11, 2022

Respectfully submitted,

/s/ *Eric Leon*
Eric Leon, one of the Attorneys for Carvana, LLC

Eric Leon (New York Bar No. 2626562) (Admitted *Pro Hac Vice*)
eric.leon@lw.com
Marc S. Werner (New York Bar No. 5301221) (Admitted *Pro Hac Vice*)
marc.werner@lw.com
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864

Robert C. Collins III (Illinois Bar No. 6304674) (Admitted *Pro Hac Vice*)
robert.collins@lw.com
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Facsimile: (312) 993-9767

Paul G. Gagne (Pennsylvania ID No. 42009)
pgagne@kleinbard.com
KLEINBARD LLC
Three Logan Square
Philadelphia, PA 19103
Telephone: (215) 523-5302

**CERTIFICATE OF SERVICE**

I, Eric Leon, hereby certify that I caused a copy of the foregoing to be served on the parties listed below, via the Court's ECF system, on March 11, 2022.

Robert P. Cocco
ROBERT P. COCCO, P.C.
Pa. Id. No. 61907
1500 Walnut Street, Suite 900
Philadelphia, PA 19102
Telephone: (215) 351-0200
Email: bob.cocco@phillyconsumerlaw.com

*Attorney for Plaintiffs*

Dated: March 11, 2022

/s/ *Eric Leon*
Eric Leon, One of the Attorneys for
Carvana, LLC

Eric Leon
eric.leon@lw.com
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020