# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DANA JENNINGS, *ON HIS OWN BEHALF AND ON BEHALF OF OTHER SIMILARLY SITUATED PERSONS*, et al., | )<br>)<br>)<br>)<br>) | Case No. 5:21-cv-05400-EGS |
| Plaintiffs, | ) | Holmes Building, 4th Floor |
| | ) | 101 Larry Holmes Drive |
| v. | ) | Easton, PA 18042-7722 |
| | ) | |
| CARVANA LLC, | ) | |
| | ) | June 7, 2022 |
| Defendant. | ) | 10:07 a.m. |

TRANSCRIPT OF HEARING OF DEFENDANT'S MOTION TO COMPEL
ARBITRATION AND TO DISMISS
BEFORE HONORABLE JUDGE EDWARD G. SMITH
UNITED STATES DISTRICT COURT JUDGE


APPEARANCES:

For the Plaintiffs:            Law Offices of Robert P. Cocco PC
                               By:  ROBERT P. COCCO, ESQ.
                               1500 Walnut Street
                               Suite 900
                               Philadelphia, PA 19102

For Defendant:                 LATHAM & WATKINS LLP
                               By:  ROBERT C. COLLINS, III, ESQ.
                               330 North Wabash Avenue
                               Suite 2800
                               Chicago, IL 60611

ESR Operator/Deputy Clerk:     Jennifer J. Fitzko

**TRANSCRIPTION SERVICE:**       **TRANSCRIPTS PLUS, INC.**
                                 **435 Riverview Circle**
                                 **New Hope, Pennsylvania 18938**
                                 **Telephone: 215-862-1115**
                                 e-mail CourtTranscripts@aol.com


Proceedings recorded by electronic sound recording, transcript
Produced by transcription service.

1          THE COURT:  You may be seated; thank you.

2          MR. COCCO:  Good morning.

3          THE COURT:  Sorry we're getting started just a little

4 bit late; good morning.

5          MR. COLLINS:  That's okay.

6          THE COURT:  The Court is called to order in the

7 matter of Jennings, et al. versus Carvana, LLC.  This is Civil

8 Action Number 21-5400.  Present in the courtroom on behalf of

9 the plaintiff is Robert Cocco; on behalf of the defendant,

10 Robert Collins.

11          The Court convenes today to hear argument, most

12 importantly in my mind as to whether the arbitration provision

13 and the bar of class action lawsuits set forth in the agreement

14 of sale, and I think it's actually in what you're referring to

15 as the R I S C, correct?

16          MR. COCCO:  RISC.

17          THE COURT: RISC.

18          MR. COCCO:  Yeah, it's a popular term in the auto

19 fraud arena.

20          THE COURT:  Okay.

21          MR. COCCO:  We common abbreviate to that -- to that

22 acronym, yeah.

23          THE COURT:  Okay.  And the question is whether those

24 provisions in that agreement are enforceable with respect to

25 each of the potential class members, including the named class

1  members, whereby they would have to go to arbitration.

2          And the other two issues have to do with the motion

3  to dismiss for failure to state a claim with respect to both

4  the breach of contract and the Unfair Trade Practice and

5  Consumer Protection Law under Pennsylvania statute.

6          And, Mr. Collins, for some reason, you do not want to

7  go forward with class discovery, and resolve the case for all

8  these class members in a very efficient one case, but would

9  rather each one of these plaintiffs arbitrate their claim with

10  Carvana, correct?

11          MR. COLLINS:  Well, Your Honor, I think just to be

12  clear, we're just here on a motion to compel arbitration to the

13  two named plaintiffs' claims.  And so I think we should set

14  aside the question of arbitration for all class members

15  because --

16          THE COURT:  Oh, okay.

17          MR. COLLINS:  Because we're not at that stage yet,

18  right.

19          THE COURT:  Right, there is no class.

20          MR. COLLINS:  There is no class yet, and actually a

21  defense to any class certification would be the arbitration

22  clause because the defense that plaintiffs have raised to our

23  motion is a Pennsylvania rule about the one document rule on a

24  financed motor vehicle sale.  So that defense only applies to

25  financed motor vehicle sales, it doesn't apply to any other

1  motor vehicle sale in Pennsylvania.  And it certainly doesn't

2  apply to any other class member outside of Pennsylvania,

3  because they have asserted a class broader than just

4  Pennsylvania.  So that's a much broader issue than the one

5  we're here on today, which is just related to the two named

6  plaintiffs.

7          THE COURT:  So if I were to rule that the arbitration

8  clause is enforceable as it relates to these two class members,

9  then we have no named class member, correct?

10          MR. COLLINS:  Then we would have -- well, then their

11  cases would be compelled to arbitration and dismissed or

12  stayed, and we wouldn't get to the question of whether they are

13  a representative named plaintiff or not.  We wouldn't get to

14  the class certification question at all.

15          THE COURT:  Okay.  So what happens when the

16  arbitrations -- let's say that happens, and they would go to

17  arbitrations, the arbitrations are resolved with respect to the

18  two named class members, what happens then with this case?

19          MR. COLLINS:  If the arbitration resolves the claims

20  of the two named class members?  We would submit, Your Honor,

21  that the case should be compelled to arbitration, and

22  dismissed.

23          THE COURT:  Okay.  And so you wouldn't want to

24  entertain substitution of named class members.

25          MR. COLLINS:  I don't think so, Your Honor, no,

1  because --

2          THE COURT:  Because --

3          MR. COLLINS:  -- they would also be subject to the

4  arbitration clause.

5          THE COURT:  Okay.  What if they tried to -- and now

6  we're getting ahead of ourselves, and we'll get back to this

7  whole --

8          MR. COLLINS:  Sure, of course.

9          THE COURT:  What if the class was changed to just

10 those who financed their vehicles under -- it was just a

11 Pennsylvania class of members who had purchased cars from

12 Carvana, and they were financed, would that class -- assuming

13 that you didn't win on the arbitration -- compel arbitration,

14 would that change things?

15         MR. COLLINS:  Would that change things in terms of

16 whether it would be compelled to arbitration or whether it

17 would --

18         THE COURT:  Let's start with that.

19         MR. COLLINS:  It wouldn't change things in terms of

20 whether any other named plaintiff should be compelled to

21 arbitration.  Assuming, of course, Your Honor, that we would

22 have to look at each named plaintiff's contracts with Carvana.

23 Because each one -- assuming that named plaintiff also signed

24 an arbitration agreement, and we would have to check that for

25 each one, but assuming they signed an arbitration agreement,

1  then that case belongs in arbitration.  There's a strong

2  Federal policy favoring arbitration --

3          THE COURT:  Absolutely.

4          MR. COLLINS:  -- and -- and there's no dispute as to

5  the current named plaintiffs, and so I assume there wouldn't be

6  any dispute as to other named plaintiffs.  That they signed an

7  arbitration agreement, and that the claims are within the scope

8  of the arbitration agreement, and that there's a strong Federal

9  policy in favor of arbitration.   So none of the normal things

10 are in dispute here.

11         THE COURT:  I think the United States Supreme Court

12 just came down with another case focusing on arbitration and

13 the importance of it.

14         MR. COLLINS:  That's correct.  Actually plaintiffs

15 submitted that case to Your Honor, Morgan.  But we submit, Your

16 Honor -- Carvana submits that that case is actually favorable

17 to us, because while it says you can't -- the Court shouldn't

18 create a procedural rule that is more favorable to arbitration,

19 it still reiterates the decades of Supreme Court precedent that

20 say that the only State rules against arbitration that can be

21 enforced are generally applicable contract defenses, like fraud

22 or duress that apply to all contracts.  And that contract --

23 and that arbitration agreements have to be placed on the same

24 footing as all contracts, it reiterates that longstanding

25 precedent.

1          THE COURT:  Okay.  Now I interrupted the start and

2  finish of your argument.  You know where Mr. Cocco is coming

3  from, can you meet his arguments?  First of all, we know

4  there's an arbitration clause, I'm going to assume there is,

5  that that's not in question.  And we know that there's also a

6  bar to class actions in the agreement.  And let's assume

7  there's no arguments of contract of adhesion, or anything along

8  those sorts.  That this is a contract between a willing

9  buyer/willing seller, and here's what we've agreed to.

10          Now if all of that is true, why would I enforce the

11  arbitration clause?  Why would I not enforce it?  Why would I

12  enforce the bar on class actions?  Why would I not enforce it?

13          MR. COLLINS:  And, Your Honor, would you prefer if I

14  stay here, or I come to the podium.

15          THE COURT:  Wherever you're most comfortable.

16  Wherever you're most comfortable.

17          MR. COLLINS:  If you don't mind, I'll come to the

18  podium.

19          THE COURT:  Sure.

20          MR. COLLINS:  I appreciate that.  And let me say

21  first, Your Honor, that I very much, on a personal level,

22  appreciate you moving the hearing --

23          THE COURT:  Oh, no problem.

24          MR. COLLINS:  -- by a week and a half.  I really

25  greatly do appreciate that, so thank you.

1          THE COURT:  No problem at all, sir.

2          MR. COLLINS:  So let me tackle that directly, right,

3   because you're correct that there is no dispute about is there

4   an arbitration agreement; are we within the scope of it; is

5   there a strong Federal policy?

6          And so what do plaintiffs say?  Well, they say that

7   Pennsylvania has a one document rule in Section 6221 of the

8   Motor Vehicle Sales Finance Act.  That means that the

9   arbitration clause shouldn't be enforced in this case.

