IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DANA JENNINGS and JOSEPH A. FURLONG, Individually and on Behalf of All Others Similarly Situated, | : : : | |
| | : | |
| Plaintiffs, | : | CIVIL ACTION NO. 21-5400 |
| | : | |
| v. | : | |
| | : | |
| CARVANA LLC, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM OPINION**

Smith, J.                                                    September 30, 2022

The Federal Arbitration Act ("FAA") provides as a matter of federal law that agreements to arbitrate disputes are enforceable to the same extent as other contracts. But the FAA provides no right to enforce an agreement to arbitrate that may not be enforced under neutral principles of state contract law. Pennsylvania has a single-document rule applicable to the installment sales of motor vehicles that requires *all agreements* between buyers and sellers must be found in one document, the retail installment sales contract. As part of the transactions at issue here, each plaintiff executed a valid retail installment sales contract. The defendant also had each plaintiff sign an arbitration agreement which was incorporated into a third document, a retail purchase agreement ("RPA") but, inexplicably, failed to incorporate either the arbitration agreement or the RPA into the retail installment sales contract. Under Pennsylvania's single-document rule, the RPA and arbitration agreement are subsumed by the RISC and thus are not independently enforceable. The retail installment sales contracts at issue also specifically provide that the retail installment sales contract itself is the entire contract between the parties. The defendant now asks us to bring to bear the preemption power of the FAA to compel arbitration despite the

unenforceability of the arbitration agreement under state law. Notwithstanding the liberal federal policy favoring arbitration agreements, this court finds that federal preemption will not save the otherwise unenforceable arbitration agreements.

Two Pennsylvania citizens have commenced a proposed class action against a national used car dealer in which they claim that the dealer breached its contract with them and violated Pennsylvania's Unfair Trade Practices and Consumer Protection Law when the dealer failed to timely transfer titles for purchased vehicles. This delay allegedly prevented the purchasers and other individuals in the proposed class from being able to legally drive the vehicles because they could not timely register the vehicles or purchase adequate insurance coverage.

The dealer has now filed a motion to compel arbitration and, in the alternative, a motion to dismiss. Regarding the motion to compel arbitration, the dealer contends that the respective RPAs include an arbitration provision that expressly incorporates an agreement to arbitrate the disputes at issue in this case. The purchasers counter that under the Pennsylvania Motor Vehicle Sales Finance Act ("MVSFA"), the retail installment sales contract ("RISC"), (which does not include an agreement to arbitrate) subsumes the retail purchase agreement and should govern the dispute. They argue that because the RISC makes no mention of an arbitration agreement, the court should deny the motion to compel arbitration.

After carefully considering the parties' arguments on the motion to compel arbitration, the court agrees with the plaintiffs that their dispute in this case is not subject to compulsory arbitration because (1) the MVSFA requires "all the agreements between a buyer and an installment seller relating to the installment sale of the motor vehicle sold" to be included in the RISC; and (2) the RISC executed between the dealer and the plaintiffs did not include an arbitration agreement nor did it incorporate the arbitration agreement by reference. In the alternative, the dealer argues that

this court should dismiss the amended complaint for failure to state a claim, but at this early stage of the litigation, the complaint is adequate to withstand the motion to dismiss.

## I.    ALLEGATIONS AND PROCEDURAL HISTORY

The plaintiffs, Dana Jennings ("Jennings") and Joseph A. Furlong ("Furlong"), who are both Pennsylvania citizens, commenced this consumer protection action by filing a putative class action complaint against the defendant, Carvana LLC ("Carvana"), in the Court of Common Pleas of Philadelphia County on November 5, 2021. Doc. No. 1, Ex. 1. On December 9, 2021, Carvana removed the matter to this court under 28 U.S.C. §§ 1441, 1453, invoking federal jurisdiction under the general diversity statute, 28 U.S.C. § 1332(a), and the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d). *See* Notice of Removal at ECF p. 3, Doc. No. 1. Prior to Carvana filing a response to the complaint, the plaintiffs filed an amended complaint on January 13, 2022. Doc. No. 8.

