# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH FURLONG, | : | |
| *individually & on behalf of all others* | : | |
| *similarly situated,* | : | |
| Plaintiffs, | : | |
| v. | : | Civil Action No. 5:21-cv-05400 |
| | : | |
| CARVANA, LLC | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

## I.      INTRODUCTION & NATURE OF THE ACTION

Plaintiff Joseph A. Furlong ("Named Plaintiff") filed and joined this action because he purchased a vehicle from Defendant Carvana LLC ("Defendant" or "Carvana") who broke its promises to him and others like him to timely provide title and permanent registration of his vehicle.  As part of his standard and uniform contracts with Carvana, Named Plaintiff and the putative class members agreed to pay (and did in pay in reliance to Carvana's promises) for their vehicles to be timely titled and registered to them as lawful purchasers of the vehicles.  However, Carvana breached those promises by delaying for months and sometimes more than a year and even more than two years in providing proper registration and title papers if at all even though it received payments from the Named Plaintiff and putative class members in reliance on its promises to them.  In the meantime, the Plaintiff and putative class members sustained damages resulting from Carvana's broken promises.

While Carvana sought improperly to force the Named Plaintiff's claims into arbitration without the right to do so, it continued to breach its written promises and agreements.  This motion

is necessary and appropriate at this early stage under the circumstances entirely created and maintained by Carvana so the Named Plaintiff can protect the rights of the putative class members who continue to be harmed daily.  Fed. R. Civ.P. 23(c)(1)(A).  The relief is especially practicable now under the circumstances since the wrongful conduct continues and the number of putative members continues to grow.  No normal consumer seeking to purchase a vehicle does do for it to sit in the driveway since it cannot be legally driven to work, school, or other routine activities.

Specifically, under Counts I and II of their proposed First Amended Class Action Complaint ("FACFAC") asserted on their individual behalf and on behalf of similar persons,[1] the sworn testimony supporting this motion by Carvana's customers confirms it routinely fails to provide timely registration of vehicles to its customers.  Public records from Maryland reveal this occurs in at least 10% of its sales in that state.

Despite Carvana's efforts to delay adjudication of this action and its own lack of responsiveness to its ongoing business issues while it focuses its efforts instead on avoiding responsibility in this action, the evidence presented by the Named Plaintiff in support of this Motion shows without material burden it is possible to identify a sufficient number of class members with consistent and uniform experiences even without Carvana providing any discovery. This public data can then be used to narrow the electronic data Carvana maintains in the normal course of its business to identify all the information necessary for this action to proceed as a class pursuant to Fed. R. Civ.P. 23.

The claims made by the Plaintiff rely on the requirements imposed on Carvana under the common law of contracts and also under this Commonwealth's Unfair Trade Practice Consumer

---

[1]     Named Plaintiff's proposed class definition for the Nationwide Title Class and Pennsylvania Title Class is defined below in § II *infra*.

Protection Law.  Simply put, Carvana's standard and uniform contractual promises to provide title

and registration to the Plaintiff and putative class members for the cars they have purchased within

30 to 60 days has been routinely breached by it and resulted in a cascade of damages.  The Third

Circuit has recognized in matters like this case that

> Courts have expressed a willingness to certify nationwide classes on the ground that
> relatively minor differences in state law could be overcome at trial by grouping
> similar state laws together and applying them as a unit. This Court has affirmed a
> class certification based on a "creditable showing, which apparently satisfied the
> district court, that class certification [did] not present insuperable obstacles" relating
> to variances in state law. *See In re School Asbestos Litigation,* 789 F.2d 996, 1010
> (3d Cir.1986).

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 315 (3d Cir. 1998).

Here, it is widely recognized that there are no material differences when breach of contract

is alleged since the principles of contract construction—such as those mandating a defendant like

Carvana must deliver what it promises—are very nearly uniform across states.[2]  Courts considering

breach of contract class actions have repeatedly emphasized that "[a] breach is a breach is a breach,

whether you are on the sunny shores of California or enjoying a sweet autumn breeze in New

---

[2]     *See e.g.* In re *U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 127 (2d Cir. 2013)
(affirming class certification of contract claims; noting the definition of a breach is generally
uniform in all jurisdictions and even more so in the instant litigation, when "all the jurisdictions
implicated have adopted the UCC"; also noting apparent uniformity regarding admissibility of
extrinsic evidence and that defendant had proffered no evidence of variation); *Steinberg v.
Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 77–80 (E.D.N.Y. 2004) (insurer's practice of taking
"betterment" deductions was common course of conduct that affected all putative class members,
and claim involved general principles of contract interpretation that did not differ materially from
one jurisdiction to the next); *Singer v. AT&T Corp.*, 185 F.R.D. 681, 692 (S.D. Fla. 1998); *Grove
v. Principal Mut. Life Ins. Co.*, 14 F. Supp. 2d 1101, 1106–1107 (S.D. Iowa 1998); *Leszczynski v.
Allianz Ins.*, 176 F.R.D. 659, 672 (S.D. Fla. 1997) (certifying national class in action concerning
construction of insurance policy because "general policies underlying common-law rules of
contract interpretation tend to be uniform" and "[w]hether the Med Pay provision has been
breached appears to be a pure and simple question of contract interpretation which should not vary
from state to state").

Jersey." *Foodservice Inc.,* 729 F.3d at 127 (quoting *Klay v. Humana, Inc.*, 382 F.3d 1241, 1263 (11th Cir. 2004)). Further, because there is nothing Carvana can show to indicate the application of each state's law would result in divergent outcomes, the Court can apply Pennsylvania law to the class without conducting a choice of law analysis if that was even necessary. *See Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 230 (3d Cir. 2007) ("If two jurisdictions' laws are the same, then there is no conflict at all, and a choice of law analysis is unnecessary").

As to the putative class for the Pennsylvania Title Class under the Penn. Unfair Trade Practices & Consumer Protection Law and Regulations, 73 P.S. §§ 201-1 *et seq.;* 37 Pa. Code § 301.4(10) ("UTP/CPL"), courts have also certified classes like that proposed here. *See e.g. Tenuto v. Transworld Sys.*, Inc., No. CIV. A. 99-4228, 2000 WL 1470213 (E.D. Pa. Sept. 29, 2000); *Saunders v. Berks Credit & Collections, Inc.*, No. CIV. 00-3477, 2002 WL 1497374 (E.D. Pa. July 11, 2002).

