UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEPH FURLONG, : | |
| *individually & on behalf of all others* : | |
| *similarly situated*, : | |
| Plaintiffs, : | |
| v. : | Civil Action No. 5:21-cv-05400 |
| : | |
| CARVANA, LLC : | |
| : | |
| Defendant. : | |

**STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION**

Plaintiff Joseph A. Furlong ("Named Plaintiff"), by his undersigned counsel, hereby provides this annotated summary of preliminary and public discovery record obtained thus far at the early stage of these proceedings in support of his Motion for Class Certification pursuant to Fed. R. Civ.P. 23. This summary also references and summarizes the discovery record in support of the motion that is contained in the Named Plaintiff's Appendix of Exhibits:

A. **Proposed Certified Class Fed. R. Civ.P. 23(a) & (b)(3):** At this early stage of these proceedings, Named Plaintiff proposes pursuant to Fed. R. Civ.P. 23(a) based on the early evidence obtained thus far, that the purposed classes be defined as follows:

The proposed **Nationwide Title Class** is defined to include:

> All persons in the United States who entered into contracts with CARVANA to purchase vehicles since November 5, 2019, and CARVANA agreed to provide car registration services with non-temporary and permanent vehicle registrations in the state of their residence.

("Nationwide Title Class").

1

The proposed **Pennsylvania Title Class** is defined to include:

> All persons from the Commonwealth of Pennsylvania who are members of the Nationwide Class.

("Pennsylvania Title Class").

Excluded as members of the proposed Nationwide Title Class and proposed Pennsylvania Title Class are any employees or independent contractors of Carvana and their relatives and any employee of this Court. Also, excluded as members of the Pennsylvania Title Class are any persons who purchased their vehicles exclusively for business purposes.

B. **Fed. R. Civ.P. 23(a) FACTORS**

    a. **Material Fact ("MF") I: Class Numerosity Element (Fed. R. Civ.P. 23(a)(1)):**

The preliminary discovery record shows and Carvana does not dispute[1] that the members of the Nationwide Title Class exceed more than 100 persons and the Pennsylvania Title Class exceeds more than 100 persons. In fact, based upon a sample of public records from the State of Maryland alone, it is more likely than not that at least 10% or all Carvana customers are likely to have sustained damages as a result of its failure to timely obtain permanent registration and title to vehicles

---

[1] **Exhibit 1, *Furlong* Notice of Removal (ECF. 1)(Apx. 1) at ¶ 16** ("Information currently available to Carvana also shows that from November 5, 2019 through November 5, 2021, more than 30,000 persons…entered into contracts with Carvana to purchase a vehicle and paid registration fees"). *See also* **Exhibit 2 (Apx. 8), *Bodner* Notice of Removal (Case No. 2:22-cv-00013-BSM)(January 19, 2022) at ¶ 9** ("…information currently available to Carvana shows that from October 27, 2019 through October 27, 2021, more than 100 persons…entered into contracts with Carvana to purchase vehicles and paid certain fees related to registration, title, and/or licenses"); **Exhibits 3-66 (Apx. 16-280)** (affidavits from 64 putative class members and Named Plaintiff confirming they contracted with Carvana for it to provide them with permanent title and registration services as part of their vehicle purchases from it which were not timely provided).

it sold in the class period.[2]

II. **MF II (Fed. R. Civ.P. 23(a)(1)):** There is no managerial difficulty excluding from the persons generally identified in **MF 1**: (i) those who previously sought bankruptcy protection since they can be identified by an administrative review of PACER; (ii) Carvana's own employees and contractors (and their relatives); and (iii) this Court's own employees.[3]

III. **MF. III (Fed. R. Civ.P. 23(a)(2))**: Informal and public discovery also confirms there are common questions of fact and law pertaining to the Nationwide Title Class and Pennsylvania Title Class. These include:

   a. Whether Carvana entered into standard and uniform retail installment sales contracts ("RISC") to sell vehicles and provide permanent title and registration services as part of the transaction;[4]

---

[2] **Ex. 67, (Apx. 281) Maryland Public information Act Correspondence**. *See also* **Exhibit 68**, **(Apx. 283) October 7, 2022 Michigan Department of State Suspension of Carvana License** (disclosing Carvana did not timely make applications for title and registration for at least 112 Carvana customers as required under Michigan law); **Exhibit 69, (Apx. 285), Settlement Between Carvana and the North Carolina Division of Motor Vehicles** (dated 7/23/2021); **Exhibit 70, (Apx. 293), Carvana v. IL Secretary of Statement, Response by the State of Illinois to Carvana's Request for a TRO** at Page 3 (identifying that in more than 300 instances in the State of Illinois Carvana failed to timely register and title vehicles sold by it in the that state); **(Exhibit 71, (Apx. 316), Carvana Letter to Investors (2021 Q3)** at Page 3 ("Our explosive growth in buying cars from customers over the last two quarters created **significant operational constraints** in our system. Buying more cars from customers leads to more last mile pickups, more customer care interactions, and more complex title processing requirements, which in turn leads to more complex registration processing")(emphasis added).

