IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

---

| | |
|---|---|
| **DANA JENNINGS** | : |
| | : |
| And | : |
| | : |
| **JOSEPH A. FURLONG** | : |
| | : |
| Plaintiffs | : CIVIL ACTION NO. 5:21-cv-05400 |
| | : |
| v. | : |
| | : |
| **CARVANA LLC** | : |
| | : |
| Defendant | : |
| Harvin, et al. | : |
| | : |
| Plaintiffs | : |
| | : |
| v. | : CIVIL ACTION NO. 2:23-cv-02068 |
| | : |
| **CARVANA LLC, et al.** | : |
| | : |
| Defendants. | : |

---

**MEMORANDUM OF LAW IN SUPPORT OF CARVANA, LLC'S
MOTION TO DISMISS PURSUANT TO
<u>FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)</u>**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................................. 1

II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY ...................................... 2

    A. Factual Background ................................................................................................. 2

    B. Procedural History .................................................................................................... 5

III. LEGAL STANDARD .......................................................................................................... 6

IV. ARGUMENT ......................................................................................................................... 7

    A. Plaintiffs fail to plead an unfair or deceptive act. ..................................................... 8

        1. The transit charge at issue was clearly and conspicuously displayed in compliance with Pennsylvania law. ......................................................... 8

        2. Plaintiffs' allegation of "double-charging" is rebutted by the RISC. ........ 11

        3. The RISC's disclosure of fees paid to public officials is permitted by Pennsylvania law. ................................................................................. 12

    B. Plaintiffs fail to plead an ascertainable loss. ........................................................... 14

    C. The UTPCPL claim in Count II on behalf of the Transit Charge Class and Subclass should be dismissed with prejudice. ....................................................... 14

V. CONCLUSION .................................................................................................................... 15

# **TABLE OF AUTHORITIES**

Page(s)

**Federal Cases**

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ................................................................................................... 6, 7

*Beale v. Experian Info. Sols., Inc.*,
 No. 22-4810, 2023 U.S. Dist. LEXIS 229382, 2023 WL 8936342 (E.D. Pa.
 Dec. 27, 2023) .............................................................................................................. 14

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ................................................................................................. 6, 11

*Benner v. Bank of America, N.A.*,
 917 F. Supp. 2d 338 (E.D. Pa. 2013) ............................................................................ 14

*Bistrian v. Levi*,
 696 F.3d 352 (3d Cir. 2012) ........................................................................................... 7

*Harper v. Lindsey Chevrolet Oldsmobile, LLC*,
 212 F. Supp. 2d 582 (E.D. Va. 2002) ........................................................................... 13

*Kelly v. Progressive Advanced Ins. Co.*,
 159 F. Supp. 3d 562 (E.D. Pa. 2016) .............................................................................. 7

*Maillis v. Geico Cas. Co.*,
 No. 2:23-cv-01747, 2024 WL 3293352 (W.D. Pa. July 3, 2024) ................................. 15

*Morse v. Lower Merion Sch. Dist.*,
 132 F.3d 902 (3d Cir. 1997) ........................................................................................... 7

*Phillips v. Cnty. of Allegheny*,
 515 F.3d 224 (3d Cir. 2008) ......................................................................................... 14

*Poulis v. State Farm Fire & Cas. Co.*,
 747 F.2d 863 (3d Cir. 1984) ......................................................................................... 15

*Robinson v. Family Dollar, Inc.*,
 679 Fed. Appx. 126 (3d Cir. 2017) ............................................................................... 11

*Salyers v. A.J. Blosenski, Inc.*,
 731 F. Supp. 3d 670 (E.D. Pa. 2024) ............................................................................ 15

*Santiago v. Warminster Twp.*,
 629 F.3d 121 (3d Cir. 2010) ........................................................................................... 7

*Sovereign Bank v. BJ's Wholesale Club, Inc.*,
  427 F. Supp. 2d 526 (M.D. Pa. 2006) ................................................................................2

*Stone v. JPMorgan Chase Bank, N.A.*,
  415 F. Supp. 3d 628 (E.D. Pa. 2019) ................................................................................14

*UNF West, Inc. v. NLRB*,
  844 F.3d 451 (5th Cir. 2016) ............................................................................................11