10          But we submit first and foremost, Your Honor, that

11   that one document rule doesn't apply in the context of this

12   case.  Why is that?  Well, let's go back to the basic

13   principles of statutory construction and the purpose of the

14   statute.  It's a Motor Vehicle Sales Finance Act, it's in the

15   consumer credit section of the Pennsylvania Code.  And the

16   Generally Assembly enacted the Finance Act to regulate, quote,

17   "the financing" of the sale of motor vehicles in order to

18   protect consumers from predatory lending practices.

19          And plaintiffs point Your Honor to the Knight case,

20   which is not the Supreme Court of Pennsylvania speaking, but

21   the Knight case reiterated that purpose of this statute, it

22   said it's to protect citizens from abuses presently existing in

23   the installment sale of motor vehicles, and to protect

24   consumers in connection with extending consumer credit in

25   conjunction with the installment sale of motor vehicles.

1          So with that purpose in mind, then we look at the

2  language of Section 6221(a), and it says, "An installment sale

3  contract shall contain all the agreements between a buyer and

4  an installment seller relating to" what, "relating to the

5  installment sale of the motor vehicle sold."

6          Well, this dispute, Your Honor, it's not about the

7  financing of the purchase, it's not about the installment sales

8  or whether payments have to be remitted at a certain time, or

9  whether they were not remitted at a certain time.  This dispute

10 is not about whether there's a security interest in the

11 vehicle.  It's not about whether a bank or financier can

12 repossess a vehicle.  It's not about the financing aspects at

13 all.

14         What is this dispute about?  And, Your Honor, if you

15 don't mind me approaching, I have just two handouts that may

16 assist.

17         THE COURT:  Certainly.

18         MR. COLLINS:  And I'm going to give one to counsel

19 first.

20         THE COURT:  Thank you, sir.

21         MR. COLLINS:  Your Honor, I just handed you a copy of

22 plaintiffs' amended complaint and their retail purchase

23 agreements in this case.  And so the question becomes what is

24 this dispute about?  Well, plaintiffs' complaint tells us, in

25 Paragraph 1, it says they bring the case for Carvana's alleged

1  delay in permanently transferring car titles for months and

2  months, which it had contractually represented to hold and

3  agree to transfer.  And it alleges Carvana's failure to timely

4  register cars as it promised and received money to do so.

5          And then, Your Honor, if you look at Paragraphs 16,

6  which is the same as 28, it says, "Carvana failed to provide

7  plaintiff with his permanent registration, as it was required

8  to do so, pursuant to plaintiff's payment for such service."

9          And Paragraphs 30 and 20 says, "Carvana's promises to

10 have the vehicle properly registered in the Commonwealth of

11 Pennsylvania."

12         So this is about services for payments,

13 registration/title services in exchange for payments.

14         And Paragraph 91 and 95, plaintiffs allege that they

15 formed contracts with Carvana, and that Carvana breached the

16 terms of the contracts.

17         So that begs the question, Your Honor, well, what

18 contracts and what terms, right?  And they tell us in

19 Paragraphs 12 and 24 that this is about the license, title,

20 registration services in exchange for particular fees, line

21 item fees.

22         But if you look at the second handout I gave you,

23 Your Honor, the retail purchase agreements, and the highlighted

24 chart on the right side of that, those line item descriptions,

25 and those line item fees appear only in the retail purchase

1  agreements that plaintiffs signed.  It's black and white on the

2  page, and it's not in dispute that if Your Honor looks at the

3  third page of that retail purchase agreement, and both

4  plaintiffs' retail purchase agreements are in this handout,

5  it's not in dispute that the retail purchase agreements

6  incorporate the arbitration agreements, and that the

7  arbitration agreements apply to this dispute.

8         So it's pretty straightforward that this dispute is

9  about services for fees and the retail purchase agreements, and

10 that the retail purchase agreements include the arbitration

11 agreements.

12        Plaintiffs still point Your Honor to the Knight

13 decision, and they say nonetheless, the Knight decision says

14 you can't enforce the arbitration agreement.

15        But the Knight case really doesn't help here because

16 Knight and the cases enforcing Knight are about the financing

17 of the deal.  Those cases are about the security interest in

18 the deal.  Knight itself was about the plaintiff claiming that

19 her vehicle was wrongly repossessed, and the banker claiming it

20 could repossess the vehicle.  And so it was about that security

21 interest in the vehicle.  This case is not that.  Knight was

22 about protecting consumers from longstanding concerns about

23 predatory lending practices.  This has nothing to do with that.

24        And so when Knight -- the Knight court doesn't say

25 that the arbitration agreement in a different contract is

1  voided or abolished.  What it says is that the retail

2  installment contract subsumes the terms of the financing deal.

3  And that makes sense, right?  You put the terms of the

4  financing in the installment contract to prevent from predatory

5  lending practices.

6          But here, we're not talking about that, as I already

7  said.  And so that one document rule doesn't apply to the

8  claims.

9          And if we step back for a second, that has to be the

10 case because plaintiffs can't seek to enforce the licensing,

11 registration and title fees that show up in the retail purchase

12 agreement, but then at the same time say, "But don't look at

13 Page 3."  Right?  "Don't look at the arbitration agreement on

14 Page 3.  We want some terms -- we want to enforce some of the

15 terms, but we don't want to enforce other terms in our

16 contract."

17         And, of course, that's also why the doctrine of

18 equitable estoppel exists, right?  You can't cherry-pick terms

19 of the contract and not enforce other ones.

20         And not to jump ahead too far, Your Honor, but if

21 Knight were to apply, and the RISCs or the installment

22 contracts were the only operative agreements, then that funnels

23 right into our motion to dismiss arguments, right, because then

24 they haven't stated any claims.  There's nothing in the

25 installment contracts that they could point to for a breach of

1   contract.

2           There's another point here, Your Honor, that is a

3   legal point, and it's also a point of common sense, which is

4   the Court should reject plaintiffs' effort to enforce the one

5   document rule here because doing that would violate just

6   fundamental tenets of State contract law.  Each plaintiff

7   signed a retail installment contract, a retail purchase

8   agreement, and an arbitration agreement as part of one package

9   of documents, as part of one transaction, all together.  And

10  what State law tells us is when that happens, you read the

11  contracts as one transaction and as one whole.

12          So even if the Court were to say, "Well, maybe I

13  think the one document rule should apply," which we contend it

14  doesn't, we still would say you have to read it all together.

15  And that is both a legal point, but also a common sense point

16  because the reverse of that would be to say I, Mr. Jennings,

17  or, I, Mr. Furlong, sit down and I sign three contracts, and

18  immediately two of them --

19          THE COURT:  Mean nothing.

20          MR. COLLINS:  -- mean nothing.  And that can't be the

21  case.

22          There's two other points I want to submit to Your

23  Honor, one very briefly, and one, I'll try to be brief, but

24  it's a little bit more complicated.

25          The first is that Mr. Furlong's claims are governed

1  by Georgia law, and this gets back to your question at the very

2  beginning of the hearing, which is about the rest of the class,

3  right.  We're not here on behalf of the rest of the class right

4  now because there is no class, but it's a class proposed on

5  behalf of at least half the states in the country, so the one

6  document rule doesn't apply there.  Georgia doesn't have the

7  one document rule.

8          And Mr. Furlong agreed in his retail purchase

9  agreement, which is also in the second handout I gave you, Your

10 Honor, but the second document in there on Page -- it's Exhibit

11 C, and then the first page of that one, Your Honor.  He agreed

12 in that bolded paragraph not only that his claims were governed

13 by Georgia law, but also that he would take title and ownership

14 to his vehicle in Georgia, and so it's not just that he agreed

15 to Georgia law, he took title and ownership there.  And that,

16 therefore, doesn't run into the Pennsylvania Motor Vehicle Sale

17 Finance Act at all because the General Assembly said in Section

18 602 in the predecessor that the Motor Vehicle Sale Finance Act

19 only applies to the financing of vehicle sales within the

20 Commonwealth, and he agreed to take title and possession

21 outside the Commonwealth.

22          So even if you were -- we contend you don't have to

23 get to these questions, right.  But even if you did, his claim

24 is governed by Georgia law.

25          The last point, Your Honor, and I think it's an

1  important point, quite an important point, and -- is let's

2  assume plaintiffs are right.  Let's assume that the one

3  document rule applies to this dispute, right.  Let's assume

4  that this case is about the financing of the vehicles.  Let's

5  assume that the registration, and title, and licensing services

6  and fees are found -- or should be in the RISC, right, the one

7  document rule applies, and that the -- I'm sorry.  Let's assume

8  that the fees at issue are found in the RISC, and let's assume

9  the one document rule says the arbitration agreement needs to

10  be in the RISC, and not in a related document.

11          In that event, the one document rule still doesn't

12  apply because it runs headlong into Federal Arbitration Act

13  preemption, as the Supreme Court has told us over and over

14  again.  And why is that?  Well, we talked about that in the

15  beginning when you asked about the Morgan case, Your Honor,

16  that Section 2 of the FAA, the savings clause only saves --

17  only allows invalidation on grounds for revocation of, quote,

18  "any contract," right.

19          And the Supreme Court in Concepcion reiterated again

20  the courts must place arbitration agreements on an equal

21  footing with other contracts.  And Concepcion also said nothing

22  in Section 2 suggests an intent to preserve State law rules

23  that stand as an obstacle to the accomplishment of the FAA's

24  objective.

25          And to your question about efficiency at the very

1  beginning, the Supreme Court said, "The overarching purpose of
2  the FAA is to ensure the enforcement of arbitration agreements
3  according to their terms so as to facilitate streamlined
4  proceedings."  Right.  Actually, it would be more efficient for
5  an individual car owner to get their claims resolved quickly
6  than to go through three, four, or five years of class
7  arbitration, that's the purpose of the FAA, and the Morgan case
8  reiterates that.