In the amended complaint, the plaintiffs allege they each purchased a vehicle online from Carvana, a national used car dealer incorporated in Georgia. Am. Compl. at ¶¶ 3, 12, 24, Doc. No. 8. As part of the transaction, they both agreed to pay, and did pay, *inter alia*, a $38 state registration fee, $16 license plate fee, and $55 state title fee. *Id.* at ¶¶ 12, 24, 36–37. Despite paying these fees, the plaintiffs claim that Carvana "failed to complete" the permanent registration of their vehicles. *Id.* at ¶¶ 36–37. Instead, Carvana provided them with temporary license tags "without the legal right or authorization to do so." *Id.* at ¶¶ 17, 29.

Specifically, Carvana gave Jennings six temporary license tags: two from the Arizona Department of Transportation, two from the Tennessee Department of Revenue, and one from the Commonwealth of Pennsylvania. *Id.* at ¶ 17. Neither Arizona nor Tennessee had authorized Carvana to issue these temporary registrations. *Id.* at ¶ 19. Jennings allegedly relied upon

Carvana's promise to properly register the vehicle in Pennsylvania, as her "trade-in of the prior vehicle and her payments on the purchased vehicle" demonstrate. *Id.* at ¶ 20. As of the amended complaint's filing, however, Carvana still had not provided Jennings with a permanent registration. *Id.* at ¶ 21.

As to Furlong, Carvana first provided him with an Arizona temporary license tag. *Id.* at ¶ 27. When that tag expired, Carvana sent him a Tennessee temporary tag. *Id.* at ¶ 29. Furlong, like Jennings, relied upon Carvana's promise to properly register the vehicle in Pennsylvania. *Id.* at ¶ 30. Unlike its experience with Jennings, Carvana eventually provided Furlong with permanent registration in December 2021, approximately six months after he purchased his vehicle. *Id.* at ¶ 31.

Both plaintiffs allege actual damages amounting to $93 (including the $38 state registration fee, $16 license plate fee, and $55 state title fee)[1] "for licensing and registration for the vehicle[s] which [Carvana] failed to complete." *Id.* at ¶¶ 36–37. They set forth claims for breach of contract and violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1–10 ("UTPCPL"). *Id.* at ¶¶ 190–208. The plaintiffs seek to represent a class of individuals defined as:

> All persons in the United States east of the Mississippi River who entered into contracts with CARVANA to purchase vehicles since November 5, 2019, and CARVANA agreed to provide car registration services with non-temporary and permanent vehicle registrations in the state of their residence.

*Id.* at ¶ 169(a). They also seek to represent a subclass of "[a]ll persons from the Commonwealth of Pennsylvania who are members of the Nationwide Class." *Id.* at ¶ 169(b).[2]

---

[1] The plaintiffs' claims for actual damages is inconsistent with the amounts they paid, as those amounts total $99.
[2] The issue of class certification is not yet before this court.

In response to the amended complaint, Carvana filed the instant motion to compel arbitration and to dismiss on January 28, 2022. Doc. No. 18. The plaintiffs filed a response in opposition to the motion on February 18, 2022. Doc. No. 22. Carvana filed a reply brief on March 11, 2022. Doc. No. 24. Shortly thereafter, on March 23, 2022, the plaintiffs filed a sur-reply. Doc. No. 27. On June 1, 2022, the plaintiffs provided notice of supplemental authority, Doc. No. 31, to which Carvana responded on June 3, 2022. Doc. No. 32. The court heard oral argument on the motion on June 7, 2022. Doc. Nos. 33, 34. Carvana's motion to compel arbitration and to dismiss is now ripe for disposition.