Herein, Named Plaintiff and the members of the Nationwide Title Class and the Pennsylvania Title Class deserved the right to be treated fairly and for Carvana to not breach its promises to them to provide them timely permanent registration and title to the vehicles they purchased.  To protect the rights of the Named Plaintiff and the putative class members this action should be certified at this early stage so that the class members can have their uniform claims administered by this Court in one forum as a result of Carvana's failure to mitigate its ongoing conduct and practices by failing to timely deliver upon its promises to sell vehicles with proper titles and registration.

II.   **BACKGROUND**

      **A.  Carvana Promised and Agreed to Register and Title the Vehicles it Sold to the Named Plaintiff and the Putative Class Members But Failed to Timely Perf*o*rm its Contractual Promises**

As set forth in the FAC, Named Plaintiff and the putative class members entered into contracts with Carvana to purchase vehicles.  FAC at ¶¶ 12-31, 40-167 (summarizing experiences of plaintiffs and others around the country).  Thereafter, in breach of its consistent and uniform promises Carvana failed to provide to the Named Plaintiff the proper title and permanent registration for the vehicles.  *Id.*  As a result, Named Plaintiff and the putative class members suffered damages which include the payment for services not timely or ever provided (as well as other damages discussed *infra*).

In relation to the Pennsylvania Title Class, Named Plaintiff purchased from Carvana a vehicle for his personal, family, and household use.   FAC at ¶¶ 22-31.  See also Ex. 24, Declaration of Joseph Furlong. Carvana's failure to provide timely title and registration services (if at all), was unfair and deceptive and involved trade and commerce under the UTP/CPL.  Carvana's omissions and acts of its direct and indirect contractual promises to provide title and registration services to Named Plaintiff and the members of the Pennsylvania Title Class included imposition and collection of vehicle registration fees which it failed to timely act upon.  FAC at ¶¶ 198-208.

The pattern and practice of Carvana breaching its contractual promises with the Named Plaintiff and members of the putative Pennsylvania Title Class and Nationwide Title Class by failing to timely and permanently register and provide legal title to some of the vehicles it sold to them is consistent.  FAC at ¶¶ 12-31, 40-167.  See also Exhibits 3-66 (affidavits of more than sixty putative class members and Named Plaintiff).  Public data from the State of Maryland shows that Carvana did not timely register at least 10% of the vehicles in that state (but this information does not reveal the number of vehicles it sold in the state that it never registered or provided title. Exhibit 67, Maryland Public Information Act

Response.  Other states have similar reports as to Maryland's experiences.  Exhibits 68-70 (public enforcement actions and data from Illinois, North Carolina, and Michigan all parallel Named Plaintiff's and class members' experiences described in this action).

### B. Carvana's Collection of Title and Registration Fees from Named Plaintiff and Other Consumers is the Same and Uniform

Carvana utilized a standard contract to sell vehicles nationwide and in each contract it agreed and promised to (i) register the vehicle it sold to a consumer, (ii) provide proper title to the vehicle, and (iii) and to perform each promise timely within 30-60 days. The Named Plaintiff's sworn testimony and the sworn testimony of dozens and dozens of putative class members demonstrates these promises are standard and uniform.  **MF I**.[3]  Yet, Carvana broke its promises for large numbers of its customers even according to public enforcement actions.  **MF I**.

### C. Carvana's Standard and Uniform Electronic Records and Data Can Identify Whether or Not it Provided Timely Title and Registration to its Customers as it Promised

Carvana's entire business model is to sell vehicles on-line through its website at www.carvana.com.  **MF IV**.  That site claims its sales involve a "100% online process…from anywhere. [Purchasers] select [their] payment, upload [their] documents, and [Carvana will] take care of the title and registration."  **MF IV**.  It also promises that its customers' "experience doesn't end once [they] get the keys. [Its] goal is to make sure [the customer has] peace of mind when it comes to [their] new ride."  **MF IV**.  Finally, Carvana admits on its website through a video explanation concerning "Title and Registration" by its authorized representative:

---

[3]   Herein Named Plaintiff will refer to the annotated facts on his attached Statement of Material Facts in Support of his Motion for Class Certification as:  "MF ____" (and thereby incorporates the evidence supporting those facts).  Generally those facts and the Combined Exhibits in Support of Class Certification are also incorporated by this reference.

Hi there.  I'm Valarie.  Carvana can complete the car registration process on behalf of our customers in most states.  We handle the necessary paperwork at delivery or pickup and then we'll complete the rest with the DMV.  Our cars come with temporary license plates and once registration process is completed we'll mail the permanent plates and registration.  You can also check your registration status after delivery by logging in to your Carvana account.  This one more way we make your car buying experience better.

MF. IV.

### III.   NAMED PLAINTIFF SEEKS TO CERTIFY CLASSES OF OTHER CARVANA CUSTOMERS WHO CARVANA FAILED TO TIMELY REGISTER THEIR VEHICLES AS IT PROMISED AND AGREED TO DO.

Named Plaintiff proposes the following classes for certification:

The proposed **Nationwide Title Class** is defined to include:

All persons in the United States who entered into contracts with Carvana to purchase vehicles since November 5, 2019, and Carvana agreed to provide car registration services with non-temporary and permanent vehicle registrations in the state of their residence.

The proposed **Pennsylvania Title Class** is defined to include:

All persons from the Commonwealth of Pennsylvania who are members of the Nationwide Class.

Excluded as members of the proposed Nationwide Title Class and proposed Pennsylvania Title Class are any employees or independent contractors of Carvana and their relatives and any employee of this Court.  Also, excluded as members of the Pennsylvania Title Class are any persons who purchased their vehicles exclusively for business purposes.