[3] **Ex. 76, (Apx. 371), Declaration of Brent Snyder at ¶ 7** ("it is possible to identify from a simple search of PACER individuals who have filed for Chapter 7 or 13 bankruptcy. The PACER system tracks filing and discharge dates that can be applied to Carvana records and exclude persons who are not eligible to join the class").

[4] *See e.g.* ECF. 13-2 & 13-3 (Named Plaintiffs' retail installment sales contracts).

3

    b. Whether Carvana entered into standard and uniform RISCs which agreed that the "entire agreement" between it and the purchaser were contained within the contract;[5]

    c. Whether Carvana was the first party to breach its RISCs and is therefore barred from enforcing any other rights under its contracts and purported contracts it otherwise might have had the right to enforce but for the fact it breached first by not timely providing permanent registration and title to the vehicles it sold to class members;[6]

    d. Whether Carvana failed to provide permanent title and registration to the vehicles it sold within 30 to 60 days as required by law and breached its promises to members of the Nationwide Title Class by failing to do so even while it assigned the contracts to another;[7]

    e. Whether Carvana has the right to issue temporary registrations from states other than those which are the legal residences of the members of the Nationwide Title Class or where the sales transactions took place;

    f. Whether Carvana's conduct and omissions had the tendency or capacity to deceive consumers for which it is strictly liable in violation of the Pennsylvania Unfair Trade Practices & Consumer Protection Law and Regulations, 73 P.S. §§ 201-1 *et seq.* and 37 Pa. Code § 301.4(10);

    g. Whether Carvana is liable to the class members for the damages and losses, including, (i) nominal damages (ii) fees agreed upon for the services not performed by it in a reasonable period of time, (iii) other damages proximately caused by its inability to timely provide permanent title and registration services, and (iv) statutory damages available to the Pennsylvania Title Class pursuant to 73 Pa. Stat. Ann. § 201-9.2; and

---

[5] *See e.g.* ECF. 13-2 & 13-3 ("**Entire Agreement.** Your and our entire agreement is contained in this Contract. There are no unwritten agreements regarding this Contract. Any change to this Contract must be in writing and signed by you and us"). *See also* **Exhibit XXX, Survey of State Contract Law Authorities Concerning Scope of Integration of Contract Terms Like Those Before the Court in this Action** (survey of consistent contract law which foreclose Carvana's arguments to rely upon on purported agreements separate and apart from the retail installment contracts like the ones it attempted to use with the Plaintiffs).

[6] *See e.g.* ECF. 13-2 & 13-3. *See also* **Exhibit 72, (Apx. 336), Survey of State Contract Law Authorities Concerning Scope of Integration of Contract Terms Like Those Before the Court in this Action**.

[7] **Ex. 67, (Apx. 281), Maryland Public information Act Correspondence**. *See also* Ex. **3-66, (Apx. 16-280)**, Affidavits of Named Plaintiff and Putative Class Members .

    h.  Whether class members are legally excused from performing their promises to Carvana in light of Carvana's initial breach of their contracts by failing to timely provide title and registration to the vehicles it sold to them.[8]

**IV.**  **MF. IV (Fed. R. Civ.P. 23(a)(3))**: Informal and public discovery also confirms the course of conduct related to the Named Plaintiff and other Carvana is the same. For example,

    a.  More than sixty persons who are putative class members of the Nationwide Title Class have not timely received the permanent registration and title to the vehicles they purchased from Carvana,[9]

    b.  Public records from the State of Maryland reveal at least 386 vehicles were not timely registered in the State of Maryland from June 2021 to July 2022 which represented approximately 10% of all of its reported vehicle sales in that time period.[10]

    c.  As part of its standard and uniform services when selling vehicles Carvana promises to promptly have the vehicles permanently registered and titled with the appropriate state agencies.

        i.  Carvana's entire business model is to sell vehicles "100%" on-line through its website at www.carvana.com which describes the

---

[8] 13 Williston on Contracts § 39:8 (4th ed.)("…when a party's breach by nonperformance 'contributes materially' to the nonoccurrence of a condition of one of his or her duties, the nonoccurrence is excused")

[9] **MF 1(a).**

[10] **Ex. 67, (Apx. 281), Maryland Public information Act Correspondence**. *See also* FN 2 (detailing similar patterns and numbers in other states including Michigan and Illinois).

process as follows:[11]