**State Cases**

*Homziak v. Gen. Elec. Capital Warranty Corp.*,
  839 A.2d 1076 (Pa. Super. Ct. 2003) ................................................................................10

**Federal Statutes**

Odometer Act, 49 U.S.C. § 32701 *et seq.* ..................................................................................6

Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* .......................................................................13

**State Statutes**

12 Pa. C.S. § 6202 ........................................................................................................................4

12 Pa. C.S. § 6222 ............................................................................................................. 1, 8-13

12 Pa. C.S. § 6233 ........................................................................................................................9

Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. C.S.
  § 201-1 *et seq.* ............................................................................................................ *passim*

**Rules**

Fed. R. Civ. P. 12(b)(6) ................................................................................................................7

Fed. R. Evid. 401 .......................................................................................................................12

**Other Authorities**

*Harvin, et al. v. Carvana, et al.*,
  No. 2:23-cv-02068, ECF No. 1 .....................................................................................5, 15

https://www.carvana.com/help/pickup-and-delivery/whats-the-difference-
  between-shipping-and-delivery-fees ..................................................................................4

I.  **INTRODUCTION**

Defendant Carvana, LLC fully and accurately discloses all applicable fees in connection with the vehicles it sells to consumers. When those fees include charges for delivery and transit of the vehicle and amounts paid to public officials, those are listed—along with related totals for the vehicle's "total cash price" and "amount financed"—on the retail installment sales contract (RISC) between Carvana and the customer. But Plaintiffs,[1] three years after filing this litigation in November 2021, now contend for the first time that Carvana's disclosures and fees violate the Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL). That claim, which is set forth on behalf of a "Transit Charge Class" and a "Transit Charge Subclass" as part of Count II of the Amended Consolidated Class Action Complaint, is without merit and should be dismissed with prejudice for failure to state a claim.[2]

*First*, Plaintiffs have not pleaded a key element of a UTPCPL claim—that is, an unfair or deceptive act. Pennsylvania's Consumer Credit Code (CCC) requires installment sales contracts to accurately state the "purchase price of the motor vehicle" and "amount financed," along with various itemized subparts including delivery charges, "other charges normally included in the delivered purchase price of a motor vehicle," and "[o]ther charges necessary or incidental to the sale or financing of a motor vehicle." 12 Pa. C.S. § 6222(5). Here, the total cash price of the vehicle and amount financed were accurately stated; all relevant charges, including delivery charges, transit charges, and amounts paid to public officials, were clearly and conspicuously

---

[1] The current named Plaintiffs are Dana Jennings, Joseph A. Furlong, Syretta Angelique Harvin, and David Weaver Jr.

[2] Plaintiffs' counsel have agreed to dismiss this portion of Count II as it relates to defendant Bridgecrest Credit Company LLC.

disclosed and adequately itemized; and no fees were "hidden" *or* double-charged. Count II on behalf of the Transit Charge Class and Subclass should be dismissed on that basis.

*Second*, a UTPCPL claim requires Plaintiffs to plead and prove an "ascertainable loss of money or property" as a result of that alleged conduct. 73 Pa. C.S. § 201-9.2(a). Because the RISC itself contains only fees that were permissibly charged, no fees were double-charged, and the total cash price and amount financed were accurately disclosed, Plaintiffs have failed to plead any ascertainable loss, and therefore have failed to state a UTPCPL claim.

For these reasons, as further detailed below, Count Two on behalf of the Transit Charge Class and the Transit Charge Subclass should be dismissed with prejudice.

## II.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.   Factual Background[3]

On January 2, 2021, Plaintiff Dana Jennings purchased a 2017 Kia Sportage from Carvana in a transaction governed by a RISC. (ECF No. 87, Compl. ¶ 15.)[4] The RISC contains a Truth-In-Lending Disclosure that states the total cash price, amount financed, and other fees

---

[3]   The factual allegations of the Amended Consolidated Class Action Complaint ("Complaint") are accepted as true solely for purposes of this motion.

[4]   Plaintiffs appear to have intended to attach the Jennings RISC as an exhibit to the Complaint, *see* Compl. ¶¶ 25–26, but did not file any exhibits on ECF. Defendants therefore attach the RISC, which Plaintiffs previously filed, *see* ECF 13-2, as an exhibit to this motion. *See* Exhibit A. And in any event, this Court may consider the contents of the RISC because it is a "document whose contents are alleged in the complaint and whose authenticity no party questions." *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 427 F. Supp. 2d 526, 528 (M.D. Pa. 2006) (internal citations omitted).