9        So the one document rule runs into that because it
10  doesn't apply to every contract.  It is not a generally
11  applicable contract defense.  It only applies to financed motor
12  vehicle sales.  It doesn't even apply to non-financed motor
13  vehicle sales, and it certainly doesn't apply to every other
14  contract and every other industry in Pennsylvania.

15        All of those other contracts, all they need to do is
16  meet the basic requirements for contract formation under
17  Pennsylvania law.  And what plaintiffs are trying to say is but
18  put these non -- these financed motor vehicle sales, put them
19  at a higher threshold for contract formation.  That runs right
20  into the FAA.  And we cite cases in our brief where other
21  Federal District Courts in Footnote 8 of our reply where they
22  find that same thing.

23        But the last point is even if the one document rule
24  isn't preempted on its face, it's still preempted as applied.
25  Because, as Concepcion says, rules that disfavor -- and that's

1  a word from <u>Concepcion</u>, rules that disfavor the enforcement of

2  arbitration agreements don't stand.  Because they stand as an

3  obstacle to Congress's principal purpose in enacting the FAA

4  which, as I said, is to ensure the enforcement of arbitration

5  agreements.

6         And here, the one document rule has been applied, as

7  we see in the cites in plaintiffs' brief, largely to disfavor

8  the enforcement of arbitration agreements.  And it's not just

9  the U.S. Supreme Court that would reach this result, Your

10 Honor, it's the Pennsylvania Supreme Court, too.  The

11 Pennsylvania Supreme Court in the <u>Taylor</u> decision in 2016

12 acknowledged the FAA savings clause, but it said, "That will

13 not save State law from preemption," quote, "when a generally

14 applicable contract defense," which we say this isn't, right.

15 We say it's not generally applicable, but let's assume it is,

16 "when a generally applicable contract defense is applied in a

17 manner hostile to arbitration, or when the State law stands as

18 an obstacle to the accomplishment of the FAA's objectives."  So

19 both Supreme Courts tell us the outcome here.

20         And so we submit, Your Honor, that while we don't

21 need to reach the issue of preemption because the Court can

22 read the one document rule apart from this case that's not

23 about financing.  If ultimately you were to decide that they

24 overlap, then preemption would apply.

25         And so we submit that the case should be compelled to

1  arbitration.

2          THE COURT:  Now what about the Georgia plaintiff?

3  They're -- it's a different analysis, correct?  Pennsylvania

4  law doesn't apply.

5          MR. COLLINS:  Right.

6          THE COURT:  Georgia law doesn't have the one document

7  rule.  So what argument is there that arbitration -- the

8  arbitration clause would not be enforceable as opposed -- as

9  against the Georgia resident?

10          MR. COLLINS:  There isn't one.  The only arguments I

11  understand that plaintiff to make, Your Honor, is that the one

12  -- that Pennsylvania law, rather than Georgia law, should

13  apply.

14          THE COURT:  I think -- wasn't the Georgia -- the

15  Georgia purchase, wasn't that a Pennsylvania resident?

16          MR. COLLINS:  That's right, Your Honor.

17          THE COURT:  But he bought the car in -- I'm not quite

18  sure how that works since Carvana works over the Internet,

19  right?

20          MR. COLLINS:  Well, Carvana -- you can also go to a

21  vending machine to do it, but that's right.

22          THE COURT:  If he lives in Pennsylvania, why would he

23  buy his car in Georgia?

24          MR. COLLINS:  He chose -- that's a good question,

25  Your Honor.  I imagine -- I would have to confirm the facts.  I

1 would imagine the car was at a dealership in Georgia.  So

2 Carvana has different dealerships and locations, and so I

3 imagine it was because he chose a car that was at a Georgia

4 dealership.  Just like we could -- if I want to go buy a Honda,

5 and the Honda I want is in New Jersey at a dealership in New

6 Jersey rather than in Pennsylvania.

7           THE COURT:  Well, didn't the car get delivered on a -

8 - I thought Carvana shows in the commercials a car gets

9 delivered right to your front door.

10          MR. COLLINS:  That's true.  So --

11          THE COURT:  So he could buy it in Georgia and it'd be

12 delivered to Pennsylvania?

13          MR. COLLINS:  That's true.  My understanding is --

14 and, again, I would want to confirm all of these -- what's

15 actually possible.  But my understanding is it can be delivered

16 to you, or you can go pick it up, like from a vending machine.

17          THE COURT:  Okay.

18          MR. COLLINS:  I submit that even if he had it

19 delivered to him, he still agreed to take title and possession

20 in Georgia.  So when it was delivered to him, he already owned

21 the car.

22          THE COURT:  Okay.  Okay.

23          MR. COLLINS:  But even -- but even if Pennsylvania

24 law were to apply for all of the same reasons, we would submit

25 it goes to arbitration.

1          THE COURT:  All right.

2          MR. COLLINS:  Your Honor, would you like me to

3   address the arguments in our motion to dismiss under 12(b)(6),

4   as well?  Or would you like me to preserve those?

5          THE COURT:  Why don't I give plaintiffs' counsel an

6   opportunity to talk about to us about arbitration?  Because I

7   won't be getting to those motions if you're successful with

8   respect to arbitration.

9          MR. COLLINS:  Thank you very much, Your Honor.

10          THE COURT:  Certainly, sir.  But I will give you an

11   opportunity to talk about them once --

12          MR. COLLINS:  Okay.

13          THE COURT:  -- we've got this arbitration thing fully

14   argued.

15          MR. COLLINS:  Thank you.

16          THE COURT:  Now I am so used to the power of the

17   arbitration clause, the preference that our courts have always

18   recognized for arbitration when it's in a clause.  So the one

19   thing that throws this into kind of a unique issue is this one

20   document rule, correct?

21          MR. COCCO:  It does, Your Honor.  But interestingly,

22   and my briefing was a little inartful on this point, if I can

23   be a little bit humble in that regard.  What Mr. Collins is

24   missing, it's very important.  It's nothing new in terms of a

25   new or a new document, it's all in there.  But I should have

1  highlighted it more pointedly.

2          Mr. Collins referred to the fact that in the <u>Knight</u>

3  decision, the judge said that the RISC subsumes the -- it's a

4  buyer's order in that case, but it's the equivalent of the

5  retail purchase agreement here, the document that would be used

6  for a cash sale.

7          So what I didn't highlight appropriately, but which

8  destroys Mr. Collins' argument, is that he -- and I said that

9  this case was on all fours with <u>Knight</u> -- is that there is an

10  integration clause in the RISC in <u>Knight</u>, just as there is in

11  both the Jennings and the Furlong RISCs.  In other words,

12  there's a provision -- and I'll give you -- it's the contracts

13  attached to the complaint.  But, for example, if we look at

14  Jennings, it's in the signature section -- do you have a copy

15  of the contract?  It's -- it's --

16          MR. COLLINS:  The RISCs?

17          MR. COCCO:  Exhibit 2 to the complaint.

18          MR. COLLINS:  Okay, I think I have it.  Please go

19  ahead.

20          MR. COCCO:  Right.

21          MR. COLLINS:  Please go ahead.

22          MR. COCCO:  Yeah, it's Page 5.  So, Your Honor, so

23  I'm looking at the signature section.

24          THE COURT:  Thank you, sir.

25          MR. COCCO:  And this is a standard integration

1 clause, right.  It's a -- it's stating you and -- it says,

2 entire agreement, you and our entire agreement as contained in

3 this contract.  There are no unwritten agreements regarding

4 this contract, any changes to the contract must be in writing,

5 okay.

6           So what do we have here?  We have a general -- we

7 have a general contract principle taken from the common law.

8 It echos the one document rule.  It's probably there because of

9 the one document rule.  It's very often these contracts are

10 sold by vendors in a preprinted form to dealers so they could

11 comply with relevant State laws.

12           Nonetheless, it really kind of moots the whole issue

13 of whether the one document rule applies because it's

14 essentially been integrated into the contract.  So Carvana

15 can't run from its own contract.

16           And under integration principles, which is what the

17 <u>Knight</u> court found, is that the -- is that the retail purchase

18 agreement is absorbed into it.  Now, of course, it's not

19 absorbed in the way that it contradicts the risks because this

20 is the guiding document, and that's what that clause says,

21 right.

22           So for example, if the cash price in the retail

23 purchase agreement was different than in the RISC, it would be

24 revoked by the RISC.  So anything contradicting the RISC would

25 be revoked, but it would be absorbed into it, okay, including -

1 - to the extent that it's an issue, I don't agree that it's an

2 issue because the retail installment contract should have set

3 forth an itemization of all the registration fees.  But it

4 would even absorb the details of the retail purchase agreement

5 into it.

6          So we don't have to get to <u>Concepcion</u>, we don't have

7 to get to whether the statute places this contract on an

8 unequal footing.  It's the same argument that the car dealer

9 would offer if the consumer tried to bring in the parol

10 evidence of a different contract price promised by the

11 salesman.  That integration clause would be brought to the

12 fore.

13          So really, the cherry-picking here, which Mr. Collins

14 referred to, is really being done by Carvana.  They want the

15 retail purchase agreement to control when they want it to

16 control, and ignore the content of their own risk.  Which,

17 indeed, echos the one document rule, but it stands on its own,

18 as well.

19          THE COURT:  But isn't the agreement to arbitrate

20 incorporated in both documents?

21          MR. COCCO:  It is not.  The cases that are -- <u>Huegel</u>

22 was one of them <u>versus Mifflin</u>, and there was another one,

23 don't -- are cases that don't have an integration clause

24 involved, right.  So you have to look at those documents in a

25 balanced fashion, just like you would have to look at statutes

1    that complement each other in pari materia.  But that's not the

2    case here, that's a different factual scenario.  There's no

3    integration clause in those case law -- in that case law.