## Agreements at Issue

In the present case, both plaintiffs signed (1) a RISC; (2) a RPA; and (3) an Arbitration Agreement in connection with their respective vehicle purchases. *See* Am. Compl., Ex. 1, Jennings RISC, Ex. 2, Furlong RISC, Doc. Nos. 13-2, 13-3; Def. Carvana, LLC's Mot. to Compel Arbitration and to Dismiss ("Mot. To Compel Arb."), Ex. A, Jennings RPA; Ex, B, Jennings Arbitration Agreement; Ex. C, Furlong RPA; Ex. D, Furlong Arbitration Agreement, Doc. Nos. 19-1, 18-4, 19-2, 18-6.[3] Central to the parties' dispute is whether the RISCs or RPAs govern. Carvana argues the claims arise out of the RPAs, while the plaintiffs contend that the RISCs have subsumed the RPAs and accordingly, the court should only consider the RISCs. *See* Am. Compl. at ¶ 6; Mot. To Compel Arb. at 11.

## Retail Installment Sales Contracts

The RISCs at issue contain numerous required details, including: the full names and addresses of all parties to the contract; the date that the buyer signed the contract; a description of the motor vehicles sold sufficient to identify each vehicle; and itemized costs relating to the amount

---

[3] The plaintiffs filed the RISCs separately from the amended complaint. *See* Doc. No. 13. Carvana filed amended RPAs as exhibits to its motion. *See* Doc. No. 19.

financed. Am. Compl., Ex. 1, Jennings RISC, Ex. 2, Furlong RISC, Doc. Nos. 13-2, 13-3. Each

RISC contains a clause stating Pennsylvania law governs the terms of the Contract. Am. Compl.,

Ex. 1, Jennings RISC, Ex. 2, Furlong RISC, Doc. Nos. 13-2, 13-3.

Notably, the RISCs do not make any reference to the RPA or the arbitration agreement.

Further each RISC contains an integration clause. *See* Am. Compl., Ex. 1, Jennings RISC, Ex. 2,

Furlong RISC, Doc. Nos. 13-2, 13-3. The integration clause reads as follows:

> **Entire Agreement.** Your and our entire agreement is contained in this Contract.
> There are no unwritten agreements regarding this Contract. Any change to this
> Contract must be in writing and signed by you and us.

Am. Compl., Ex. 1, Jennings RISC, Ex. 2, Furlong RISC, Doc. Nos. 13-2, 13-3. The RISCs go on

to define "Contract" as "refer[ing] to this Retail Installment Contract and Security Agreement".

Am. Compl., Ex. 1, Jennings RISC, Ex. 2, Furlong RISC, Doc. Nos. 13-2, 13-3. Finally, included

in the Itemization of Amount Financed section, the RISCs contain a line item titled "amount Paid

to Public Officials (incl. filing fees)". *See* Am. Compl., Ex. 1, Jennings RISC at 3, Ex. 2, Furlong

RISC at 4, Doc. Nos. 13-2, 13-3. The RISC does not define these fees any further.

**Retail Purchase Agreements and Arbitration Agreements**

The RPAs, each titled "Retail Purchase Agreement — Pennsylvania —", contain much of

the same information as the RISCs with a few notable differences. The RPAs include language

applying the law of the state of the dealership listed on the RPA itself. Mot. To Compel Arb., Ex.

A, Jennings RPA (dealership listed in Pennsylvania); Ex. C, Furlong RPA (dealership listed in

Georgia); Doc. Nos. 19-1, 19-2. On the last page, the RPA includes a clause referring to an

arbitration agreement and explicitly incorporates the agreement by reference. Mot. To Compel

Arb., Ex. A, Jennings RPA; Ex. C, Furlong RPA; Doc. Nos. 19-1, 19-2. ("**Arbitration**

**Agreement:** The arbitration agreement entered into between you and Dealer is incorporated by

reference into and is part of this Agreement"). The arbitration agreements, each respectively signed by the plaintiffs, summarize the arbitration process, explain how to opt-out of the arbitration agreement, and list the rights waived by failing to opt-out. Mot. To Compel Arb., Ex. A, Jennings RPA; Ex. C, Furlong RPA; Doc. Nos. 19-1, 19-2.