It is true that in his Amended Complaint, Named Plaintiff has defined his proposed Nationwide Title Class of similar persons differently than that proposed in this Motion.  However, this is commonplace, and Carvana can point to no prejudice to it under the circumstances presented in this case for Named Plaintiff's modification.  Further, notwithstanding the Named Plaintiff's proposed definition in his pleading or even this Motion, the Court is the one charged with the final

authority under Fed. R. Civ. P. 23 to define a class.  Fed. R. Civ. P. 23(c)(1)(B)("An order that certifies a class action must define the class and the class claims, issues, or defenses, and must appoint class counsel under Rule 23(g)").  "Litigants and judges regularly modify class definitions . . . such changes do not 'commence' new suits." *Schorsch v. Hewlett-Packard Co.*, 417 F.3d 748, 750 (7th Cir. 2005).  Further, courts routinely recognize that putative named plaintiffs may, depending on the circumstances presented, propose different class definitions than are pled. *See e.g., Abraham v. WPX Energy Prod., L.L.C.*, 322 F.R.D. 592, 639 (D.N.M. 2017) (concluding that the plaintiffs could submit a new class definition without amending the complaint; also stating that even if the complaint bound the plaintiffs to their original class definition, the court would grant leave to amend the complaint); *Knutson v. Schwan's Home Serv., Inc.*, 2013 WL 4774763, at *5 (S.D. Cal. 2013) ("While Plaintiffs' proposed class is narrower in scope than the class alleged in Plaintiffs' SAC, the proposed class still includes individuals that were allegedly called in violation of the same subsection of the TCPA. The Court will thus go on to address the requirements for class certification"); *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 287 F.R.D. 1, 29 n.9 (D.D.C. 2012).

## IV.     LEGAL STANDARDS FOR CLASS CERTIFICATION

Class actions serve an important purpose. As the Seventh Circuit explained in *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997) why class actions are preferred in small, individual recovery cases like this one.  This action is under a federal consumer protection law designed to protect consumers and the *Mace* rationale applies equally here. *Newberg* has explained:

> Courts have held that "class certification is appropriate for FDCPA claims," noting that FDCPA cases "appear[] to contain the exact problems the class action mechanism was intended to redress … [namely,] many plaintiffs with small claims … unlikely to provide enough incentive to bring a solo suit." This is particularly

true because "the unsophisticated consumers that the FDCPA was intended to protect are unlikely to be aware of their rights or be willing to subject themselves to the burdens of an individual lawsuit."

§ 21:6. Fair Debt Collection Practices Act (FDCPA), 7 NEWBERG ON CLASS ACTIONS § 21:6 (5th ed.)(FNs omitted).  *See also Huber v. Simon's Agency, Inc.,* No. CV 2:19-01424, 2021 WL 5758938, at *7 (E.D. Pa. Dec. 3, 2021)(certifying a FDCPA contested class meeting the requirements of the FDCPA); *Muse v. Holloway Credit Sols., LLC*, 337 F.R.D. 80, 88–89 (E.D. Pa. 2020).

"The dominant concern of Rule 23(a) and (b) [is] that a proposed class have sufficient unity so that absentees can fairly be bound by class representatives' decisions." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 593 (1997).  "Class certification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23 are met." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 309 (3d Cir. 2008) (internal quotation marks omitted). Factual determinations are made based on a preponderance of the evidence. *Id.* at 307. Moreover, "the court must resolve all factual or legal disputes relevant to class certification, even if they overlap with the merits—including disputes touching on elements of the cause of action." *Id.*

**A.    The Nationwide Title Class and the Pennsylvania Class Meets the Requirements of FED. R. CIV. P. 23(a).**

Based upon informal discovery record presented as well as Carvana's own admissions and representations to the Court, the proposed Nationwide Title Class and Pennsylvania Title Class meets the rigorous requirements and four prerequisites under FED. R. CIV. P. 23(a): numerosity, commonality, typicality, and adequacy.

**1.    Numerosity** ("The class is so numerous that joinder is impractical.")(**MF I-II**): By its removal Carvana admits that more than 100 persons are members of the Nationwide Title Class and Pennsylvania Title Class,  **MF I**.  *See also* Notice of Removal ¶16 (ECF. 1)("Information

currently available to Carvana also shows that, from November 5, 2019 through November 5, 2021, more than 30,000 persons…entered into contracts with Carvana to purchase a vehicle and paid registration fees").  Further, informal discovery presented as part of this motion by the Named Plaintiff reveals Carvana breached its promises to timely register and title the vehicles hundreds of time throughout the country and more likely than not based upon the pattern likely occurred in the Commonwealth as well. **MF I-III.**   While Carvana surely seeks to delay this matter from progressing so that it can apparently continue its pattern and practices with some consumers who purchase cars from it, that desire to delay cannot lead to any conclusion that this action involves hundreds of  persons in the class periods from witness testimony, public records evidence, and basic common-sense inferences therefrom presented by the Named Plaintiff as part of this Motion. **MF I-III.**

"[I]t is well settled that a plaintiff need not allege the exact number or specific identity of proposed class members."  1 NEWBERG ON CLASS ACTIONS § 3:13. Further, "[t]he Court may use common sense assumptions to support a finding of numerosity."  *Kerrigan v. Philadelphia Bd. of Election*, 248 F.R.D. 470, 474 (E.D. Pa. 2008).  *See also McDonough v. Toys R Us, Inc.*, 638 F. Supp. 2d 461, 474–75 (E.D. Pa. 2009)(considered a defendants gross sales income in the class period to find the subject product was sold "thousands" of times "during the relevant period, meaning that potential []class members are quite numerous indeed"); *Californians for Disability Rts., Inc. v. California Dep't of Transp.*, 249 F.R.D. 334, 347 (N.D. Cal. 2008).

Here, the evidence and admissions of Carvana itself to this Court shows Carvana is involved in thousands of car sales nationwide and in the Commonwealth. **MF. I**.  Additionally, Carvana concedes that it nearly always imposes and collects registration and title fees from consumers for the purpose of providing them permanent title and registration for their vehicle

purchases.  **MF. I**. "No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Stewart v. Abraham*, 275 F.3d 220, 226–27 (3rd Cir. 2001).

Based on the foregoing evidence and common sense given the number of vehicles sold by Carvana and evidence presented, the numerosity requirement is met as the number of Nationwide Title Class and Pennsylvania Title Class members exceeds 50 persons each.