> Once you find the car you want, click Get Started in the upper right hand corner to begin the purchase process. Once you've clicked Get Started, we extend a certain amount of time for you to fill out your information. You should see the timer above "vehicle reserved" in the upper right hand corner. As you enter your information and complete each step, the time should extend so that you have ample time to pull up what you need! During this time, the vehicle is reserved for you to schedule your delivery or pick-up. Once the time expires, the car will be available for other customers to select again.
>
> https://www.carvana.com/help/purchasing-a-car/how-do-i-buy-a-car

ii. Carvana knows the registration requirements in each state it sells vehicles to consumers:

https://www.carvana.com/help/purchasing-a-car/what-are-the-registration-restrictions-in-my-state

iii. Carvana's website also explains:

> For the majority of our customers, we are able to complete the registration process for you. We handle the necessary title and registration paperwork with you at the time of delivery or pick-up, and then we complete the rest with the DMV. The vehicle will come with a Temporary Operating Plate, and once registration is completed, your permanent plates and registration will be mailed to the address on file. Please make sure you notify us of any potential address change.
>
> https://www.carvana.com/buying-a-car-online-how-it-works (**How does registration work?**)

iv. It also promises that its customers' "experience doesn't end once [they] get the keys. [Its] goal is to make sure [the customer has]

---

[11] Ex. 73, (Apx. 339-355) (Carvana website pages).

peace of mind when it comes to [their] new ride." Finally, Carvana admits on its website through a video explanation concerning "Title and Registration" by its authorized representative:

> Hi there. I'm Valerie. Carvana can complete the car registration process on behalf of our customers in most states. We handle the necessary paperwork at delivery or pickup and then we'll complete the rest with the DMV. Our cars come with temporary license plates and once registration process is completed we'll mail the permanent plates and registration. You can also check your registration status after delivery by logging in to your Carvana account. This one more way we make your car buying experience better.

V. **MF. V (Fed. R. Civ.P. 23(a)(4))**: Plaintiffs are also adequate to represent the proposed class members.[12]

VI. **MF. VI (Fed. R. Civ.P. 23(a)(4)**: Plaintiff's counsel is adequate to represent the proposed class members.[13]

B. <u>Fed. R. Civ.P. 23(b)(3) Factors</u>

VII. **MF. VII (Fed. R. Civ.P. 23(b)(3)-I)**: The putative class claims in this case focus on Carvana's breach of its contractual promises and use of false or misleading means or otherwise act unfairly or unconscionably by contracting to sell vehicles in which it could not timely provide (if at all) permanent registration and title.[14]

---

[12]  **Ex. 24 (Apx. 102), Declaration Joseph A. Furlong.**

[13]  **Ex. 74 (Apx. 356), Declaration of Robert Cocco**; **Ex. 75 (Apx. 359),, Declaration of Phillip Robinson; Ex. 76 (Apx. 371),, Declaration of Brent Snyder**.

[14]  **Ex. 24 (Apx. 102),, Declaration of Joseph A. Furlong at ¶ 10.** *See also* **Exhibits 3-66 (Apx. 16-280)** (affidavits from 64 putative class members and Named Plaintiff confirming they contracted with Carvana for it to provide them with permanent title and registration services as part of their vehicle purchases from it which were not timely provided).

7

VIII. **MF. VIII (Fed. R. Civ.P. 23(b)(3)-II):** According to a public sample of data from the State of Maryland over the course of 13 months and while this action was pending, Carvana was unable to provide timely permanent registration and title to the vehicles it sold in Maryland in that time in at least 10% of all the sales it had. **MF. IV(b)**. That sample is supported by the testimony obtained by the Named Plaintiffs themselves and putative class members from around the country. **MF. VII**.

IX. **MF. IX (Fed. R. Civ.P. 23(b)(3)-III)**: Applying the sampling of public data from Maryland to the data admitted to by Carvana in this action previously (**MF. IV(b)**), the common question presented by **MF. VII** more likely than not applies to 3,000 or more of Carvana's customers nationwide.

X. **MF. X (Fed. R. Civ.P. 23(b)(3))**: The common issue of whether or not Defendant's practices are permitted or not does not involve any individualized questions since the practice is based on standard legal requirements known to Carvana (**MF. VII**) to timely report and permanently register the care sales it conducts within 60 days of the sale with the states where it sold the vehicles.[15]

XI. **MF. XI (Fed. R. Civ.P. 23(b)(3))**: Pursuing the class members' common law and statutory claims in the aggregate is fair and more efficient since the sums at issue for the fees collected for services not timely performed (if performed at all).[16]

XII. **MF. XII (Fed. R. Civ.P. 23(b)(3)(A))**: Rather than flood the Court with hundreds

---

[15]  *See also* FN 2 *supra*.