The accurate date of the transaction, as reflected in the RISC, is January 2, 2021. The Complaint erroneously states that the purchase occurred December 29, 2020. The difference is not material for these purposes.

2

relating to the vehicle. (Ex. A, Retail Installment Sales Contract ("Jennings RISC"), at 2.) In relevant part, that Disclosure appears as follows:

**Itemization of Amount Financed**

| | | | |
|---|---|---|---|
| 1a. | Cash price of motor vehicle | $ | 14,990.00 |
| 1b. | Government taxes | $ | 1,135.12 |
| 1c. | Accessories and installation | $ | 0.00 |
| 1d. | Delivery charge | $ | N/A |
| 1e. | N/A | $ | N/A |
| 1f. | N/A | $ | N/A |
| 1g. | N/A | $ | N/A |
| 1h. | N/A | $ | N/A |
| 1. | Total Cash Price of Motor Vehicle (1a thru 1h) | $ | 16,715.12 |
| 2a. | Trade-in allowance | $ | 1,391.00 |
| 2b. | Less: Amount owing paid to: N/A | $ | 0.00 |
| 2c. | Net Trade-In (2a minus 2b) | $ | 1,391.00 |
| 2d. | Plus cash payment | $ | 0.00 |
| 2e. | Plus manufacturer's rebate | $ | 0.00 |
| 2f. | Plus (Other) N/A | $ | N/A |
| 2. | Total Down Payment (if negative, enter $0 and see 4a.) | $ | 1,391.00 |
| 3. | Unpaid Cash Price Balance (1 minus 2) | $ | 15,324.12 |
| 4a. | Prior credit or lease balance payment on Trade-in (paid to same as 2b.) | $ | 0.00 |
| 4b. | Insurance premiums paid to insurance company(ies) | $ | 0.00 |
| 4c. | Paid to Public Officials (incl. filing fees) | $ | 140.00 |
| 4d. | (Optional) Service Contract paid to: N/A for N/A | $ | N/A |
| 4e. | (Optional) Service Contract paid to: N/A | $ | 0.00 |
| 4f. | Optional Gap Waiver (Debt Cancellation) paid to Seller | $ | 795.00 |
| 4g. | Transit Charge pd to Carvana | $ | 590.00 |
| 4h. | N/A pd to N/A | $ | N/A |
| 4i. | N/A pd to N/A | $ | N/A |
| 4j. | N/A pd to N/A | $ | N/A |
| 4k. | N/A pd to N/A | $ | N/A |
| 4l. | N/A pd to N/A | $ | N/A |
| 4m. | N/A pd to N/A | $ | N/A |
| 4n. | N/A pd to N/A | $ | N/A |
| 4o. | N/A pd to N/A | $ | N/A |
| 4p. | N/A pd to N/A | $ | N/A |
| 4. | Total Other Charges and Amounts Paid to Others on Your Behalf (4a thru 4p) | $ | 1,525.00 |
| 5. | Amount Financed (3+4) | $ | 16,259.12 |

3

Relevant here, Line 1 states the "Total Cash Price of Motor Vehicle" as $16,715.12—i.e., the "delivered purchase price" of Jennings's vehicle.[5] That amount is the sum of the "Cash price of motor vehicle" in Line 1a ($14,990.00), "Government taxes" in Line 1b ($1,135.12), and "Transit Charge" in Line 4g ($590.00):

|   | Cash Price | Line 1a | $14,990 |
|---|---|---|---|
| + | Government Taxes | Line 1b | $1,135.12 |
| + | Transit Charge | Line 4g | $590 |
| = | **Total Cash Price** | **Line 1** | **$16,715.12** |

Line 5 states the total "Amount Financed"—$16,259.12—which is the "Total Cash Price" in Line 1 ($16,715.15), minus Total Down Payment in line 2 ($1,391), plus "[Amounts] Paid to Public Officials" in Line 4c ($140.00) and "Optional Gap Waiver" in Line 4f ($795.00):

|   | Total Cash Price | Line 1 | $16,715.12 |
|---|---|---|---|
| - | Total Down Payment | Line 2 | $1,391 |
| + | Paid to Public Officials | Line 4c | $140 |
| + | Optional Gap Waiver | Line 4f | $795 |
| = | **Amount Financed** | **Line 5** | **$16,259.12** |