4          THE COURT:  So let me ask a question that seems to go

5    way back.  Did your clients agree to arbitrate or not?

6          MR. COCCO:  They did not, because the -- all the

7    material terms have to be in the RISC, and it's not a term of

8    the RISC.

9          THE COURT:  So they did not agree to arbitrate.

10         MR. COCCO:  They did not agree.

11         THE COURT:  Okay.  And they did not agree to waive

12   their right to file -- be part of a class action lawsuit.

13         MR. COCCO:  Right, because that's part of the

14   arbitration agreement.

15         THE COURT:  Right.

16         MR. COCCO:  Yeah, it would just -- it would be just

17   as if they never signed it, or something -- you know, something

18   of that nature.

19         THE COURT:  So what, if any, significance is there to

20   the language in what I assume the retail purchase agreement

21   says the arbitration agreement -- the arbitration agreement

22   entered between you and the dealers incorporated by reference

23   into and made part of this agreement?

24         MR. COCCO:  Wait, you're looking at the retail

25   installment contract?

1              THE COURT:  The retail purchase agreement, yes.

2              MR. COCCO:  Oh, yeah.  Well, it doesn't work in

3   reverse, right.  It can't work in reverse because this is the

4   guided document, as the Knight court found.

5              THE COURT:  Which -- which is --

6              MR. COCCO:  This is the one that integrates.

7              THE COURT:  Which is the guiding document?

8              MR. COCCO:  The retail installment contract which

9   lacks the arbitration clause, just as in Knight.

10             THE COURT:  They're both at the same time -- so

11  written at the same time, correct?

12             MR. COCCO:  Correct.

13             THE COURT:  So in the -- because here's the problem,

14  a little -- because of the names of the documents, one is the

15  financing terms, one is the agreement to purchase.

16             MR. COCCO:  Well --

17             THE COURT:  Because if you don't finance, you don't

18  need the financing term -- the document.

19             MR. COCCO:  Right.  I mean, they -- they're not

20  completely distinct in terms of their -- you're still

21  purchasing the vehicle with the retail installment contract,

22  too but --

23             THE COURT:  Right.

24             MR. COCCO:  Yeah, they're not completely distinct.

25             THE COURT:  It just has no financing.

1              MR. COCCO:  Yeah.

2              THE COURT:  So where's the agreement to arbitrate,

3  and where is it missing?  It's clearly being incorporated into

4  the retail purchase agreement, the language is clearly there.

5              MR. COCCO:  Yes.

6              THE COURT:  And the agreement to arbitrate, you say,

7  is a standalone agreement that's not part of the installment

8  sales agreement?

9              MR. COCCO:  Yeah, I don't care how many places that

10  agreement to arbitrate is.  I don't care if it's directly in

11  the retail purchase agreement, I don't care if it's integrated

12  and there, it's in four different places, if it's not in the

13  retail installment contract, it's not getting it in on general

14  contract principles because the integration clause says that

15  this is the document that contains all the terms.

16             THE COURT:  And the retail installment agreement is

17  not the retail purchase agreement.

18             MR. COCCO:  Right.  Retail installment and retail

19  purchase are different.  Yeah, it's easier to keep them

20  distinct, in Pennsylvania it's referred to as a buyer's order,

21  the retail purchase agreement, but that's just terminology.

22             THE COURT:  Okay.

23             MR. COCCO:  Yeah.

24             THE COURT:  All right.  I just want to make sure I've

25  got these different things clear.

1          MR. COCCO:  Yeah, yeah, yeah.  I'm used to talking

2   about it, but the --

3          THE COURT:  And your position is in the retail

4   installment contract and security agreement, there is no

5   reference to arbitration.

6          MR. COCCO:  There is not.  I don't believe it's even

7   argued by the defense that there is.  They just want to ignore

8   the primacy of this document by -- on its own terms, and focus

9   on what benefits them.

10         THE COURT:  What about their argument that if that

11  were true, that, okay, there's no -- if there's -- the one

12  document rule came into play, if that were true, that's fine

13  except the whole thing that your case is based on, which is the

14  retail -- the fees for licensing, title, etc., that's all in

15  the other agreement.  So if you're arguing a breach of the

16  agreement, and there's nowhere in this agreement does it say

17  they have to do that, how do you go forward on that breach of

18  contract argument?

19         MR. COCCO:  Well, it's not absent altogether.  It's

20  under -- I mean, I address this in the briefing.  It's under

21  "paid to public officials," but it's totaled.  The itemization

22  of it should be in this document, and that's why I attached and

23  asked the Court to take judicial notice in my reply.

24         THE COURT:  Well, it might be -- the number might be

25  in there, but the requirement to do anything -- I mean, you

1  could sue and try to get that money back, the titling money,

2  whatever.  But then there's an issue if they actually did pay

3  for the titling ultimately.

4          The agreement that you're trying to enforce, the

5  agreement that they're going to do with this titling, etc.,

6  isn't that all in the retail purchase agreement?

7          MR. COCCO:  No.  Well --

8          THE COURT:  But are you trying to enforce the

9  obligations they have under the retail purchase agreement?

10         MR. COCCO:  I mean, this is what's -- is kind of

11 galling about this argument.  It should be in here.  The Motor

12 Vehicle Sales Finance Act requires them to itemize it here, so

13 the only reason it isn't is because they're breaking the law.

14         THE COURT:  Right, because you need the obligation

15 that's set forth in the retail purchase agreement, but you need

16 the one document rule that says you can only look at this

17 document, and everything subsumed within it, but subsumed

18 within it is not your obligation to provide -- to get you

19 titling, etc., but the dollar number is.

20         MR. COCCO:  Well --

21         THE COURT:  So what does that mean?

22         MR. COCCO:  Well, why are you paying something to

23 public officials if it's not for title and registration?

24         THE COURT:  No, it is for title and registration.

25         MR. COCCO:  Right.

1          THE COURT:  But the obligation -- the obligation --
2   the contractual obligation to do that is set forth in the other
3   agreement, so it's really just a money issue.  So you could sue
4   to get that money back.

5          MR. COCCO:  But that's not true, Your Honor.  I'm not
6   sure where you're basing that on.  If there's a -- if there's
7   something -- if there's an item in here that says they're to
8   pay registration and title fees --

9          THE COURT:  Yes, is there an item that says they're
10  to pay registration -- that they have an obligation -- a
11  contractual obligation to get that?

12         MR. COCCO:  Yeah, you're saying --

13         THE COURT:  If there is that, then you win.  Well,
14  you don't necessarily win because there's a lot of issues here,
15  but what I think -- I think one of the arguments being made by
16  the defense is your claim can't survive if you really believe
17  it's the one document rule that applies here because you need
18  that contractual obligation set forth in the retail purchase
19  agreement in order to -- in order for Carvana to have the
20  obligation to perform certain functions, that is get you your
21  title, etc.

22         And you're not just looking for the money back,
23  right?  You're not looking just for the money back that was
24  paid.  I believe -- I believe there were consequential damages
25  to these car owners that the title took so long to get there,

1  if it ever got there, and the registration, etc.

2              MR. COCCO:  Right.

3              THE COURT:  So to get those consequential damages,

4  you've got to prove an obligation to perform an act.  And you

5  think just having the number there next to -- that you think

6  that, without ever looking at that, the retail purchase

7  agreement, that imposes an obligation on them to timely get

8  things to your clients, etc., as opposed to this money has to

9  be applied in that fashion.

10             MR. COCCO:  Well, I don't believe the retail purchase

11 agreement --

12             THE COURT:  And, you know, I'm -- this is a fine line

13 I'm making right now, so don't --

14             MR. COCCO:  No, no, no, no.

15             THE COURT:  Don't take it too seriously.  It's a very

16 fine --

17             MR. COCCO:  Well, I take everything you say

18 seriously.

19             THE COURT:  But that's because the two of you are

20 really drawing some fine lines here.

21             MR. COCCO:  But, Your Honor, are you referring to the

22 language in the retail purchase agreement in that regard?  Or

23 are you just looking at its itemization that you feel

24 explicates that obligation?

25             THE COURT:  You know, you might be right, maybe there

1 is no specific language that talks about --

2           MR. COCCO:  It just itemizes it in more detail.  And

3 if that's -- if that's a more specific promise to do what's in

4 the retail installment contract, again that's only because

5 Carvana's agreement is not lawful in its drafting because that

6 exact information should be there.  It's no weightier a

7 document in that regard in terms of defining their obligation.

8           THE COURT:  You know, I think I was taking this out

9 of your complaint where I thought you said they --

10          MR. COCCO:  Oh, I'm sorry.

11          THE COURT:  -- they made an affirmative -- they had

12 an affirmative duty under the contract to do certain things

13 with respect to getting titling, registration, etc., and they

14 failed to comply with those obligations.

15          MR. COCCO:  I never referred to the retail purchase

16 agreement, though.

17          THE COURT:  Okay.  So where did that obligation come

18 from?

19          MR. COCCO:  It's to pay the public officials the

20 title fees.

21          THE COURT:  So that's the only language you're

22 relying on to say that they had that obligation.  Well, it's

23 common sense that says they had that obligation.

24          MR. COCCO:  Yeah.

25          THE COURT:  But common sense isn't the same as a

1  contractual obligation.

2          MR. COCCO:  Yeah, well, again, and if you're saying

3  the contractual obligation -- and I understand --

4          THE COURT:  But if they take your money, and don't do

5  what they're supposed to do with it --

6          MR. COCCO:  Right.

7          THE COURT:  -- don't you just get your money back if

8  there's no contractual obligation for them to provide the

9  title, etc.?