The plaintiffs' alleged damage stems from these state registration fees, license plate fees, and state title fees.[4] The RPAs itemize these fees, while the RISCs do not. *Compare* Jennings, RISC (listing the disputed fees under the line item "Paid to Public Officials (incl. filing fees)"), *and* Furlong RISC (same), *with* Jennings RPA (itemizing the fees); Furlong RPA (same). The RPAs specifically reference a "Registration Fee" of $38, a "License Plate – Electronic Issuance Fee" of $16, and a "Title Fee" of $55 while the RISCs identify the disputed fees "as a total" summed amount aggregated under the description, "Paid to Public Officials". *See* Jennings RPA; Furlong RPA; Pl.'s Opp'n to Def,'s Mot. to Compel Arbitration and to Dismiss ("Pl.'s Opp'n") at 4, Doc. No. 22.

## II.     DISCUSSION

### A.     <u>Standard of Review – Motions to Compel Arbitration</u>

The FAA "creates a body of federal substantive law establishing and governing the duty to honor agreements to arbitrate disputes." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London, Ssubscribing to Retrocessional Agreement Nos. 950548, 950549, 950646*, 584 F.3d 513, 522 (3d Cir. 2009) (citations omitted). Section 2 of the FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The purpose of the Act was to abolish the common law rule that arbitration agreements were not judicially enforceable." *Cost Bros. v. Travelers Indem.*

---

[4] The sum of these fees equal the actual damages claimed by the plaintiffs. *See* Pl. Mot. in Opp'n to Defs. Mot. to Compel Arbitration and to Dismiss at 4.

*Co.*, 760 F.2d 58, 60 (3d Cir. 1985) (citations omitted). This "strong federal policy favoring arbitration, however, does not lead automatically to the submission of a dispute to arbitration upon the demand of a party to the dispute." *Century Indem. Co.*, 584 F.3d at 523. Instead, "[b]efore compelling a party to arbitrate pursuant to the FAA, a court must determine that (1) there is an agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement."  Id. (citations omitted).

Before it may compel arbitration, a court must initially find that there is a valid agreement to arbitrate. *Id.* Courts look to state law to determine whether a contractual arbitration agreement is valid. *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005) ("due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration"). An arbitration agreement will be enforceable if valid under state law. *See id.* Here, the key issue is whether these arbitration agreements, which were not incorporated into the RISC, are valid and enforceable under Pennsylvania law. *Id.*

### B.     MVSFA and Special Rules of Installment Contracts

In 1947, the Pennsylvania Legislature enacted the MVSFA in an attempt to:

> "promote the welfare of its inhabitants and to protect its citizens from abuses presently existing in the installment sale of motor vehicles, and to that end exercise the police power of the Commonwealth to bring under the supervision of the Commonwealth all persons engaged in the business of extending consumer credit in conjunction with the installment sale of motor vehicles; to establish a system of regulation for the purpose of insuring honest and efficient consumer credit service for installment purchasers of motor vehicles; and to provide the administrative machinery necessary for effective enforcement."

69 P.S. § 602 (now 12 Pa. C.S. § 6221). Pursuant to the MVSFA, if a buyer is purchasing a vehicle via installment sale, the contract must be in writing, signed by the buyer and the seller, "**and shall contain all of the agreements between the buyer and the seller** relating to the installment sale of the motor vehicle sold[.]" 69 P.S. § 613(A) (emphasis added); *see also Knight v. Springfield*

*Hyundai*, 81 A.3d 940, 948 (Pa. Super. Ct. 2013) (noting that the plain language of the MVSFA causes a RISC to subsume all other agreements relating to the installment purchase of a vehicle). This statute creates a one-document rule for the installment purchases of vehicles; *all agreements* must be incorporated into the RISC, either in-fact or by reference. *See Knight*, 81 A.3d at 948 (holding that for installment contracts all agreements must be in a single document); *Kent v. Drivetime Car Sales LLC.*, 2020 WL 3892978, at *3 (E.D. Pa. July 10, 2020) (finding a valid arbitration agreement when it was incorporated by reference into the RISC).