2.     **Commonality** ("[T]here are questions of law or fact common to the class.")(**MF III**): "A putative class satisfies Rule 23(a)'s commonality requirement if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *In re Community Bank of Northern Virginia Mortg. Lending Practices Litigation*, 795 F.3d 380, 397 (3rd Cir. 2015). In addition, the commonality requirement is not "a high bar." *Chiang v. Veneman*, 385 F.3d 256, 265 (3d Cir. 2004).

 In *Community Bank*, the Third Circuit affirmed the certification of a class that included claims under Truth in Lending Act finding that there was a "common contention ... … capable of classwide resolution…" 795 F.3d at 398.

The issues presented in this case by this Motion in relation to the Nationwide Title Class are:

> a.   Whether Carvana entered into standard and uniform retail installment sales contracts ("RISC") to sell vehicles and provide permanent title and registration services as part of the transaction;
> b.   Whether Carvana entered into standard and uniform RISCs which agreed that the "entire agreement" between it and the purchaser were contained within the contract;
> c.   Whether Carvana was the first party to breach its RISCs and is therefore barred from enforcing any other rights under its contracts and purported contracts it otherwise might have had the right to enforce but for the fact it

breached first by not timely providing permanent registration and title to the vehicles it sold to class members;

d.  Whether Carvana failed to provide permanent title and registration to the vehicles it sold within 30 to 60 days as required by law and breached its promises to members of the Nationwide Title Class by failing to do so even while it assigned the contracts to another;

e.  Whether Carvana has the right to issue temporary registrations from states other than those which are the legal residences of the members of the Nationwide Title Class or where the sales transactions took place;

f.  Whether Carvana's conduct and omissions had the tendency or capacity to deceive consumers for which it is strictly liable in violation of the Pennsylvania Unfair Trade Practices & Consumer Protection Law and Regulations, 73 P.S. §§ 201-1 *et seq.* and 37 Pa. Code § 301.4(10);

g.  Whether Carvana is liable to the class members for the damages and losses, including, (i) nominal damages (ii) fees agreed upon for the services not performed by it in a reasonable period of time, (iii) other damages proximately caused by its inability to timely provide permanent title and registration services, and (iv) statutory damages available to the Pennsylvania Title Class pursuant to 73 Pa. Stat. Ann. § 201-9.2; and

h.  Whether class members are legally excused from performing their promises to Carvana in light of Carvana's initial breach of their contracts by failing to timely provide title and registration to the vehicles it sold to them.

**MF. III**.

The answers to these common issues are based on the Carvana using: (i) standard and uniform business practices and procedures and contracts that resulted in Carvana selling vehicles it did not have the means or ability to provide permanent title and registration to some of the class members; and (ii) Carvana assigning a majority of its contracts to others knowing it had not performed as it promised it would by failing to provide permanent title and registration to some of the class members.

In relation to the Nationwide Title Class "[a] breach is a breach is a breach, whether you are on the sunny shores of California or enjoying a sweet autumn breeze in New Jersey." *Foodservice Inc.,* 729 F.3d at 127 (cleaned up).  Further, in relation to the Pennsylvania Title Class there is no dispute that it is an "considered unfair methods of competition and unfair or deceptive acts or practices [for Carvana]…[to] [fail] to forward to the proper Commonwealth

12

agency amounts and forms tendered by a purchaser, such as sales tax and transfer and registration fees, within the time prescribed by law." 37 Pa. Code § 301.4(11). The questions of whether the Carvana's conduct and omissions in relation to the Named Plaintiff and members of the Nationwide Title Class and Pennsylvania Title Class members is proper is unaffected by the actions or inactions of the Named Plaintiff or the putative class members. Rather, only an examination of Carvana's conduct is necessary as well as its actions and common and uniform documents and practices, and the applicable law. These common issues will decide the validity of the claims asserted on behalf of the Nationwide Title Class and Pennsylvania Title Class members. *Compare Hofstetter v. Chase Home Fin., LLC*, No. C 10-01313 WHA, 2011 WL 1225900, at \*12-13 (N.D. Cal. Mar. 31, 2011); 7 NEWBERG ON CLASS ACTIONS § 21:3.

Finally, the Third Circuit has established a "low threshold for satisfying" commonality (and typically). *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183 (3d Cir. 2001)("Rule 23(a) does not require that class members share every factual and legal predicate to meet the commonality and typicality standards. [N]either of these requirements mandates that all putative class members share identical claims")(cleaned up). The arguments herein and the informal and public discovery record demonstrates Named Plaintiff has met the required thresholds to find commonality under FED. R. CIV. P. 23(a) since there exists at least one common question of law or fact shared between them and the members of the Nationwide Title Class and Pennsylvania Title Class.

**3.**     **Typicality** ("[T]he claims or defenses of the representative parties are typical of the claims or defenses of the class.")(**MF IV**):  As noted above, Carvana informal and public discovery largely admits the consistent business practices concerning Carvana's contractual promises to provide permanent title and registration services to its customers including the Named

Plaintiff and putative class members. **MF I, IV**.  Common sense dictates that few if any car purchasers intend to buy vehicles which cannot be legally driven because the dealer does not have either clear title or the means to acquire the permanent title and registration the dealer promised to provide as part of the transaction.

Therefore, "[o]n their face, the claims satisfy the typicality requirement. Defendant has not pointed to any evidence showing that its conduct was unique to Plaintiff, or that the loan documents were materially different for certain class members." *Lymburner v. U.S. Fin. Funds, Inc.*, 263 F.R.D. 534, 540 (N.D. Cal. 2010).  *See also Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994)(recognizing that unlawful conduct affecting plaintiff and class members usually satisfies typicality).

Here, the Named Plaintiff's claims are typical of the claims being asserted on behalf of the members of the Nationwide Title Class and Pennsylvania Title Class members and they have met the required threshold to find commonality.    Their claims are typical "in common sense terms…[and] aligned with members of the [proposed FDCPA Class]." *Beck v. Maximus, Inc.*, 457 F.3d 291, 295-96 (3d Cir. 2006).