[16]  **Ex. 24 (Apx. 102), Declaration of Joseph A. Furlong at ¶ 7. detailing fees of $109.**

of individual actions, it is more practical and efficient to prosecute the common claims in this action.[17]

XIII. **MF. XIII (Fed. R. Civ.P. 23(b)(3)(C)):** Because this Court is located in the forum where the occurrence at issue has taken place, it is convenient for the parties to have this action adjudicated here.[18]

XIV. **MF. XIV (Fed. R. Civ.P. 23(b)(3)(D)):** Because Carvana has a legal duty to maintain the necessary electronic data required to identify the Class members and the necessary information about their vehicle purchases and does in fact market itself as being an "100% on-line" dealer (**MF. IV**), there are no difficulties managing this action as a class action.

XV. **MF. XV (Predominance)**: The Plaintiffs' damages, statutory and actual, can be identified by Carvana's records and an application of the factors permitting statutory damages under the state law for the Pennsylvania Title Class. There is no undue burden for Carvana to identify the members of the Nationwide Title Class and Pennsylvania Title Class and it has the means to do so electronically.

XVI. **MF. XVI (Predominance II)**: The common issues identified in **MF III** are also

---

[17] *Compare* § 21:6. Fair Debt Collection Practices Act (FDCPA), 7 NEWBERG ON CLASS ACTIONS § 21:6 (5th ed.).

[18] This action is the first filed class action and only known one pending to represent the interests of a class of Carvana customers (there are other investor and employee actions against Carvana representing different classes of persons and claims who may have some relation to the issues presented in this action) and if any other cases are commenced they would like be transferred to this Court for consolidation. *Wallerstein v. Dole Fresh Vegetables, Inc.*, 967 F. Supp. 2d 1289, 1294 (N.D. Cal. 2013). In addition, just last week it was publicly reported in Pittsburgh that Carvana is under investigation by the Pennsylvania State Police and the Office of the Attorney General of Pennsylvania has received at least 130 complaints over three years. *See e.g.* https://www.wpxi.com/news/local/11-investigates-carvana-driving-some-customers-crazy-with-delays/34DHOT563ZBNVHOXUBA5Q3H3GM/

the predominant issues in this action.

XVII.   **MF. XVII (Superiority)**: This action concerns consumers who purchased vehicles in the recent past and they simply are not likely to be in a position to pursue individual actions given the gravity of this action and relatively small sums at issue on average (**MF XIV**). Carvana left many putative class members with vehicles that could not be lawfully driven and the class members were left with no choice but to purchase other vehicles, or pay for other means of transportation, to get to school, work, and do other daily business.[19]

C.   <u>ASCERTAINABILITY AND MANAGEABILITY FACTORS</u>

XVIII.   **MF. XVIII (Ascertainability)**: The Defendant has electronic data available to it to identify all members of the putative Plaintiffs' Class. **MF. IV**. This data can identify: (i) names and addresses of customers, (ii) the written contract terms between the class members and Carvana, (iii) the status of any request (if any) by Carvana to timely register and title the vehicles in the names of the class members; and (iv) the payments collected to pay public officials for permanent registration and title of the vehicles. *See e.g.* FN 2 *supra*.

XIX.   **MF. XIX (Ascertainability II)**: If necessary, the putative class members can submit individualized records to support any damages sought in excess registration and title fees and a special master can determine which categories of those damages (such as repossession when no title and registration ever occurred, alternative rental and public transportation fees, government fines and expenses,

---

[19]   **Exhibits 3-66 (Apx. 16-280)**   (affidavits from 64 putative class members and Named Plaintiff confirming they contracted with Carvana for it to provide them with permanent title and registration services as part of their vehicle purchases from it which were not timely provided).

tickets for fines vehicles Carvana had not timely registered, increased insurance premiums, etc.) arise from Carvana's breach on its contractual promises.

XX. **MF. XX (Manageability):** While this action may make some limited inquiry into the damages beyond registration and title fees and charges imposed and/or collected from individual class members by Carvana, such inquiry should not be difficult and happens all the time in similar actions where there are common damages for all class members along with additional damages.

Respectfully submitted,

*/s/ Robert P. Cocco*
Robert P. Cocco
ROBERT P. COCCO, P.C.
Pa. Id. No. 61907
1500 Walnut Street, Suite 900
Philadelphia, PA 19102
215-351-0200

*/s/ Phillip R. Robinson*
Phillip R. Robinson
*Admitted Pro Hac Vice*
Consumer Law Center LLC
10125 Colesville Road, Suite 378
Silver Spring, MD 20901
(301) 448-1304
phillip@marylandconsumer.com

*/s/ Brent S. Snyder*
Brent S. Snyder
*Admitted Pro Hac Vice*
2125 Middlebrook Pike
Knoxville, TN 37921.
Phone: (865) 264-3328
brentsnyder77@gmail.com

*Counsel for the Plaintiff and Putative Class Members*