The Complaint cites to, and thereby incorporates, Carvana's website, which explains the difference between shipping fees (i.e., transit charges) and delivery charges. *See* Compl. ¶ 32 (citing https://www.carvana.com/help/pickup-and-delivery/whats-the-difference-between-shipping-and-delivery-fees). The Carvana website explains:

---

[5] The CCC defines "purchase price" as "[t]he price measured in dollars at which an installment seller would in good faith sell to a buyer, and the buyer would in good faith buy from the seller, a motor vehicle that is the subject matter of an installment sale contract, if the sale were a cash sale instead of an installment sale." 12 Pa. C.S. § 6202.

4

> **Shipping fees** cover the cost to ship a vehicle to your local area. Picture multiple vehicles being shipped on one truck.
>
> **Delivery fees** cover the cost to deliver a vehicle from our local Carvana location to your home. Picture your vehicle on a flatbed truck being delivered to your door.

*See* Exhibit B (website excerpt). As detailed at greater length below, both charges are entirely permissible under Pennsylvania law, and as indicated on the RISC, Plaintiff Jennings was permissibly charged a transit charge as part of the vehicle's total cash price.

In short, the vehicle's total cash price and amount financed are stated accurately; all components of those amounts are itemized and conspicuously disclosed; all amounts charged are legally permissible; and mathematically, it is clear that no amounts are either hidden or double-charged.

### B. Procedural History

Plaintiffs Jennings and Furlong filed a putative class action complaint in the Philadelphia Court of Common Pleas on November 5, 2021, which was removed to the Eastern District of Pennsylvania on December 9, 2021. (*See* ECF No. 1, Ex. 1). On May 23, 2023, Plaintiffs Harvin and Weaver, along with two Maryland residents who were subsequently compelled to arbitrate their claims, also filed a putative class action complaint against Carvana and Bridgecrest in this Court raising similar claims. (*See Harvin, et al. v. Carvana, et al.*, No. 2:23-cv-02068 ("*Harvin*"), ECF No. 1). The two matters were consolidated on July 12, 2024. (ECF No. 74.)

On September 13, 2024, this Court granted Defendants' Motion to Compel Arbitration as to the two non-Pennsylvania residents. Soon thereafter, on November 5, 2024, the parties stipulated to stay the case for purposes of settlement negotiations, and to permit the named Plaintiffs to file an amended complaint on behalf of a putative class of Pennsylvania residents

5

only. (ECF No. 81.) As part of that stipulation, Carvana reserved its right to move to dismiss the new claims. (*Id.* at 2.) Plaintiffs filed the Complaint on November 7, 2024. (ECF No. 87.)

The Complaint includes causes of action for breach of contract, violations of the UTPCPL, restitution and unjust enrichment, and violations of the federal Odometer Act. Compl. ¶¶ 160–205. This motion relates to Count Two, *id.* ¶¶ 114–125, the sole cause of action involving allegations on behalf of a newly added "Transit Charge Class" and "Transit Charge Subclass," which Plaintiffs define as follows:

> **Transit Charge Class:** All persons who were residents of the Commonwealth of Pennsylvania when they entered into a Standard Pennsylvania RISC that: 1) included a delivery charge as part of the total cash price of the vehicle but was not disclosed or itemized as a separate charge on the RISC and/or presented with a "N/A"; and/or 2) for whom a delivery charge had already been included in the cash price of the vehicle; and/or 3) for whom a Transit Charge was included as a separate charge on the RISC during the time period beginning six (6) years prior to the filing of this Amended Consolidated Complaint Class Action and up through the date of class certification.
>
> **Transit Charge Subclass:** All persons who are members of the Transit Charge Class whose RISCs included fees for registration, title, license plate and lien filing that were included in the aggregate as one single charge and/or in the line item "Paid to Public Officials."

(*Id.* ¶ 88.) Of the four named plaintiffs, only Jennings alleges that Carvana imposed improper delivery or transit charges. (*See* Compl. ¶¶ 25–34.)

After the stay was lifted on March 5, 2025, ECF No. 92, Carvana timely filed the instant motion to dismiss.