10         MR. COCCO:  Okay.

11         THE COURT:  Like, wouldn't you have expected there to

12 be some actual "We're going to, as part of our obligations

13 under this contract, we're to get you your licensing in a

14 timely fashion, get you your registration in a timely fashion,"

15 etc.?

16         MR. COCCO:  Well, I mean, that's a -- I mean, we

17 could argue about what the damages would be.  I mean, if you're

18 telling me that that's where we are, and that we're beyond the

19 arbitration issue, I'm happy to start talking about it.

20         THE COURT:  Because we normally -- normally, if

21 there's no time limit set forth in a contract, we look towards

22 reasonable.

23         MR. COCCO:  Right, you could --

24         THE COURT:  But first you have to have an obligation

25 set forth in the contract before you even look for a time

 1  limit.

 2          MR. COCCO:  Well, that's true.  Right, and I'm saying

 3  the obligation is there.  There's a good -- I mean, you can

 4  always infer good faith and fair dealing.  Nobody's paying you

 5  money to pay those fees over in an unlawful manner, meaning

 6  beyond 30 days or beyond whatever the applicable time period

 7  is.

 8          THE COURT:  Right.

 9          MR. COCCO:  So I think that it's -- you know, it's

10  certainly arguable on general and legal principles.

11          THE COURT:  All right, I went off on a tangent there.

12          MR. COCCO:  No, no, that's fine.

13          THE COURT:  Let's get back to this arbitration.

14          MR. COCCO:  Yeah.

15          THE COURT:  Now we know that, first of all, we need

16  to have an agreement to arbitrate before it can be enforced

17  against your client.

18          MR. COCCO:  Right, and that's under State law, right,

19  that --

20          THE COURT:  And -- well, that's -- no matter what,

21  there's got to be an agreement to arbitrate.

22          MR. COCCO:  Right, right.  But it's governed by State

23  laws as -- yeah.

24          THE COURT:  If they never agreed to arbitrate, we

25  wouldn't even be here.

1           MR. COCCO:  Right.

2           THE COURT:  So your argument is, yeah, they agreed to

3   arbitrate under the retail purchase agreement.

4           MR. COCCO:  Right, but it's not enforceable.

5           THE COURT:  Because that actually incorporates in the

6   agreement to arbitrate.

7           And the arbitration agreement is not part of the

8   installment agreement, it is a separate standalone.  So we have

9   three documents we're looking at here.

10          MR. COCCO:  Right.

11          THE COURT:  And your argument is that we are only

12  going to look at one.

13          MR. COCCO:  Well -- yes.

14          THE COURT:  That we're not going to look at the other

15  two.

16          MR. COCCO:  Yes, that's what the -- that's what the

17  agreement tells us to do.  The retail installment contract

18  tells us to do, that's the entire agreement.  And that's an

19  echo of the one document rule, it's probably there because of

20  the one document rule, but it's also a general contract

21  principle.

22          THE COURT:  So if that were true, and this is a void,

23  invalid, worthless, meaningless document, why even have it

24  signed?

25          MR. COCCO:  Well, I don't know if I really --

1          THE COURT:  Same with the arbitration clause, why

2   even have it signed if it's not going to --

3          MR. COCCO:  Well, the -- well, I -- the reason is is

4   that you can go across the river to New Jersey, and that's

5   perfectly appropriate, and that's what happens.  But when

6   you're a national corporate entity, you have to make sure that

7   you're getting people to sign the documents that are relevant

8   to their jurisdiction.

9          THE COURT:  In accordance with Pennsylvania law --

10         MR. COCCO:  Yeah.

11         THE COURT:  -- and Georgia law --

12         MR. COCCO:  Right.  And the Georgia law, the thing's

13  a complete canard because that's all from the retail purchase

14  agreement, there's no reference to Georgia law, it's

15  specifically the opposite, it only reference is -- it says --

16  there's a governing law clause.

17         THE COURT:  Now you do a lot of this, and you're very

18  familiar with this.  Is this -- has there ever been a

19  Pennsylvania court, Federal or State, which said an arbitration

20  clause is invalid under the circumstances here?  Not <u>Knight</u>,

21  but under the circumstances here.  Because there's -- I assume

22  this issue, it's everywhere.

23         MR. COCCO:  Yeah, I cited some of them, Your Honor,

24  yeah.

25         THE COURT:  It's been a little --

36

1          MR. COCCO:  Yeah, Judge McHugh, in my case <u>Gregory</u>
2   <u>versus Metro Auto Sales</u>, found the one document rule was
3   governing.  Judge Brody, in <u>Guia</u>, found the one document rule
4   was governing.

5          Now in neither one of those cases were the FAA
6   preemption issues argued by the defense, right?  So, you know,
7   decisions are always a product of what's argued.

8          THE COURT:  Oh, yeah, I'm not suggesting that there's
9   not recognition of the one document.

10          MR. COCCO:  Oh, I'm sorry.

11          THE COURT:  But in a situation like this where you've
12  got an arbitration clause, just the way we have it here,
13  separate arbitration agreement, arbitration of the retail
14  purchase agreement, but no reference to what the arbitration
15  clause in the installment sales agreement.

16          MR. COCCO:  Yeah.

17          THE COURT:  And under those circumstances, the
18  arbitration clause is not enforceable.

19          MR. COCCO:  Yes, no, that was exactly the facts in
20  <u>Guia</u> and in <u>Gregory</u>, and maybe another case that -- I think it
21  was also Judge Beetlestone's decision in the other case that's
22  cited, I can't recall the name now offhand, it begins with
23  an M.  Yeah, that's exactly what's going on, yup.  It's always
24  there.

25          THE COURT:  Because --

1          MR. COCCO:  The arbitration agreements are always

2   there.

3          THE COURT:  Aren't there multiple other class action

4   lawsuits against Carvana right now throughout the United

5   States?

6          MR. COCCO:  Not that I know of.  There's

7   administrative actions.

8          THE COURT:  Okay.

9          MR. COCCO:  They're yanking their licenses in Mr.

10  Collins's home state, they just pulled their license.

11         THE COURT:  Okay.  Because if there were, that would

12  beg the question how did they get around the arbitration

13  clause.

14         MR. COCCO:  Yeah, well, I would love to help in that

15  regard, but I don't think there is any out there right now.

16         THE COURT:  You play the hand you're dealt.

17         MR. COCCO:  Yes.

18         THE COURT:  When you're dealt it.

19         MR. COCCO:  Yeah, that's right.

20         THE COURT:  Okay.  So your argument is there is no

21  arbitration agreement here --

22         MR. COCCO:  There's not.

23         THE COURT:  -- because it's been superseded by the

24  installment sales agreement under the one document rule.

25         MR. COCCO:  Yup.

1          THE COURT:  So -- so --

2          MR. COCCO:  Right, and by the terms.  By its very

3  terms.

4          THE COURT:  So signing those documents was largely

5  superfluous.  But could your client sue under this agreement?

6          MR. COCCO:  Could they sue under this agreement?  Do

7  I really -- I mean, I guess we could speculate about a lot of

8  things.  I mean, I certainly wouldn't counsel them to do so, I

9  don't see where it would get them.  I mean, and also Mr.

10  Collins completely misrepresented what the Knight case was

11  about.  Okay, there's a repossession issue, but -- I mean, if

12  you read the case, it's misrepresentation of the vehicle's

13  history and condition is what the case is about.  So it

14  directly attacks financing the car that was misrepresented to

15  them, right.  It was part of a rental fleet, it had multiple

16  owners, it had previously been in an accident and sustained

17  damage.  That's -- you know, that's the meat of the case.

18          You know, attacking a -- it's an artificial

19  distinction to say that these car fraud cases are about

20  attacking one document versus attacking another thing.  You're

21  attacking the deal, right?  You're mis -- you had a vehicle or

22  a -- some aspect of the transaction misrepresented to you in

23  this case that you're going to pay fees to a public official,

24  not the condition of the vehicle.  And that misrepresentation

25  is the subject of the financing agreement just as much as it

1  would be a cash purchase.  So that's a completely artificial

2  distinction that I don't think has any basis in the --

3          THE COURT:  Okay.  And I know there was one thing you

4  wanted to talk about, this is the issue of the Pennsylvania

5  resident that bought the car in Georgia.

6          MR. COCCO:  Well, they did.  And the complaint states

7  that it was delivered to him.

8          THE COURT:  In Pennsylvania.

9          MR. COCCO:  I'm sorry?

10          THE COURT:  In Pennsylvania.

11          MR. COCCO:  Yeah, it was delivered to him in

12  Pennsylvania; it was bought online.

13          THE COURT:  So you don't believe the car was -- that

14  you believe Pennsylvania law would apply to that car.

15          MR. COCCO:  Because the RISC says so.

16          THE COURT:  Okay.  So even if you purchased it in

17  Georgia --

18          MR. COCCO:  Well, I mean, I -- it's certainly

19  premature to say it was purchased in Georgia before you had any

20  discovery.

21          Other than the retail purchase agreement, I don't

22  know what the basis is for that.  Was it delivered from a --

23          THE COURT:  Georgia dealer.

24          MR. COCCO:  Well, yeah, or a Georgia location, you

25  know, that Carvana has?  Certainly Carvana identifies itself --

1 even though it's an Arizona corporation, it very often has a

2 Georgia address, which I don't really understand --

3          THE COURT:  This creates interesting choice of law

4 issues.  The Internet does in general, it creates very

5 interesting choice of law issues.  Where is the contract being

6 entered into, what law to apply, etc.