Further, courts look to whether the RISC included a complete integration clause. *Knight*, 81 A.3d at 948. In *Knight*, the court held that a RISC that contained an integration clause stating the RISC contained the entire agreement between the purchaser and dealer was persuasive to whether a valid, enforceable arbitration agreement existed. *Id.* at 948–49. These clauses, while not determinative, illustrate whether the parties intended for other documents to have been considered as the entire agreement between the parties. *See Kent*, 81 A.3d at 948 (determining that the RISC at issue did subsume the other purchase documents because it contained an integration clause).

Over the past few years, several cases have analyzed this issue. All agree that under the MVSFA, when a consumer purchases a motor vehicle through an installment agreement, the RISC subsumes other agreements, so long as they are not incorporated in-fact or by reference into the installment contract. *See Knight*, 81 A.3d at 948 (no valid arbitration agreement when not incorporated into the RISC); *Mount v. Peruzzi of Langhorne*, 2021 WL 3708714, at *3 (E.D. Pa. Aug. 20, 2021) (same); *Gregory v. Metro Auto Sales, Inc.*, 158 F. Supp.3d 302, 305 (E.D. Pa. 2016) (same); *Kent* 2020 WL 3892978 (E.D. Pa. July 10, 2020) (holding that an arbitration agreement is enforceable when the RISC incorporates the arbitration agreement by reference). In an installment sale of a vehicle, for additional agreements or contracts to be enforceable, they must

be found *somewhere* within the installment contract. *See Knight*, 81 A.3d at 948; *Mount*, 2021 WL 3708714, at *3.

The defendant argues that the FAA preempts the MVSFA's rule as it would stand as an obstacle to the purposes and objectives of the federal law. State laws that conflict with federal law are "without effect." *Dooner v. DiDonato*, 971 A.2d 1187, 1193 (2009) (quoting *Altria Group, Inc. v. Stephanie Good*, 555 U.S. 70, 76 (2008)). Although federal preemption of state laws may be found in any of three ways, *see Taylor v. Extendicare Health Facilities, Inc.*, 147 A.3d 490, 497 n.6 (Pa. 2016) (discussing express preemption, field preemption, and conflict preemption), the defendant only raises conflict preemption. *See Volt Info. Sci., Inc. v. Bd. of Tr. of Leland Stanford Junior Univ.*, 489 U.S. 468, 477 (1989) ("The FAA contains no express pre-emptive provision, nor does it reflect a congressional intent to occupy the entire field of arbitration."). Conflict preemption typically arises where compliance with both federal and state law is impossible, or when the state law stands as an obstacle to the accomplishment of the full purposes and objectives of the United States Congress. *Holt's Cigar Co. v. City of Philadelphia*, 10 A.3d 902, 918 n.4 (Pa. 2011); *see Volt*, 489 U.S. at 477. However, the Supreme Court has cautioned that obstacle preemption does not justify a "freewheeling judicial inquiry" into whether state laws are "in tension" with federal objectives, as such a standard would undermine the principle that "it is Congress rather than the courts that preempts state law." *Chamber of Com. of U.S. v. Whiting*, 563 U.S. 582, 607 (2011).

The Supreme Court has repeatedly stated that the FAA establishes "a liberal federal policy favoring arbitration agreements." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (quoting *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). The FAA requires courts to compel arbitration of claims subject to an arbitration agreement, "even if a state

law would otherwise exclude it from arbitration." *Taylor*, 147 A.3d at 509. The only exception, under the FAA's saving clause, that permits courts to not enforce an arbitration agreement is when there is a generally applicable contract law defense. *Id.*; *see also AT & T Mobility LLC v. Concepcion*, 563 U.S. 333, 343 (2011) (overturning a state law that purposefully discriminated against arbitration agreements relative to other contractual agreements).