4.      **Adequacy** ("The representative parties will fairly and adequately protect the interests of the class.")(**MF V**): "Adequate representation depends on two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class." *Lewis v. Curtis*, 671 F.2d 779, 788 (3rd Cir.  1982).

The Named Plaintiff has no conflict with the members of the Nationwide Title Class and Pennsylvania Title Class members and their interests are aligned.  No car purchaser wishes to pay fees for services which are not timely performed or performed at all.  Further, in this case, Plaintiff

has no conflicts of interest. He seeks the same relief for the Nationwide Title Class and Pennsylvania Title Class members — all available damages for Carvana's breach of its contractual promises — as the claims they assert individually (as well as those damages available for the Pennsylvania Title Class members under the UTP/CPL. **MF V**. Named Plaintiff has represented and joined this action to protect his rights and the rights of others like him and is prepared to be deposed, come to court, and represent the interests of the class members as necessary and appropriate. **MF. V**.

Appointment of class counsel is governed by FED. R. CIV. P. 23(g). Named Plaintiff has retained counsel who are well versed in the subject matter of this litigation. They have successfully prosecuted consumer cases for decades.  They also have experience and have been approved as class counsel and conducting a class action trial.  *See* **MF. VI**.  Plaintiff's counsel meet the qualifications to be appointed as class counsel based on their knowledge and experience in both class actions and the law at issue.  *Id.*

Regarding class counsel's adequacy, the Court must consider four factors:

    (i)    the work counsel has done in identifying or investigating potential claims in the action;
    (ii)   counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
    (iii)  counsel's knowledge of the applicable law; and
    (iv)  the resources that counsel will commit to representing the class[.]

FED. R. CIV. P. 23(g)(1)(A); *Sheinberg v. Sorensen*, 606 F.3d 130, 132-133 (3d Cir. 2010).  In addition, the Court may consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." FED. R. CIV. P. 23(g)(1)(B); *Sheinberg,* 606 F.3d at 132-133.

Here, the record before the Court shows Named Plaintiff and Plaintiffs' counsel are adequate pursuant to FED. R. CIV. P. 23(g)(1)(A) by investigating these claims (**MF I, VI**),

counsel's experience in class actions and their knowledge of consumer protection laws and regulations (**MF VI**), and the resources they have invested already into the matter and will invest further as necessary (**MF. VI**). *See also Pro v. Hertz Equip. Rental Corp.*, 72 Fed.R.Serv.3d 485, *7 (D.N.J. 2008) (willingness to commit resources evidenced by having already expended significant resources).  For these additional reasons, Plaintiff has satisfied the requirements for adequacy and this action pursuant to FED. R. CIV. P.  23(a).

### B.  The FED. R. CIV. P. 23(b)(3) requirements are also met.

The requirements of FED. R. CIV. P. 23(b)(3) are commonly referred to as predominance and superiority. It provides:

> A class action may be maintained if Rule 23(a) is satisfied and if…[t]he court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

*Id.*

In analyzing FED. R. CIV. P. 23(b)(3) "[t]he Court must first ask whether the plaintiff's "damages are susceptible of measurement across the entire class." *Suchanek v. Sturm Foods, Inc.,* 311 F.R.D. 239, 257 (S.D. Ill. 2015). Certain of the damages are easily determined here since (i) Carvana contractually agreed to provide permanent title and registration services for specific sums in each written contract with the members of the Nationwide Title Class; and (ii) under the UTP/CPL, the Pennsylvania Title Class is entitled to statutory damages determined by the Court (three times the actual damages) and also "such additional relief as it deems necessary or proper." 73 Pa. Stat. Ann. § 201-9.2.

"The importance of the class action device in vindicating the rights of consumers is one reason why the Supreme Court held that "[p]redominance is a test readily met in certain cases

alleging consumer ... fraud," among others. *See Amchem*, 521 U.S. at 625; *Suchanek v. Sturm Foods, Inc*., 764 F.3d 750, 760 (7th Cir. 2014).

      **1.  Predominance (MF XV):** The predominance standard rests on the commonality required by Fᴇᴅ. R. Cɪᴠ. P. 23(a)(2). The difference is that the common issues necessary to satisfy Fᴇᴅ. R. Cɪᴠ. P. 23(a)(2) must also be found to be the predominant issues in the case.

      In *Edwards v. First American Corp*., 798 F.3d 1172 (9th Cir. 2015), the plaintiff sought to certify a class to assert claims under the Real Estate Settlement Procedures Act ('RESPA") for illegal kickbacks. The District Court denied the motion to certify a class. The Ninth Circuit reversed and held "[t]he district court erred in concluding that the common issue does not predominate over individual issues for the proposed class members." 798 F.3d at 1182. The Court found that individual issues that may arise in connection with the claims under RESPA did not overwhelm the common issue of whether there were illegal kickbacks. *Id.*

      The predominance requirement of Fed. R. Civ. P. 23(b)(3) also "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. *See also Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 359 (3d Cir. 2013).  Here, the evidence from informal and public discovery shows that much, if not all, the evidence is available through Carvana's own electronic records and without individualized burdens.  Further, to the extent some limited cross-check of Carvana's records is necessary, that information can be obtained from public agencies who Carvana is required to report the necessary information and therefore can be done without significant difficulty. **MF. VII-X**.  In fact, Named Plaintiff has obtained already information from the putative class members that also can cross-check Carvana's own records which also demonstrates the common elements necessary for 'adjudication by representation.' **MF I**.

Here, there is a single and predominant issue before the Court – Did Carvana utilize false or misleading means or otherwise act unfairly or unconscionably by contracting to sell vehicles in which it could not timely provide (if at all) permanent registration and title.  If so, then actual damages from its breach of contractual promises (and statutory damages to the Pennsylvania Title Class) can be granted to the putative classes. Any defenses offered by Carvana would apply equally to all members of the putative Pennsylvania Title Class and Nationwide Title Class.  The merits of these issues do not have to be decided at this stage. The significance of this motion is that it shows there are predominant issues that will resolve the claims of the Named Plaintiff and the putative Pennsylvania Title Class and Nationwide Title Class members in one stroke insofar as the essential elements and evidence related to the putative Pennsylvania Title Class and Nationwide Title Class members' transactions can be proven at trial based on common, uniform evidence.[4]

**2. Superiority (MF XVII):** Superiority is the second prong of Fed. R. Civ. P. 23(b)(3). This prong presents the question whether the class "provides a significantly more efficient litigation vehicle than individual trials." *Carr v. Flowers Foods, Inc.*, 2019 WL 2027299, at \*21 (E.D. Pa. 2019). *See also Taha v. Bucks County Pennsylvania*, 2016 WL 2345998, at \*4 (E.D. Pa. 2016)("efficiency can be achieved by resolving the issues common to all class members in one suit, a class action is the most viable method of adjudication"). *See also* § V *infra* on Manageability and Ascertainability.