## III.   LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim lacks plausibility where the plaintiff alleges only the "sheer possibility" of misconduct. *Iqbal*,

6

556 U.S. at 678. To determine whether the plausibility requirement is satisfied, courts engage in a three-step analysis: (1) the court must "outline the elements a plaintiff must plead to . . . state a claim for relief;" (2) the court must identify "those allegations that are no more than conclusions and thus not entitled to the assumption of truth;" and (3) "where there are well-pleaded factual allegations, [the court] should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012); *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010).

When a complaint is challenged by a Rule 12(b)(6) motion, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (alteration in original) (citations omitted). Thus, in order to defeat a motion to dismiss under Rule 12(b)(6), a plaintiff cannot rely on unsupported legal conclusions, legal conclusions couched as factual allegations, or conclusory factual allegations devoid of any reference to actual events. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 n.8 (3d Cir. 1997). This standard "'demands more than an unadorned, the-defendant-unlawfully-harmed-me-accusation.'" *Kelly v. Progressive Advanced Ins. Co.*, 159 F. Supp. 3d 562, 564 (E.D. Pa. 2016) (quoting *Iqbal*, 556 U.S. at 678).

## IV. ARGUMENT

To establish a UTPCPL claim, "a plaintiff must prove: (1) he or she purchased or leased goods or services; (2) the goods or services were primarily for personal, family or household purposes; and (3) the plaintiff suffered an ascertainable loss as a result of the defendant's unlawful, deceptive act." *Kelly*, 159 F. Supp. 3d at 564 (citing 73 Pa. C.S. § 201-9.2(a)). Here,

7

Plaintiffs fail to plausibly plead that Carvana engaged in an unlawful, deceptive act *or* that Plaintiffs suffered any ascertainable loss as a result.

### A. Plaintiffs fail to plead an unfair or deceptive act.

Plaintiffs allege that Carvana violated the UTPCPL with respect to delivery and transit charges by improperly disclosing, or failing to disclose, delivery and transit charges. (Compl. ¶ 118(c)–(e), (h).) As detailed below, however, all relevant charges were permissible and were conspicuously disclosed. Plaintiffs also contend that Carvana double-charged those fees, *id.* ¶ 118(f), which is demonstrably incorrect as a matter of simple math. Last, Plaintiffs contend that Carvana improperly failed to sub-itemize amounts paid to public officials, Compl. ¶ 118(g), (i), but Carvana's disclosures of amounts paid to public officials satisfied statutory requirements. As a result, Plaintiffs have failed to plead an unfair or deceptive act for purposes of Count II on behalf of the Transit Charge Class and Subclass.

#### 1. The transit charge at issue was clearly and conspicuously displayed in compliance with Pennsylvania law.

The CCC requires that installment sales contracts contain certain specified information "in writing and in a clear and conspicuous manner, with each component of each subparagraph listed separately." 12 Pa. C.S. § 6222(5). The disclosure in the RISC must include "[t]he purchase price of the motor vehicle," the "amount financed," and applicable subcomponents such as "[c]harges for delivery" and "[o]ther charges normally included in the delivered purchase price of a motor vehicle." *Id*. § 6222(5).

The Jennings RISC complies with the CCC requirements. Consistent with Section 6222(5)(i), the RISC conspicuously states the "purchase price of the motor vehicle"— $16,715.12. (*See* Jennings RISC at 2 (Line 1 - "Total Cash Price of Motor Vehicle"); Compl. ¶ 27.) The RISC also discloses that the amount does *not* include a "delivery charge." And the

8

RISC discloses a further charge—a "transit charge" of $590, disclosed in Line 4g—that is "listed separately" and permissibly rolled up into the total cash price in Line 1:

|   | Cash Price | Line 1a | $14,990 |
|---|---|---|---|
| + | Government Taxes | Line 1b | $1,135.12 |
| + | Transit Charge | Line 4g | $590 |
| = | **Total Cash Price** | **Line 1** | **$16,715.12** |

No ambiguity exists around what the "transit charge" is for. As the Complaint notes, Carvana's website explains that shipping fees (i.e., transit charges) are assessed for bringing the vehicle to the customer's local area, while delivery charges are assessed for delivering the vehicle from Carvana's local location to the customer's home. (*See* Compl. ¶ 32; Exhibit B (website excerpt).) But Plaintiffs nonetheless erroneously maintain that Carvana's disclosure of the transit charge—a disclosed charge for a service they do not dispute was actually performed—was unfair or deceptive.