7          And here, your client probably never even went to

8 Georgia.

9          MR. COCCO:  No, I don't think he was even conscious

10 of the Georgia aspect of it.  I would doubt it, I mean, I --

11 you know, I'm not going to testify for him, but --

12          THE COURT:  Okay, all right.  Anything else about

13 arbitration?

14          MR. COCCO:  I don't believe so.

15          THE COURT:  You think Knight is dispositive of this

16 issue.

17          MR. COCCO:  I do.  I do.  I do, and I think that it's

18 -- and, again, I think my -- I kind of became hypnotized by

19 throwing out Knight for, you know, ten plus years now that I

20 didn't really -- that I could have focused a little more on the

21 briefing on what I've just argued to you today, which is the

22 integration clause, which reflects it.  But, no, I don't

23 believe there's any other issue.

24          THE COURT:  Well, I'm sure Mr. Collins is going to be

25 stepping up here to talk about the integration clause, I'm

1  certain of that.

2            All right, thank you very much, sir.

3            MR. COCCO:  Okay.  I don't know -- well, should I

4  address any of the other issues, Your Honor?

5            THE COURT:  Oh, we're going to get to the motion to

6  dismiss.

7            MR. COCCO:  Okay.

8            THE COURT:  But once we get done with the -- so what

9  about the integration clause?  First of all, do you know if

10 Carvana uses a different form that's state-specific for each

11 different state of the union, or is it one size fits all?

12           MR. COLLINS:  You know, Your Honor, I -- I don't want

13 to represent to you an answer to that question --

14           THE COURT:  Because there might be different

15 regulations.

16           MR. COLLINS:  I'm just not exactly sure, exactly.

17 And so I'm happy to get that answer for you at some point,

18 but --

19           THE COURT:  No, not a problem.

20           MR. COLLINS:  -- I don't want to mislead the Court on

21 that one.

22           THE COURT:  Right.

23           MR. COLLINS:  On the integration clause, I think it's

24 largely a red herring.  Why?  Because it says this is our

25 entire agreement contained -- our entire agreement is contained

42

1  in this contract.  That's a contract about financing, right?

2  So we're saying we've integrated everything, all of the terms

3  about financing are in this contract, that's consistent with

4  Knight.  Knight and with the General Assembly's dictate about

5  protecting consumers from predatory lending practices.

6          What it doesn't change is that this dispute is not at

7  all about the financing.  And I think we can cut through it all

8  pretty simply, Your Honor, which is to take those two exhibits

9  I handed you.  And if you put Paragraph 12 of the complaint

10  right next to the Jennings retail purchase agreement, Paragraph

11  12 says Jennings entered into a contract with the following,

12  quote, "material terms."  And then it says in 12(c), (d), and

13  (e), "A state registration fee of $38; a license plate fee of

14  $16; a state title fee of $55."  Compare those directly to what

15  is in the retail purchase agreement that Jennings signed that I

16  handed you, and that's exactly where those terms are.

17          Where are the material terms that plaintiff alleges

18  are at issue in this case?  They're in the purchase agreement,

19  right?  And there is no other way for plaintiff to try to say

20  that I paid $38 in exchange for a registration fee, then

21  looking at the retail purchase agreement.  It's not enough to

22  say there's a total paid to Government in the RISC because that

23  doesn't show anything about the individual fees.

24          For example, Your Honor or a jury could find that

25  Carvana provided the registration fee, but didn't provide --

 1  I'm sorry -- provided the registration service but didn't

 2  provide the title service.  And in that case, how do we know

 3  that there were two different services that were supposed to be

 4  provided?  And how do we know what the individual fees were for

 5  each of those?  And how do we award damages based on one

 6  breach, but not another breach?  It's all in the retail

 7  purchase agreement, and that has the arbitration agreement,

 8  there's no dispute about that.  The arbitration agreement also

 9  says it's incorporated into both the purchase agreement and the

10  installment sale.

11          THE COURT:  Now have you advised your client, and

12  this -- I'm saying this rhetorically -- that maybe they should

13  put this language in the installment sales agreement, or is

14  that prohibitive for some reason?  The old arbitration

15  agreement, the arbitration agreement entered into between you

16  and dealers incorporated into this agreement, have -- can you

17  put that in the installment sale agreement?  Is there any

18  reason why they don't have it in the installment sale

19  agreement?

20          MR. COLLINS:  It's certainly an excellent question,

21  Your Honor, and something that can certainly be passed on to

22  Carvana.

23          THE COURT:  If that were the case, this would be a

24  nonissue, right?  It would clearly -- unless it was preempted

25  by some statute, if it were in the installment sales agreement,

1  it would clearly be clear that arbitration is required here.

2          MR. COLLINS:  Certainly that would be one way to do

3  it, yes, that's absolutely true.  But in this case, because

4  it's not about the financing at all --

5          THE COURT:  Right.

6          MR. COLLINS:  -- that's sort of a -- potentially,

7  right, if Your Honor were to view it that way, could be

8  potentially an issue for another case, but it's not an issue in

9  this case.

10         THE COURT:  So you do not believe this retail

11 purchase agreement is being subsumed into the retail

12 installment contract, and you do not believe the arbitration

13 agreement is being subsumed into the -- well, isn't that an

14 interesting thing to say?

15         MR. COLLINS:  It is, it's an interesting question.

16 And that's why the language of <u>Knight</u> is interesting.  <u>Knight</u>

17 doesn't say that the purchase agreement or the arbitration

18 agreement are void or abolished.

19         The word "subsumed" is different and the only way to

20 really read that with an understanding of the statutory

21 language of the one document rule and the purpose that the

22 General Assembly said it had in passing the one document rule,

23 including that purpose articulated in <u>Knight</u>, is that it's

24 about the financing, it subsumes any other terms about the

25 financing.  Because what are we -- what is the General Assembly

1  trying to do?  It's trying to protect us, you, all of us from
2  predatory lending practices.  And so it's saying let's have the
3  financing terms in one place so that you can't repossess my
4  vehicle without me understanding, or you don't try to charge me
5  an exorbitant interest rate that I don't understand.

6         And all of those other cases that have looked at this
7  issue under Knight have been in some way about the financing of
8  the deal, right?  So one of those cases was about inflating the
9  sales price in the RISC to get a better loan to collateral
10 ratio.  Those cases are about financing issues where you do
11 implicate that concern about predatory lending practices.
12 We're just not in that arena here, Your Honor, it's -- we're in
13 a different boat.

14        And Mr. Cocco is correct, those cases also didn't
15 have the preemption question before them, so Your Honor, I
16 believe, will be the first Federal Court that has that fully
17 briefed.

18        But the State Court in Burden, which did compel
19 arbitration on a Carvana transaction, and did have preemption
20 fully briefed before it, and did have the one document rule
21 fully briefed before it, did recently compel arbitration.  So
22 there is precedent -- I mean precedent is the wrong word.  I
23 understand it's a State Court, and so I don't want to misuse
24 the word.  But there is an example of a court with the one
25 document rule before it, the preemption issues before it, the

46

1  contract issues before it, and that court did compel
2  arbitration.

3          The only other -- a point I'll end on is Mr. Cocco
4  said that if we were to sign these three agreements, he said
5  that would be perfectly appropriate in New Jersey, right, that
6  proves the point.  First of all, it proves there's no class
7  that can certify here.

8          But it also proves that the one document rule is not
9  a generally applicable contract defense.  And it's not in
10 Pennsylvania either where we're not dealing with every other
11 type of contract, we're in a very limited space.

12         Unless Your Honor has any other questions, or if
13 you'd like me to address --

14         THE COURT:  Why don't we go forward and address your
15 motion to -- failure to state a claim arguments.

16         MR. COLLINS:  So, Your Honor, you were correct, Your
17 Honor, in saying that if you compel arbitration, then those
18 issues would be for the arbitrator.  But these issues are
19 pretty straightforward, and I think we've touched on them a
20 bit.  If the Court finds that plaintiffs' claims for failure to
21 provide license, title, and registration services are alleged
22 to be based in the installment contracts and not the purchase
23 agreements, then they fail to state a claim because they point
24 to no provision of the installment contract that outlines the
25 terms that they allege exist, which is services of fee -- of

1   registration, title, and licensing in exchange for fees
2   collected.  They don't point to a relevant contract term, and
3   they don't point to the breach of a relevant contract term.
4   It's simply not there in the RISC.

5           And plaintiffs were correct in their opposition brief
6   not to -- to no longer argue that their contract claim can be
7   based merely on the duty of good faith and fair dealing.
8   Because both Pennsylvania law and Georgia law are clear that
9   they don't recognize an independent claim for the breach of the
10  implied covenant without breach of an express contract term.
11  So they don't state a claim for breach of contract, and in the
12  event that plaintiffs are right on the arbitration issues, that
13  claim should be dismissed.

14          And the statutory consumer protection claim reaches a
15  similar fate.  As we already talked about, Mr. Furlong doesn't
16  have a claim because he's under Georgia law, not Pennsylvania,
17  so I won't go through that again.

18          But assuming it's Pennsylvania law for both of them,
19  then that claim fails under the gist of the action doctrine.
20  Plaintiffs allege they paid license, title, and registration
21  fees based on the representation that Carvana would timely
22  provide those three services.  And the only representation they
23  point to is the line item descriptions in the contracts.  And
24  so the gist of plaintiffs' statutory claim is that Carvana
25  breached its alleged contractual duty to provide registration,

1  title, licensing services, and that's barred by the gist of the

2  action doctrine.