In 2018, in *Epic Sys. Corp.*, 138 S. Ct. at 1622, the Supreme Court clarified that the saving clause of the FAA prohibits state laws that would discriminate against arbitration agreements, explicitly or discretely. 9 U.S.C. § 4. "[T]he clause establishes a sort of 'equal-treatment' rule for arbitration contracts." *Id.*; *see also Kindred Nursing Centers L.P. v. Clark*, 137 S.Ct. 1421, 1426 (2017) (holding a state law that discriminates specifically against arbitration agreements to be in direct conflict with the FAA). The FAA's saving clause permits agreements to arbitrate to be invalidated by "generally applicable contract defenses." *Concepcion*, 563 U.S., at 339. However, the saving clause will not permit contract defenses that disproportionately "apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Id.*

### C.    Enforceability of the Arbitration Clause in the RPAs

Whether there is a valid arbitration agreement is a question for state law. *See Trippe Mfg. Co.*, 401 F.3d at 532. Here, the MVSFA requires that for the purchase of a vehicle through an installment contract, *all* agreements must be within the RISC.[5] 12 Pa. C.S. § 6221. For any agreement in an installment contract of a vehicle, regardless of the subject matter, the MVSFA sets the same requirements. Despite the federal government and Pennsylvania's "healthy regard for the federal policy favoring arbitration" *Taylor*, 147 A.3d at 509, the MVSFA does not come in direct conflict with the FAA and thus, is not preempted. *See also Epic Sys. Corp.*, 138 S. Ct. at

---

[5] The defendant is correct that the MVSFA only applies to installment sales and would not bar enforcement of the arbitration agreements for non-installment sales of vehicles. Mot. to Compel Arb. at 11; *see* 12 Pa. C.S. § 6221(a).

1622 (noting contract defenses that treat arbitration agreements equally to all other agreements will fall within the FAA's saving clause).

The MVSFA treats arbitration agreements no differently than any other contractual provision. 12 Pa. C.S. § 6221. The MVSFA's requirement that all agreements be found in the RISC is a generally applicable contract defense and provides equal treatment to arbitration agreements. *Cf. Epic Sys. Corp.*, 138 S. Ct. at 1622 (requiring equal treatment for arbitration contracts to satisfy the saving clause of the FAA). The RISCs, here, do not mention the existence of either the RPAs or the arbitration agreements. To the contrary, they contain integration clauses that state the RISCs contain the complete agreement of the parties. Here, under the MVSFA's rule for installment sales for vehicles, the RPA and Arbitration agreements are subsumed into the RISC and are not independently enforceable. *See Knight*, 81 A.3d at 948 (holding the RISC subsumes all other agreements under the MVSFA); *Mount*, 2021 WL 3708714, at *3 (requiring the RISC to include reference to an arbitration agreement for the arbitration agreement to be enforceable).

### D.  **Pennsylvania Law Applies**

Next, the defendant argues that Georgia law should govern Furlong's claims while Pennsylvania law should apply to Jennings. "Pennsylvania courts will uphold choice-of-law provisions in contracts to the extent that the transaction bears a reasonable relation to the chosen forum." *Gay v. CreditInform*, 511 F.3d 369, 390 (3d Cir.2007) (quoting *Churchill Corp. v. Third Century, Inc.*, 396 Pa. Super. 314, 578 A.2d 532, 537 (1990)). As discussed above, installment contracts executed in Pennsylvania are governed by the MVSFA, which provides that a single document, i.e. the RISC, shall contain all of the applicable contract terms. In the RISCs at issue here, both Jennings and Furlong's documents explicitly choose Pennsylvania law to govern the contract. *See* Am. Compl., Ex. 1, Jennings RISC ("**Governing Law and Interpretation.** This

Contract is governed by the law of Pennsylvania and applicable federal law and regulations."), Ex. 2, Furlong RISC (same), Doc. Nos. 13-2, 13-3.