---

[4]     In addition, here, the actual and statutory damages sought in this action renders individualized prosecution of each class member's statutory claims inefficient and, therefore, unlikely. "[I]ndividual consumer class members have little interest in individually controlling the prosecution or defense of separate actions because each consumer has a very small claim in relation to the cost of prosecuting a lawsuit." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 534 (3d Cir. 2004).

Certification of the putative Pennsylvania Title Class and Nationwide Title Class is superior here and each of the factors weigh in favor of certification.

### (a) The interest of members of the classes in individually controlling the prosecution or defense of separate actions.

Whether or not class members want to file their own actions is often marked by a defendant appearing to advocate out of concern for the class members and preserving their rights to sue the defendant on an individual basis. The Court in *Esplin v. Hirschi*, 402 F.2d 94, 101 (10th Cir. 1968) recognized the concern expressed by a defendant may be feigned since what defendant would want a slew of individual cases if the individuals were truly in a position to pursue individual claims. *Esplin*, 402 F.2d at 101 (emphasis added). In *Esplin* the class members were concerned with investments that they had made, and the Court also posited that the class members would not be in position to pursue individual claims. *Id*.  Additionally, in the context of distributors, this Court recently found that "the difficulty of mounting litigation, and the limited resources available to the individual distributors, individual suits would likely impede resolution of the individual class members' claims." *Carr*, 2019 WL 2027299, at *21.

This element is stronger here where the class members are persons struggling with their mortgage loans on their homes.  Therefore, the interest of members of the class in individually controlling the prosecution or defense of separate actions is minimal and weighs in favor of certifying the putative Pennsylvania Title Class and Nationwide Title Class.

### (b) The extent and nature of any litigation concerning the controversy already commenced by or against members of the class.

There is no known pending class litigation as of this filing involving the same Defendant concerning the issues in the same time period presented in this action.  **MF XIII**.

### (c)  The desirability or undesirability of concentrating the litigation of the claims in the particular forum

There does not appear to be any reason why it is undesirable to concentrate the litigation before this Court and instead flood hundreds of similar cases in various courts involving the same core issues, facts, discovery record, witnesses, and law.

> **(d)  The difficulties likely to be encountered in the management of a class action.**

This case is uniquely suited to be certified as a class action because of the ease of identifying the class members through Carvana's records, public records, and records of the Carvana's vendors and affiliates.  In addition, the putative class members are motivated because of the material harms caused to them by Carvana to also provide necessary information.  Further, there is a lack of divergent issues on the core legal and factual issues before the Court. Actual damages and statutory damages may be awarded to the putative Pennsylvania Title Class and Nationwide Title Class.  While actual damage sums may vary from class member to class members, these differences are purely ministerial and Carvana is required by law to track all data and the fees it charges to each purchaser and it has such information available electrically.

**V.  THE PROPOSED PENNSYLVANIA TITLE CLASS AND NATIONWIDE TITLE CLASS IS ASCERTAINABLE FROM CARVANA'S OWN ELECTRONIC DATA (AS WELL AS THAT OF ITS AGENTS AND AFFILIATES), IF NECESSARY A MINISTERIAL REVIEW OF PUBLIC RECORDS AND FOCUSED INSPECTION OF PARTICULAR REVIEW OF CARVANA'S ELECTRONIC RECORDS**

Although some members of the Third Circuit have previously been critical of whether the Circuit's ascertainability requirements should be applied to a case like this, the precedent necessary for Plaintiff to prevail on this motion is that her proposed Pennsylvania Title Class and Nationwide Title Class requires an element of ascertainability based on objective criteria.  *City Select Auto Sales Inc. v. BMW Bank of N. Am. Inc.*, 867 F.3d 434, 439 (3d Cir. 2017)(citations omitted).  The Third Circuit Recently explained:

> In considering whether to certify a class, a court must perform a two-pronged "rigorous analysis" to determine whether ascertainability and Rule 23(b)(3)'s requirements are satisfied. *In re Hydrogen Peroxide*, 552 F.3d at 309 (citation omitted). In determining whether the ascertainability requirement is satisfied, it must determine that the plaintiff has (1) "defined [the class] with reference to objective criteria," and (2) identified a "reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Byrd*, 784 F.3d at 163 (quoting *Hayes*, 725 F.3d at 355).

*Kelly v. RealPage Inc.*, 47 F.4th 202, 222 (3d Cir. 2022).

Here, the proposed Nationwide Title Class (*see* § III *supra*) are defined by objective criteria: (i) persons who entered into contracts to buy vehicles with Carvana's online sales program; (ii) in which Carvana agreed and promised to provide permanent registration and title services; and (iii) during a specific class period since November 5, 2019. All of the necessary data to identify this class is maintained by Carvana (and its agents and assigns) on its electronic systems and is available to it on a routine basis as part of its customary work and from public agencies. **MF I, VII-X, XVIII, XIX,** . In addition, the proposed Pennsylvania Title Class (*see* § III *supra*) is also identified with the same objective criteria as the Nationwide Title Class except they are residents of the Commonwealth. *Id.*

In addition, since Carvana collects all information from the class members on-line and maintains it electronically in its systems in which it is also required to communicate with state agencies who regulate its conduct, there are a 'administratively feasible mechanisms' to determine which putative class members qualify for the classes and are entitled to damages.