Plaintiffs' ostensible building blocks for their position are 12 Pa. C.S. § 6233(a), which states that vehicle retailers may charge fees that are "disclosed as required by section 6222(5)," and § 6233(b), which states that vehicle retailers may not charge for amounts "in excess of the amounts permitted under subsection (a)[.]" Carvana disclosed the transit charge in Section 4 of the RISC. According to Plaintiffs, the "transit charge" is only permissible, if at all, as a subcategory of "delivery charge" under § 6222(5)(i)(B), and thus should have been disclosed as a "section 1" delivery charge on the RISC, or not charged and not disclosed at all. (*See* Compl. ¶ 32.)

But it is erroneous to suggest that the transit charge is cognizable only as a "delivery charge." As recognized by the Pennsylvania Superior Court, the CCC "allows charges that are

9

related to the *transfer*, delivery, service or repair of the vehicle" to be included in the "cash price of the motor vehicle." *Homziak v. Gen. Elec. Capital Warranty Corp.*, 839 A.2d 1076, 1083 (Pa. Super. Ct. 2003) (emphasis added). That distinction between fees for "transfer," on the one hand, and "delivery," on the other, would be nonsensical if, as Plaintiffs argue, transit charges must be disclosed only as a variety of delivery charge. Further, the CCC "does not place any constraints or limitations on the profit earned from the sale of a motor vehicle and any accessories or purchaser options that may be included or negotiated with the sale." *Id.* at 1082. The imposition of a transit charge *in addition to* a delivery charge is therefore not prohibited by the CCC.

Plaintiffs also err in arguing that the transit charge is not otherwise "one of the enumerated separate charges permitted by the CCC." (Compl. ¶ 32.) The CCC permits and requires the total cash price to include—separate and apart from delivery charges—"[o]ther charges normally included in the purchase price of a vehicle." *Id.* § 6222(5)(i)(F). The portion of the Carvana website cited to by Plaintiffs establishes that transit charges are a normally included component of the purchase price for Carvana vehicles. Carvana's itemization of the transit charge as an item distinct from any delivery charge was therefore statutorily permissible.

Nor did Carvana violate any statutory provision by listing the transit charge in "section 4" on the RISC, rather than placing it in "section 1." The CCC requires the RISC to contain clear and conspicuous, separately listed disclosures—not any particular schedule of lines and sections. As noted *supra*, the "Total Cash Price of Motor Vehicle" was $16,715.12—the sum of three separately listed items, i.e., the "Cash price of motor vehicle" in Line 1a ($14,990.00), "Government taxes" in Line 1b ($1,135.12), and "Transit Charge" in Line 4g ($590.00). That disclosure was statutorily compliant and sufficiently descriptive to allow any reasonable

10

consumer to identify what they would be paying as the vehicle's total cash price, and what each subcomponent of that amount consisted of.

There is simply nothing unfair or deceptive about Carvana disclosing that it is assessing a $590 transit charge and then charging the customer that disclosed amount. Because the transit charge was clearly and conspicuously disclosed consistent with Pennsylvania law, and included as a part of an accurate total cash price consistent with § 6222(5)(i), Plaintiffs have failed to plausibly allege any unfair or deceptive act with respect to the disclosure of the transit charge.

### 2. Plaintiffs' allegation of "double-charging" is rebutted by the RISC.

Plaintiffs also allege that Carvana committed an unfair or deceptive act by "double-charging" transit and delivery charges" in both the cash price and total cash price. (Compl. ¶¶ 33–34, 118(f).) Their "evidence" of that, however, is the unattributed assertion that "a delivery charge of $590 was already included in the cash price of the motor vehicle (i.e. $14,990), as with most if not all cars with prices ending in _90," *id.* ¶ 33, combined with the observation that Carvana imposed a transit charge.