3          It also fails because they point to no provision in

4  the RISCs upon which they relied in stating their claims.  So

5  we would submit that if Your Honor does agree with

6  plaintiffs on the one document rule and find it has to be all

7  in the RISC, or is subsumed or somehow -- or whatever word you

8  use, then you reach the fate of not stating a claim because the

9  terms are black and white on the face of the retail purchase

10  agreement.

11          Unless Your Honor has any questions for me --

12          THE COURT:  No, that was simple and straightforward.

13          MR. COLLINS:  Thank you very much.

14          THE COURT:  Thank you, sir.

15          Mr. Cocco, would you like to respond, sir?

16          MR. COCCO:  Sure, I'll just briefly.  I would

17  reiterate that Mr. Collins' attempt to mischaracterize the RISC

18  as being also not a sale document is belied by its own terms.

19  I mean, the consumers are defined as buyers in the contract

20  throughout, not just a borrower.  So, again, just in the same

21  way that he mischaracterized the facts of <u>Knight</u> that kind of

22  twist these matters into purely a financing dispute, I would

23  reject.

24          With -- I think that I would mostly rest on the

25  papers for these other two issues.  I would just point out that

1  Mr. Collins' briefing on just of the action doctrine is all old
2  case law.  And I cited to <u>Bruno</u> and <u>Dickson</u> in the Superior
3  Courts that reckon with the Unfair Trade Practices Act, and
4  most recently a Third Circuit did in <u>Earl</u>.

5          But I think the general point to carry from those
6  cases is that the gist of the action really isn't relevant to
7  the Unfair Trade Practices Act.  Because what they recognize is
8  that just because there's a contract term that may overlap with
9  a breach of the Unfair Trade Practices Act, right, there's a
10  deceptive misrepresentation about these fees, they can't really
11  pay over -- they can't really get title and registration
12  because they don't own the vehicles, or they don't have the
13  people to process these fees, or there's some disorganization
14  within the company.  The misrepresentation that they can
15  legally transfer registration and title per the agreements is a
16  misrepresentation that is recognized by the Unfair Trade
17  Practices Act.  And all of those holdings that I've just
18  referred to say that where there's a broader social -- where
19  the obligation doesn't rise just from the contract but from a
20  broader social goal or obligation, and in this case, of course,
21  paying over fees is not like paying a dealer a document fee or
22  paying for a warranty, they're not required by statute, those
23  are purely contractual items.  Registering the vehicle is a
24  matter of some concern by the State for tax purposes, to
25  monitor criminal activity; that's why we're registering

1  vehicles.

2         So these holdings recognize that there's a broader

3  social goal of when you're -- when you, as a commercial entity,

4  are deceptive about those issues, well, you're not just

5  violating the contract, you're also committing an unfair and

6  deceptive trade practice, and a violation of that Act.  So I

7  think it's important to keep those -- to keep with the relevant

8  case law in that regard.

9         But beyond that, I don't think that there's anything

10  else that I would add that I have not argued in the papers.

11  And unless you --

12         THE COURT:  There was one other question.

13         MR. COCCO:  Sure.

14         THE COURT:  This gets back to the arbitration thing.

15         MR. COCCO:  Yeah.

16         THE COURT:  Suppose your client didn't pay -- didn't

17  pay what was owed under the installment contract, arguing under

18  both contracts, but under the installment contract.  And

19  Carvana, I know they use credit banks and whatever to do this,

20  but Carvana sued your client in State Court or Federal Court,

21  if there was a diversity in the amount in controversy, wasn't

22  enough, which it wouldn't be here, sued your client, and your

23  client said, "Oh, no, you've got to arbitrate, you can't sue me

24  in State Court for this, you've got to arbitrate."  Would your

25  client be able to make out that claim based on the fact that

1  they had -- you know, Carvana had signed an arbitration

2  agreement?

3          MR. COCCO:  Well, I would say no and, of course, I

4  would use the same arguments against it.  But I feel like I

5  might be missing something in your question.

6          THE COURT:  Well, the interesting thing about that

7  one is that one is right under the financing.  You know, that

8  clearly goes under the installment sales agreement because

9  they're -- well, no, it could go under both agreements because

10 the one says you have to pay a certain amount, but the other

11 says the terms of the financing, the installment sale

12 agreement.

13         So if -- you know, and what about the bank?  If the

14 bank sues because the payments aren't coming in, but the bank

15 was not a party to the contract, but they are the third party,

16 they're the ones that are actually providing the lending,

17 collecting, and all.  Is one of the defenses that the -- and

18 it's not a defense, but is one of the -- can the purchaser of

19 the vehicle choose the forum to be arbitration based on that

20 arbitration clause?

21         MR. COCCO:  Right.  I mean, I would argue that it's

22 not enforceable under -- it's the same argument, right?

23         THE COURT:  Right.

24         MR. COCCO:  It doesn't matter who's making the

25 argument really, yeah.

1          THE COURT:  Right, okay.

2          MR. COCCO:  I think I would probably retract

3  something I said as far as -- now, of course, the class we're

4  seeking right now is in Pennsylvania, but in New Jersey, what I

5  meant to say -- I didn't mean to say that the exact same facts

6  would necessarily -- I'm just saying from my knowledge of those

7  -- from how -- and this is really, you know, not relevant to

8  what we're discussing.  But, you know, the way they structure

9  agreements is not by integrating -- there's separate financing,

10  there's separate cash agreements, there's separate arbitration

11  clauses.  So they're separated more in the manner that the case

12  law that was being cited -- that we discussed earlier, like the

13  <u>Huegel</u> case where you have to reckon with these different

14  contracts.

15          So I didn't mean to say that the exact same facts are

16  legal in New Jersey or -- yeah, but any rate --

17          THE COURT:  Well, I do have a question for you about

18  the United States Supreme Court and Federal preemption and the

19  Federal Arbitration Act.  So -- and there's a comity between

20  Federal and State.  But here, the State Court has -- and I

21  don't think it was their intent in requiring the one document

22  rule.  It wasn't their intent to foreclose arbitration that was

23  in other documents.  So when the Supreme Court says

24  arbitration, very important, will be recognized under the FAA,

25  what would the Supreme Court say about Pennsylvania's one

1  document rule if the one document rule is being used to try to

2  foreclose an otherwise completely valid, voluntarily executed

3  arbitration agreement?

4         MR. COCCO:  Well, you know, it's -- I think that if

5  the -- it could be a cause for -- it could be a cause for some

6  concern.  I don't know that I've looked at it as thoroughly as

7  -- I certainly have not looked at it as thoroughly as I would

8  like to if it were not the case that the retail installment

9  contract was echoing the language in <u>Knight</u> and essentially,

10  you know, enshrining the one document rule and general contract

11  principles.

12         But, I mean, that's -- that's a different -- that's a

13  different issue.  It's certainly not -- it's certainly not

14  arbitration-focused.  But -- you know, that would be a very

15  interesting argument to have, but I'm not prepared for it

16  today.

17         THE COURT:  Okay, no, that's fair, sometimes the best

18  response.

19         MR. COCCO:  Yeah.

20         THE COURT:  All right.

21         MR. COCCO:  Okay, thank you, Your Honor.

22         THE COURT:  And, Mr. Collins, did you want to respond

23  on that?  You kind of discussed it at some length, but --

24         MR. COLLINS:  I'll just be very quick, Your Honor,

25  just two quick points.

54

1          On the last point, clearly -- it clearly is preempted

2  as -- it would be preempted if it was read that way, as we put

3  in both our opening motion and our reply brief.  And plaintiffs

4  agreed that the Federal Arbitration Act applies, and so it can

5  go one of two ways:  It's either General Assembly didn't pass

6  this rule to apply outside the financing context, which we

7  contend is the case and, therefore, it doesn't apply here, or

8  it's preempted because it disfavors arbitration and has been

9  applied in that way.  And so it's pretty clear that the FAA

10  stands as a backstop for that here.

11          The other point I want to just respond to briefly is

12  just to the action doctrine point that Mr. Cocco made briefly.

13  And the case law he cites is distinguishable for one basic

14  reason, that's all about conduct outside of the contracts or

15  representations collateral to the contracts.  Here, we're

16  dealing with an alleged duty and representation in the

17  contract, and that's exactly when the gist of the action

18  doctrine is invoked.

19          THE COURT:  What if you've devised a scheme to use a

20  contract to defraud?  So you've devised a scheme that -- you

21  have all these contracts you're entering into with Pennsylvania

22  residents, etc., and that whole scheme is devised through

23  contracts to defraud them.  Would that then be subject to the

24  Unfair Trade Practices and Consumer Protection Law?

25          MR. COLLINS:  Would that be subject to the Unfair --

1          THE COURT:  Right.  In other words, can you say just
2   to the action, you've got a contract, so you can't avail
3   yourself of the protections the Pennsylvania legislature put in
4   place for fraudulent schemes using contract -- using a contract
5   to basically do your dirty fraudulent stealing.

6          MR. COLLINS:  It's a good question, Your Honor, and I
7   would -- I would -- honestly the answer is I would want to look
8   into it a little bit further because I could see that going
9   either way, depending on the facts.

10          THE COURT:  Because especially --

11          MR. COLLINS:  I mean, certainly fraud -- fraud is a
12  different claim.

13          THE COURT:  Right.  But isn't that really what the
14  Unfair Trade Practices and Consumer Protection Law is looking
15  for?  I know we use it in all kinds of things that fall outside
16  of fraud, but we're looking for fraud, that's what we're truly
17  trying to stop, the consumer being defrauded.

18          And oftentimes, the contract is a contract of
19  adhesion completely written by the one who's trying to take --
20  separate you from your money.  You know, they -- they draw this
21  contract, they want to separate you from your money, it's all
22  intended to defraud you, etc.  You're not bound just to sue
23  under the contract, you can sue under the Unfair Trade
24  Practices Act and get all the punitive measures that are
25  available, and the attorney's fees, and the three time damages,

56

1   etc.