The defendant points to Furlong's RPA and argues that Georgia state law should govern his claim. Mot. To Compel Arb. at 3, (Doc. No. 18). However, this argument fails as installment contracts executed in Pennsylvania fall under the MVSFA. Further illustrating the point that Pennsylvania law should govern and thus the Pennsylvania choice of law provision should apply is that the RPA executed between Carvana and Furlong is titled "Retail Purchase Agreement — Pennsylvania —". Mot. To Compel Arb. Ex. C, Furlong RPA; Doc. No. 19-2. Despite these conflicting choice of law provisions between the RISC and the RPA, the RISC is the operative document and the contract has a reasonable and substantial relationship to the chosen forum state. *See Gay*, 511 F.3d at 390 (applying the contract's choice of law provision even though other states also had substantial relationships to the contract).

### E.      Plaintiff States a Claim Under Breach of Contract and UTPCLP

Next, the defendant moves to dismiss both of the plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). Under Rule 12(b)(6), a complaint must be dismissed if it fails "to state a claim upon which relief can be granted." Fed. R. Civ. P 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* On a motion to dismiss under Rule 12(b)(6), all factual allegations of the complaint are accepted as true, viewed in the light most favorable to the plaintiff, and all reasonable inferences are drawn in the plaintiff's favor. *See Blanyar v. Genova*

*Prods. Inc.*, 861 F.3d 426, 431 (3d Cir. 2017); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). However, the assumption of truth does not apply to legal conclusions, such as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678 (citation omitted). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. at 679.

Count I of the plaintiff's amended complaint alleges that the defendant breached their contractual duties by failing to permanently license and register the vehicles despite collecting fees to do so. Further, the plaintiffs allege that the defendant improperly issued temporary plates, in violation of Arizona and Tennessee law, as well as their duty of good faith under contract. Ariz. Rev. Stat. 28 § 28-2156;  Tenn. Code Ann. § 55-4-115(a)(1)-(2). Under Pennsylvania law, to state a claim for breach of contract a plaintiff must plead (1) the existence of a contract, including its essential terms, (2) the defendant's breach of a duty imposed by those terms, and (3) actual loss or injury as a direct result of the breach. *See Angino v. Wells Fargo Bank, N.A.*, 666 F. App'x 204, 207 (3d Cir. 2016); *Stein v. Matheson*, 539 F. Supp. 3d 463, 472 (E.D. Pa. 2021).

Count II of the plaintiff's amended complaint alleges that the defendant violated UTPCPL. To state a UTPCPL claim, a private plaintiff must allege (1) a deceptive act that is likely to deceive a consumer acting reasonably under the circumstances; (2) justifiable reliance; and (3) ascertainable loss caused by that justifiable reliance. *Velazquez v. State Farm Fire & Cas. Co.*, 2020 WL 1942784, at *3 (E.D. Pa. Mar. 27, 2020); *see also Kemezis v. Matthews*, 394 F. App'x 956, 959 (3d Cir. 2010) (a private plaintiff must allege sufficient "facts from which plausible inferences of deceptive conduct and justifiable reliance thereon can be drawn").

In the Amended Complaint, the plaintiff sufficiently alleges violations of both breach of contract and violations of the UTPCPL. *See Genomind, Inc. v. UnitedHealth Grp. Inc.*, No. CV

14

21-373, 2021 WL 3929723 at *7 (E.D. Pa. Sept. 1, 2021) (permitting claims to survive a 12(b)(6) motion to dismiss when the parties agreed on a methodology for one party to pay certain fees); *Dixon v. Northwestern Mutual*, 146 A.3d 780, 790 (Pa. Super. Ct. 2016) ("Any deceptive conduct 'which creates a likelihood of confusion or of misunderstanding can constitute a cognizable claim' under the UTPCPL") (quoting *Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC*, 40 A.3d 145, 151 (Pa. Super. Ct. 2012).

### III.    CONCLUSION

For the foregoing reasons, the defendant's Motion to Compel Arbitration and to Dismiss is **DENIED**.