Further, even though it appears without formal discovery which Carvana seeks to delay again, that the sheer number of class members is likely in the thousands given just the documented delays disclosed in Maryland's public records, **MF. XIII**. But the number of class members does not defeat the purpose of this or any other class action and the ascertainability of the class members from Carvana's own records. The Third Circuit explained:

To the extent RealPage's objection is to the number of records that must be individually reviewed, that is essentially an objection to the size of the class, which we stated explicitly in *Byrd* is not a reason to deny class certification. 784 F.3d at 171. To hold otherwise would be to categorically preclude class actions where defendants purportedly harmed too many people, which would "seriously undermine the purpose" of a class action to "vindicate meritorious individual claims in an efficient manner." *Id.* So long as the review is for information apparent on the face of the document, the number of files does not preclude ascertainability. *See id.* at 170 ("There will always be some level of inquiry required to verify that a person is a member of a class .... Such a process of identification does not require a 'mini-trial,' nor does it amount to 'individualized fact-finding[.]'" (quoting *Carrera*, 727 F.3d at 307)).

*Kelly*, 47 F.4th at 224–25.

## VI.   IN THE ALTERNATIVE, RULE 23(C)(4) REQUIREMENTS ARE SATISFIED FOR CERTIFYING A CLASS ON THE ISSUE OF LIABILITY

In the event that the court may be concerned about the ability to determine some of the compensatory damages sustained by the class members on a class wide basis (other than the registration and title fees paid for services not timely performed by Carvana), the Named Plaintiff seeks full certification now, while reserving the option to narrow the certification in the future in order to assign the issue of damages to a Magistrate or Special Master, or for separate trials. Named Plaintiff does not believe or concede that proving compensatory damages on a class wide basis will be difficult but offer these potential solutions in the event that the court may raise the issue *sua sponte*.  Since the practices sued over were uniform and applied to all class members, the question of liability is likewise uniform. This makes the question appropriate to certification under Rule 23(c)(4).  Liability "is likely the most typical use of issue class certification as it is not unusual that liability would be common across the class while damages would be more individualized. But nothing in the text of the Rule limits issue classes to liability alone and courts have certified issues classes as to other types of issues." Newberg and Rubenstein on Class Actions § 4:92 (6th ed.).  *See Central Wesleyan College v. W.R. Grace & Co.*, 6 F.3d 177, 186, (4th Cir.

1993) (no abuse of discretion in conditionally certifying certain issues for class treatment in asbestos case); *In re American Honda Motor Co., Inc. Dealers Relations Litigation,* 979 F. Supp. 365 (D. Md.  1997) (class certified for the limited purpose of establishing whether there was liability).

Other courts have approved liability only class cases in a variety of situations like those presented in this action.  *See e.g. Martin v. Behr Dayton Thermal Prod. LLC*, 896 F.3d 405, 415-416 (6th Cir. 2018);[5] *In re Nassau County Strip Search Cases*, 461 F.3d 219, 222 (2d Cir. 2006) (directing the district court to certify a class as to the issue of liability, notwithstanding the fact that the action as a whole was not appropriate for class treatment, in action challenging defendant's blanket strip search policy for newly admitted detainees)(emphasis added); *Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc.*, 725 F.3d 1213, 1220 (10th Cir. 2013)(recognizing liability only classes may be appropriate where damages are individualized and can be determined in "subsequent proceedings"); *Gonzalez v. Corning*, 885  F.3d  186,  202–03  (3d  Cir.  2018), as amended (Apr.  4,  2018)(stating "Rule  23(c)(4)  class  might  be  appropriate  because liability is capable of class wide treatment but damages are not").  *See also* § 4:43. Class treatment  of  particular  issues  or  claims  under

---

[5]     "Because each issue may be resolved with common proof and because individualized inquiries do not outweigh common questions, the seven issue classes that the district court certified  satisfy  Rule  23(b)(3)'s  predominance  requirement….Even  if  the  class  members brought suit individually, the seven certified issues would need to be addressed in each of their cases. Resolving the issues in one fell swoop would conserve the resources of both the court and the parties. Class treatment of the seven certified issues will not resolve Defendants' liability entirely, but it will materially advance the litigation. The issue classes therefore satisfy Rule 23(b)(3)'s superiority requirement."

Rule 23(c)(4)—Issue certification, 1 McLaughlin on Class Actions § 4:43 (17th ed.).[6]

Here, a liability only class on damages other than the registration and title fees may be an appropriate alternative pursuant to Fed.R.Civ.P. 23(c)(4) given once certified, this Court can examine the uniform discovery record that applies to all putative class members to make its finding of liability by way of a summary judgment motion and/or trial on the merits if necessary. Upon a determination of liability (which is not likely to need a trial given the undisputed facts and case law but instead at summary judgment), those class members who wished to pursue individualized damages on the claims could do so in the state courts where the damages could be resolved much quicker than likely to occur in this Court.

### VII.   THE POTENTIAL ROLE FOR A SPECIAL MASTER PURSUANT TO FED.R.CIV.P. 53

Similarly, to the extent that the court may be concerned about the prospect of "mini trials on damages," Fed.R.Civ.P. 53 provides a mechanism to appoint a magistrate judge or a special master for the purpose of addressing damages. *Bell v. Brockett*, 922 F.3d 502, 514 (4th Cir. 2019)("However, the district court provided a process by which damages could be individually challenged and litigated. This process included referral to a Special Master and ultimately the opportunity to appeal the Special Master's decision to the district court itself. This process is in line with other courts' treatment of the issue and is not an abuse of discretion."). *See also In re Titanium Dioxide Antitrust Litig.*, 284 F.R.D. 328, 349 (D. Md. 2012), <u>amended,</u> 962 F. Supp. 2d 840 (D. Md. 2013)("Given the inherent difficulties in assessing individual damages

---

[6]      "The purpose of Rule 23(c)(4) is to permit courts in certain circumstances the option not to make class certification an all or nothing proposition. The Rule recognizes that it may be worthwhile to achieve the efficiencies and benefits of class-wide adjudication of one or more issues that are common to all class members even if other issues will have to be litigated separately by individual class members."

questions in this type of case, the Court notes that it has several options with which to consider damages at a future date. As discussed by the Second Circuit, there are at least five methods to deal with the individual damages inquiry: (1) bifurcating liability and damage trials with the same or different juries; (2) appointing a magistrate judge or special master to preside over individual damages proceedings; (3) decertifying the class after the liability trial and providing notice to class members concerning how they may proceed to prove damages; (4) creating subclasses; or (5) altering or amending the class. *In re Visa Check/MasterMoney Antitrust Litig.,* 280 F.3d 124, 141 (2d Cir.2001) (citations omitted). Indeed, the Fourth Circuit in the *Gunnells* case reiterated its previous admonition to "take full advantage of the provision in [Fed.R.Civ.P. 23(c)(4)] permitting class treatment of separate issues ... to reduce the range of disputed issues in complex litigation." 348 F.3d at 426 (quoting *In re A.H. Robins Co., Inc.,* 880 F.2d 709, 740 (4th Cir.1989))"). *Bell,* 922 F.3d at 514; *In re Titanium,* 284 F.R.D. at 349.