Plaintiffs do not offer any factual basis for the conclusory statement that "most if not all cars with prices ending in _90" include a delivery charge, or why it would be reasonable for this Court to infer that Carvana follows that alleged practice. This Court should not credit Plaintiffs' threadbare allegations that a delivery charge was likely included in the cash price of the Jennings vehicle based merely on unsourced conjecture about what other vehicle retailers may or may not do. *See Robinson v. Family Dollar, Inc.*, 679 Fed. Appx. 126, 131 (3d Cir. 2017) (explaining that allegations that "are no more than conclusions, are not entitled to the assumption of truth."). Further, speculation that other sellers include delivery charges in the cash price would not amount to "enough fact to raise a reasonable expectation that discovery will reveal evidence of [double-charging]" by *Carvana. Twombly*, 550 U.S. at 554; *accord UNF West, Inc. v. NLRB*, 844

11

F.3d 451, 464–65 (5th Cir. 2016) (affirming exclusion of evidence of other employees' experiences as not probative of what happened to plaintiff employee under Fed. R. Evid. 401).

In any event, even were it true that the cash price included a hidden $590 delivery fee, it would not amount to a double charge, because Plaintiffs have already conceded that Carvana's delivery charges and transit charges are for different things. *See supra* at Section II.A.. Charging one fee for transit of the vehicle from a different region to the customer's region, and a second fee for delivery of the vehicle from a local Carvana location to the customer's home, would be entirely permissible, rather than unfair or deceptive.

Because neither Plaintiffs' alleged facts nor any reasonable inferences that could be drawn therefrom would, if proven, establish that Carvana improperly double-charged for certain items in the RISC, the Court should dismiss the UTPCPL claim founded on those allegations with prejudice.

### 3. The RISC's disclosure of fees paid to public officials is permitted by Pennsylvania law.

Plaintiffs also allege, on behalf of a Transit Charge Subclass, that Carvana violated the UTPCPL by "[f]ailing to itemize amounts paid to public officials" on the RISC "in violation of the CCC." *See* Compl. ¶ 118(i); *see also* ¶ 88 (defining Subclass as members "whose RISCs included fees for registration, title, license plate and lien filing that were included in the aggregate as one single charge and/or in the line item 'Paid to Public Officials'"). But Plaintiffs misstate the CCC's requirements with respect to itemization. A line entry for amounts "paid to public officials" is *already* sufficiently itemized under the CCC, such that no further detail regarding subcomponents of that amount are required by law.

The CCC's baseline requirement under Section 6222(5) is that certain items be disclosed clearly and conspicuously, "with each component of each subparagraph [i.e., of Section 6222(5)]

12

listed separately[.]" 12 Pa. C.S. § 6222(5). That clause is necessary because Section 6222(5) itself is divided into subparagraphs (i) through (ix), and many of *those* subparagraphs are divided into various components (e.g., the purchase price must include separate listings for "taxes" under (A), "charges for delivery" under (B), and so forth).

But the CCC does not specifically list amounts paid to public officials as either a subcategory or a component of a subcategory. Instead, amounts paid to public officials are chargeable as "[o]ther charges necessary or incidental to the sale or financal of a motor vehicle (A) which the seller contracts to retain, receive *or pay on behalf of the buyer*; or (B) for which the seller agrees to extend credit to the buyer as authorized by this chapter[.]" *Id.* § 6222(5)(v) (emphasis added). Because Section 6222(5) requires itemization only for "each component of each subparagraph," no further itemization for charges under Section 6222(5)(v) are required.

Further, courts have rejected the contention that such itemization is required under analogous federal law. *See Harper v. Lindsey Chevrolet Oldsmobile, LLC*, 212 F. Supp. 2d 582, 589 n.23 (E.D. Va. 2002) ("The $ 40.50 fee was not itemized on the RISC plaintiff received, but [the Truth in Lending Act] does not require that it be itemized. It merely requires that $ 40.50 was actually paid to 'public officials,' in this case the Virginia DMV."). The fact that federal law *permits* disclosure in the format at issue significantly undermines Plaintiffs' contention that failure to itemize the disclosure of amounts paid to public officials is inherently deceptive or harmful.

Because Plaintiffs have not stated a claim that Carvana unfairly or deceptively failed to itemize amounts paid to public officials under the CCC, Count II on behalf of the Transit Charge Subclass should be dismissed.