2           MR. COLLINS:  For sure.  For sure.

3           THE COURT:  So that's why it's very -- this idea that

4   the gist of the action doctrine could be used to thwart the

5   availability of that protective statute --

6           MR. COLLINS:  Well, I hear you, Your Honor, and

7   you're right, that the Consumer Protection statutes -- they're

8   in every state, and they're designed for exactly that purpose,

9   right?  And so there doesn't have to be a contract at all, I

10  can go to the store and buy a product --

11          THE COURT:  Right.

12          MR. COLLINS:  -- and there could be a false labeling

13  on it, or a, you know -- I'm sure you have those cases before

14  you all the time.

15          THE COURT:  Right.

16          MR. COLLINS:  That's what that's designed to protect.

17          THE COURT:  Or you could have a contract to build a

18  pool, and you could end up doing a thousand of those contracts,

19  take the down money, and never pay.  So there's a contract

20  there, and the person could sue under the contract, "I paid the

21  down payment, you didn't build the pool, here are my damages."

22  Or they could bring it under the Unfair Trade Practices Act.

23          MR. COLLINS:  But in those cases -- and this is an

24  important difference.  In those cases, what often happens is

25  there's representations outside the contract, "I'm going to

57

1  build you your pool.  I'm going to do it at this period of

2  time."  And you also have a contract.  Here, there's none of

3  that, right?

4          THE COURT:  Right.

5          MR. COLLINS:  It's -- all we have is -- I don't have

6  it before me, but --

7          THE COURT:  Well, I've got to stop you.  What if the

8  representations are all in the contract?  I'm going to build

9  you a pool, I'm going to build it within this period of time,

10  I'm going to start by this time, I'm going to do whatever.  Now

11  you breach all those terms because you're just trying to steal

12  the money.  Clearly, the contract had every single term, and

13  nothing outside.  The only thing outside is the breach.

14          Now, I mean, your argument that the gist of the

15  action doctrine would bar a suit -- bringing action under the

16  Unfair Trade Practices means that person has effectively -- by

17  putting all of their stuff into a contract they never intended

18  to comply with, they have now breached the contract, took the

19  down money, don't return it.  Would the gist of the action

20  doctrine mean now they can't get the protections of the

21  Consumer Protection statute?

22          MR. COLLINS:  It's an interesting question, and I'm -

23  - and maybe that wouldn't apply in that case because in that

24  point, we're talking about this general duty I don't -- I have

25  a general duty not to defraud you, right?  And --

1           THE COURT:  Right.  What if Carvana -- and I'm sorry

2  to interrupt you --

3           MR. COLLINS:  That's okay.

4           THE COURT:  -- but I've got to throw this out at you.

5  What if Carvana never intended to use that money for

6  registration fees, etc?  What if they only intended to take

7  that money, put it as a line on the installment thing, a line

8  under it, and then never intended to use it, just wanted to

9  take the money and put it into their pockets?

10           MR. COLLINS:  In that case, we'd sure be a lot closer

11  than we are in our case today, right?  We would sure be a lot

12  closer to a duty arising outside of contract, which is a duty

13  not to defraud you or a duty in tort, right we could think of

14  tort duties, but that's not the allegations here, right?  The

15  allegations here are we signed a contract, it had these titles,

16  these services, these fees, and Carvana didn't do it, right.

17  The basis of the duty is there.

18           And so these are really very interesting

19  hypotheticals because your hypotheticals are getting outside of

20  contractual duties.  And, therefore, invoking -- we're getting

21  into tort now, right?

22           THE COURT:  But even if they don't get outside of the

23  actual contract, the mens rea, I think that's where it gets a

24  little touchy.  The intent to defraud becomes more relevant

25  when you have Consumer Protection statutes.

1         MR. COLLINS:  Sure.  Sure.  And that's also why we
2  get into Rule 9, right, and we say, "Okay, if we're going to go
3  there, now you have to plead with particularity, and you have
4  to allege fraud, and you have to allege these things very
5  differently."  That's a different case.

6         THE COURT:  Right.

7         MR. COLLINS:  But interesting question.

8         THE COURT:  All right.  Any last word from the
9  plaintiff?

10         MR. COCCO:  Well, Your Honor, that last colloquy, I
11 think, really raises the issue that -- these issues are
12 premature to decide right now because was there an omission?
13 An unfair and deceptive omission on Carvana's part when they
14 took the money to pay for title and registration, but didn't
15 disclose that they didn't have the ability to do it in a lawful
16 way within the time period.  Maybe short of stealing the money
17 outright, but that they still acted in an unfair and deceptive
18 manner based on their knowledge of their operations.  And
19 that's something to be tested in discovery, and I think -- so I
20 think whether there's collateral conduct by Carvana is
21 something we really don't know, and I would hope that we could
22 find out through the discovery process.

23         THE COURT:  Okay; very interesting.  I hope all of
24 these people now have their titles, and they all have their
25 registrations, and they're all able to drive around.

1           MR. COLLINS:  Well, we know Mr. Furlong, at least,
2  does.

3           MR. COCCO:  Mr. Furlong does.  Ms. Jennings does not,
4  and a lot of other people I've spoken to.

5           THE COURT:  And I assume to the extent this has
6  become a big issue, Carvana is on top of it trying to correct
7  whatever issues there have been, so hopefully in the future,
8  there won't be any issues.

9           MR. COLLINS:  That's exactly right, Your Honor.  And
10  we don't have to go into it, this is sort of outside the
11  motion, but --

12           MR. COCCO:  Yeah, yeah, yeah.

13           MR. COLLINS:  -- the pandemic has had an effect, so
14  there's a lot of effects in the past couple of years.

15           THE COURT:  And the two sides have not been talking
16  any attempt to resolve this, correct?  Because it's just too
17  premature, or you don't even know what the action's going to
18  look like.  Because you could certainly solve it with respect
19  to these two plaintiffs, it's --

20           MR. COCCO:  Well, Your Honor, when you have a class
21  posture --

22           THE COURT:  It makes it hard to talk settlement.

23           MR. COCCO:  -- it makes it hard to talk settlement
24  early on, yeah.

25           THE COURT:  Right.

1          MR. COCCO:  But -- I mean, I'm always welcome -- open

2 to discussion.

3          THE COURT:  Do you have any idea of the size of the

4 potential class?

5          MR. COCCO:  I'm sorry, Your Honor?

6          THE COURT:  Do you have any idea of the size of the

7 potential class?  That's, in part, a function of how successful

8 Carvana has been at selling cars.

9          MR. COCCO:  Well, in the -- in the roughly one year I

10 -- has it been one year?  I mean, I've spoken -- I have

11 personally spoken to over 200 people, and every time there's

12 coverage in the media, it's more.  I mean, they've sold

13 thousands of vehicles certainly on the east coast --

14          THE COURT:  Because that's --

15          MR. COCCO:  -- based on their representations and

16 their public documents, corporate documents.

17          THE COURT:  It must be fairly -- but one of the

18 things, and not to get ahead of ourselves on the class issue,

19 but the damages would be so different from one person to

20 another -- like suppose they got their title in 60 days, they

21 were supposed to get it in 30, but somebody else never got it,

22 and somebody else had a unique situation where it really caused

23 consequential damages, and let's argue they could be recovered,

24 somebody else didn't --

25          MR. COCCO:  They could be sub classes of --

1          THE COURT:  I mean, the -- it seems like --

2          MR. COCCO:  Yeah, could be sub classes.

3          THE COURT:  It seems like it's so individualized how

4   much this would harm you not getting your title in a timely --

5   on the other hand, you could argue from one side, this is

6   pretty vanilla, you didn't get your title, here's what it's

7   worth, this many days of not getting your title.  But then

8   everybody has a different number of days, I presume.  It just

9   seems like from a damages standpoint, it would become almost a

10  very difficult one if you did it on a classwide basis trying to

11  determine what each class member would be due.  Whether you

12  would do it by number of days, and they would have to submit,

13  "It took me this many days to get my license, it took me this

14  much," a matrix, anyway --

15         MR. COLLINS:  There would be a real Comcast problem,

16  Your Honor.

17         THE COURT:  Your written submissions were

18  outstanding, and the argument has only helped to clarify and

19  crystallize some of those arguments you put in there.  I think

20  this is a very important issue.  Whenever we have an

21  arbitration clause come up, I think it's always very important

22  to get to that as quick as we can.

23         So we're going to look at this, we're going to come

24  up with the right answer, and hopefully other judges will look

25  towards our opinion, and counsel will look towards our opinion

63

1  and say it was so well written -- but not really, because

2  whoever loses ultimately files an appeal up to the Third

3  Circuit and they'll look at the Third Circuit opinion.

4          MR. COCCO:  All right, thank you, Your Honor.

5          MR. COLLINS:  Thank you, Your Honor.

6          THE COURT:  But have a great rest of the day.

7          MR. COLLINS:  Thank you.

8          THE COURT:  Thank you very much.

9      (Whereupon, at 11:25 a.m., the hearing was adjourned.)

10

11              CERTIFICATE OF TRANSCRIBER

12

13     I, KAREN HARTMANN, a certified Electronic Court

14  Transcriber, certify that the foregoing is a correct transcript

15  from the electronic sound recording of the proceedings in the

16  above-entitled matter.

17

18  *Karen Hartmann*

19

20  Karen Hartmann, AAERT CET 475  Date: June 13, 2022

21  TRANSCRIPTS PLUS, INC.

22

23

24

25