Further, Judge Davis recognized the importance of utilizing 'special masters' in cases like this matter previous matter:

> The Settlement Program provided for the appointment of "Masters," who were charged with reviewing the submissions and evidence supporting the compensatory damages claimed by each Participating Plaintiff. CMO ¶¶ 12–13, 15. See Fed. R. Civ. P. 53(a)(1)(A) (authorizing an appointment of masters with the parties' consent). Here, the use of the Masters was critical in expediting the time-consuming process of fairly and accurately evaluating each and every Plaintiff's individual damages. See MDL Best Practices at 6–7 (recognizing that "special masters may be critical to avoiding delays in addressing time-consuming matters").

*In re Amtrak Train Derailment in Philadelphia, Pennsylvania on May 12, 2015*, 268 F. Supp. 3d 739, 750 (E.D. Pa. 2017).

Even if the Court chose not to utilize the procedures in Fed.R.Civ.P. 53, certification of a liability class pursuant to Fed.R.Civ.P. 23(c)(4) would enable class members to pursue damages

on an individual basis in in their local state courts as an alternative to this Court.  However, other damages could be pursued here if in various streamlined approaches discussed *supra*.

## VIII.   CLASS NOTICE

After a class is certified under Fed. R. Civ. P. 23(b)(3), notice must be sent to the members of the certified class.  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).  The cost of such notice is generally borne by plaintiffs. *Eisen.,* at 178-179. The Supreme Court has expressly recognized that, with respect to identification of class members, "the defendant may be able to perform a necessary task with less difficulty or expense than could the representative plaintiff." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 356 (1978). "In such cases, we think that the district court properly may exercise its discretion under Fed. R. Civ. P. 23(d) to order the defendant to perform the task in question." *Id.*

Therefore, if this Motion is granted, Plaintiff will move for an Administrative Order to approve a notice and to compel Carvana to provide that list to the appointed class counsel for the purpose of serving notice to the class.  Further, if Carvana claims it is unable to review its own electronic data to gather the necessary data points to identify the Pennsylvania Title Class and Nationwide Title Class members, Plaintiff may also request and Order of the Court pursuant to Fed. R. Civ. P. 34 to permit them and their retained experts and team of professionals to review the targeted and remaining information from Carvana's electronic systems that is necessary for this purpose (and later purposes at the merits phase).

## IX.   CONCLUSION

The proposed Pennsylvania Title Class and Nationwide Title Class meet all the requirements of Fed. R. Civ. P. 23(a) and (b)(3) to be certified as a class.  The claims for the Pennsylvania Title Class and Nationwide Title Class can and should be decided on a class-wide

basis so that the consumers who purchased vehicles from Carvana based upon its representation and promise to timely provide permanent registration and title to the vehicles can recover the actual and statutory damages allowed by the claims before the Court.

Alternatively, the Named Plaintiff asks the Court to certain for liability purposes only some, individual damage claims (other than title and registration fees paid for services not timely performed) pursuant to Fed. R. Civ. P. 23(a) and to appoint a special master pursuant to Fed. R. Civ. P. 53 to facilitate and streamline the adjudication of the class members' other damages.

Finally, Named Plaintiff brings this motion now, at this early stage to protect the interests of the putative class members of the Pennsylvania Title Class and Nationwide Title Class who continue to be harmed and damaged by Carvana's failure to honor its promises while it seeks to avoid review in this Court of its conduct and omissions in contravention of its broken promises. Should the Court wish to stay consideration of this motion while Carvana continues to delay these proceedings with arguments it has lost already, that may be within the discretion of the Court. However, the Named Plaintiff owes a duty to the putative class members to protect their rights in this action and move for class certification at this early stage to oppose any efforts by Carvana to use its delays to seek a reverse auction[7] of their class members' claims (which continue) or some other escape of responsibility for its broken promises.

For the above reasons, the proposed Pennsylvania Title Class and Nationwide Title Class should be certified.

[signatures on next page]

---

[7]     *In re Cmty. Bank of N. Virginia*, 418 F.3d 277, 308 (3d Cir. 2005)(a reverse auction is a "practice whereby the defendant in a series of class actions picks the most ineffectual class lawyers to negotiate a settlement within the hope that the district court will approve a weak settlement that will preclude other claims against the defendant")(cleaned up).

Dated this 31st day of October, 2022.

Respectfully submitted,

*/s/Robert P. Cocco*
Robert P. Cocco
Attorney I.D. No. 61907
1500 Walnut St., Ste. 900
Philadelphia, PA  19102
(212) 351-0200
bob.cocco@phillyconsumerlaw.com

*/s/ Phillip R. Robinson*
Phillip R. Robinson
*Admitted Pro Hac Vice*
Consumer Law Center LLC
10125 Colesville Road, Suite 378
Silver Spring, MD 20901
(301) 448-1304
phillip@marylandconsumer.com

*/s/ Brent S. Snyder*
Brent S. Snyder
*Admitted Pro Hac Vice*
2125 Middlebrook Pike
Knoxville, TN 37921.
Phone: (865) 264-3328
brentsnyder77@gmail.com

*Counsel for the Plaintiff and Putative Class Members*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of this document was served on Defendant's counsel when filed through the CM/ECF system.

*/s/Robert P. Cocco*
Robert P. Cocco