13

### B. Plaintiffs fail to plead an ascertainable loss.

To establish a cause of action under the UTPCPL, a plaintiff must "demonstrate (1) ascertainable loss of money or property, real or personal, (2) as the result of the defendant's prohibited conduct under the statute." *Stone v. JPMorgan Chase Bank, N.A.*, 415 F. Supp. 3d 628, 633 (E.D. Pa. 2019); *see also* 73 Pa. C.S. § 201-9.2(a). To allege an ascertainable loss, "[a] plaintiff must be able to point to money or property that he would have had but for the defendant's fraudulent actions." *Benner v. Bank of America, N.A.*, 917 F. Supp. 2d 338, 360 (E.D. Pa. 2013).

Plaintiffs allege that they suffered an "ascertainable loss of money including but not limited to . . . payment of delivery charges and/or Transit charges and other charges paid to public officials that CARVANA unlawfully charged and collected[.]" Compl. ¶ 119. But as set forth *supra* at Section IV.A, Carvana did not unlawfully charge or collect *any* delivery fees on the Jennings RISC, and it charged and collected only lawful and properly disclosed transit charges and amounts paid to public officials. Consequently, because Plaintiffs have failed to set forth an ascertainable loss stemming from the alleged UTPCPL violations set forth on behalf of the Transit Charge Class and Subclass, Count II on behalf of the Transit Charge Class and Subclass should be dismissed.

### C. The UTPCPL claim in Count II on behalf of the Transit Charge Class and Subclass should be dismissed with prejudice.

This Court may dismiss a complaint with prejudice when granting leave to amend would be futile or inequitable. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008). "The decision to dismiss a complaint [] with prejudice[] is within the district court's discretion." *See Beale v. Experian Info. Sols., Inc.*, No. CV 22-4810, 2023 U.S. Dist. LEXIS 229382, 2023

14

WL 8936342, at *1 (E.D. Pa. Dec. 27, 2023) (citing *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984)).

Here, further amendment as to Count Two would be both futile and inequitable. First, the key document underlying Plaintiffs' claim—the RISC—itself demonstrates that the total cash price of the vehicle was accurately stated; all relevant charges, including delivery charges, transit charges, and amounts paid to public officials, were clearly and conspicuously disclosed and adequately itemized; and no fees were "hidden" *or* double-charged. Thus, because "there is no basis to believe further amendment would result in a different outcome," Count Two should be dismissed with prejudice. *Maillis v. Geico Cas. Co.*, No. 2:23-cv-01747, 2024 WL 3293352, at *5 (W.D. Pa. July 3, 2024).

Further, the Amended Consolidated Class Action Complaint already amounts to Plaintiffs' fifth pleading in this matter (inclusive of the original Complaint, the Amended Complaint, the original *Harvin* Complaint, and the Amended *Harvin* Complaint) dating back to November 2021. It would be inequitable to require Defendants to continue responding to new pleadings in a matter that has been pending for nearly three and a half years, particularly where Plaintiffs waited to add the instant claim until November 2024, notwithstanding that the evidence allegedly supporting it—Plaintiff Jennings' RISC—has been available to them the entire time. Under these circumstances, the claim at issue should be dismissed with prejudice.

## V.     CONCLUSION

A "reasonable reading of the complaint" reveals that with respect to Count II on behalf of the Transit Charge Class and Subclass, Plaintiffs have failed to set forth well-pleaded facts that state a "plausible claim for relief." *Salyers v. A.J. Blosenski, Inc.*, 731 F. Supp. 3d 670, 683 (E.D. Pa. 2024). The total cash price of the vehicle was accurately stated; all relevant charges, including delivery charges, transit charges, and amounts paid to public officials, were clearly and

conspicuously disclosed and adequately itemized; and no fees were "hidden" or double-charged. Moreover, Plaintiffs have not plausibly pleaded an ascertainable loss resulting from such fees. As such, Plaintiffs' claim should be dismissed with prejudice.

Respectfully submitted,

Dated: April 2, 2025

*/s/ Thomas F. Burke*
Daniel JT McKenna (PA ID 93930)
Thomas F. Burke (PA 320311)
Katherine L. Oaks (PA ID 321500)
**BALLARD SPAHR LLP**
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
Telephone: 215.864.8500
Facsimile: 215.864.8999
mckennad@ballardspahr.com
burket@ballardspahr.com
oaksk@ballardspahr.com

*Counsel for Carvana, LLC*