IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JENNINGS, et al. | : |
|     Plaintiffs, | : |
| v. | : CIVIL ACTION NO. 5:21-CV-05400 |
| CARVANA, LLC, | : |
|     Defendant. | : |
| HARVIN, et al. | : |
|     Plaintiffs, | : |
| v. | : CIVIL ACTION NO. 2:23-CV-02068 |
| CARVANA, LLC, et al., | : |
|     Defendants. | : |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR PROTECTIVE ORDER

Daniel JT McKenna (PA ID 93930)
Thomas F. Burke (PA ID 320311)
Katherine L. Oaks (PA ID 321500)
**BALLARD SPAHR LLP**
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Phone: (215) 665-8500
Facsimile: (215) 864-8999
mckennad@ballardspahr.com
burket@ballardspahr.com
oaksk@ballardspahr.com

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................. 1

LEGAL STANDARD............................................................................................................ 2

FACTS AND PROCEDURAL HISTORY ........................................................................... 4

ARGUMENT......................................................................................................................... 6

I.    Discovery concerning Carvana's sale of vehicles to non-Pennsylvania residents is irrelevant and disproportional to the needs of the case because the putative classes are limited to Pennsylvania residents....................................................................... 6

II.    Discovery concerning Carvana's sale of vehicles to Pennsylvania residents after November 7, 2022 is irrelevant and disproportional to the needs of the case because all claims relating to those sales are subject to arbitration.................................................. 9

CONCLUSION.................................................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Bayer AG v. Betachem, Inc.*,
  173 F.3d 188 (3d Cir. 1999)..................................................................................................2

*Burns v. SeaWorld Parks & Enter., Inc.*,
  2023 WL 11884592 (E.D. Pa. Nov. 4, 2023) .........................................................................3

*Contour Data Solutions LLC v. Gridforce Energy Management LLC*,
  2022 WL 3907530 (E.D. Pa. July 25, 2022)..........................................................................3

*Gridley v. State Farm Mut. Auto. Ins. Co.*,
  2007 WL 9810994 (E.D. La. Apr. 11, 2007).........................................................................7

*Hay Grp., Inc. v. E.B.S. Acquisition Corp.*,
  360 F.3d 404 (3d Cir. 2004)..................................................................................................8

*Heller v. HRB Tax Grp.*,
  287 F.R.D. 483 (E.D. Mo. 2012) ..........................................................................................7

*Jennings v. Carvana*,
  2024 WL 1209746 (3d Cir. Mar. 21, 2024).........................................................................10

*In re Novartis and Par Antitrust Litigation*,
  2019 WL 5722055 (E.D. Pa. Nov. 5, 2019) ....................................................................4, 11

*Pansy v. Borough of Stroudsburg*,
  12 F.3d 772 (3d Cir. 1994)....................................................................................................3

*Petroleum Marketing Group, Inc. v. Universal Property Services, Inc.*,
  2022 WL 20656112 (E.D.Pa. Dec. 5, 2022)...............................................................2, 4, 9, 11

*Price v. County of Salem*,
  2024 WL 1006263 (D.N.J. Mar. 8, 2024).............................................................................3

*Ramos v. Walmart, Inc.*,
  2023 WL 2327208 (D.N.J. Mar. 2, 2023).............................................................................3

*Rios v. Cabrera*,
  2010 WL 5111411 (M.D. Pa. Dec. 9, 2010).........................................................................7

*Staff4Jobs, LLC v. List Logistics, LLC*,
  2020 WL 13580942 (D.N.J. Oct. 19, 2020).....................................................................9, 10

**Federal Statutes**

Federal Arbitration Act, 9 U.S.C. § 7 ...........................................................................................9

**State Statutes**

12 Pa. C.S. § 6221(a)(2).................................................................................................................10

75 Pa. C.S. § 1103.1........................................................................................................................8

625 ILCS 5/3-402(C) ......................................................................................................................8

Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §
    201-1 ...............................................................................................................................7, 8, 11

**Rules**

Fed. R. Civ. P. 26................................................................................................... *passim*

Fed. R. Civ. P. 45............................................................................................................................5

Fed. R. Evid. 401 ..........................................................................................................................11

Local Rule 26.1(f)...........................................................................................................................1

Plaintiffs in this Pennsylvania-based putative class action have served a host of nonparty subpoenas seeking voluminous information and documents regarding the sale of vehicles by Defendant Carvana, LLC to (1) individuals whom Plaintiffs agree are not putative class members because they reside outside Pennsylvania, and (2) Pennsylvania residents whose claims are subject to mandatory individual arbitration because the sale occurred after Carvana's implementation of a retail installment sales contract (RISC) containing an arbitration clause on November 8, 2022. *See* Ex. A. The documents and information requested regarding these non-class members is irrelevant and not proportional to the needs of this case. As a result, pursuant to Federal Rule of Civil Procedure 26, Carvana and Defendant Bridgecrest Credit Company LLC (Bridgecrest), by and through their undersigned counsel, submit this memorandum of law in support of their motion for a protective order barring Plaintiffs from seeking the information at issue.

Counsel certifies pursuant to Local Rule 26.1(f) that the parties, after reasonable effort, including two meet-and-confer sessions and related emails and discussions, are unable to resolve these disputes.

## INTRODUCTION

This case involves allegations that Carvana delayed in applying for certificate of title and permanent registration in connection with financed vehicle sales *to Pennsylvania residents* during a class period beginning November 5, 2019. Earlier in this litigation, Carvana successfully moved to compel two non-Pennsylvanians to arbitrate their claims based on a valid, enforceable arbitration clause—and Plaintiffs dropped their national class claims on that basis and filed an amended complaint raising claims on behalf of Pennsylvania residents only. Further, on November 8, 2022, for financed transactions in Pennsylvania, Carvana began using a standard RISC containing an arbitration clause. That clause satisfies Pennsylvania's *sui generis* "one-document rule"—meaning that any Pennsylvania resident's claims relating to vehicles sales on or after November 8, 2022

1

(unlike the claims from November 2019 through November 7, 2022) would be subject to individual arbitration.

Notwithstanding those clearly defined parameters—i.e., a proposed Pennsylvania-only class relating to vehicle sales between November 2019 and November 2022—Plaintiffs have served eight nonparty subpoenas seeking, among other things, transactional data and other documents concerning Carvana's vehicle sales *beyond* those parameters: in other states, and after November 8, 2022.[1] That discovery is irrelevant and disproportional to the needs of the case, and its production will prejudice Defendants by opening the door to a host of needless evidentiary disputes for the duration of this litigation. This Court should issue a protective order to limit Plaintiffs' subpoenas and set reasonable geographic and temporal boundaries as the parties proceed with discovery.

## LEGAL STANDARD

Rule 26(b)(1) permits discovery "regarding any non-privileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). "Importantly, discovery is not limitless and may be circumscribed by the Court within the Court's discretion." *Petroleum Mktg. Grp., Inc. v. Universal Property Services, Inc.*, 2022 WL 20656112 at *2 (D.N.J. Dec. 5, 2022) (citing *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999)). Consequently, "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is

---

[1] As detailed herein, relevant subpoena recipients include the Pennsylvania Department of Transportation (PennDOT); the Michigan Department of State; the Maryland Department of Transportation, Motor Vehicle Administration; the Illinois Office of the Secretary of State; the Florida Department of Highway Safety and Motor Vehicles; the Texas Office of the Attorney General (on behalf of the Texas Department of Motor Vehicles); and Vitu, Inc., a Carvana vendor located in California.

pending[.]" Fed. R. Civ. P. 26(c)(1). "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense…." *Id.*

Federal Rule of Civil Procedure 26(c), which governs protective orders, "grants nonproducing parties standing to move for a protective order." *Contour Data Sol. LLC v. Gridforce Energy Mgmt. LLC*, 2022 WL 3907530, at *2 (E.D. Pa. July 25, 2022). "Good cause" for a protective order exists when the moving party demonstrates that disclosure would create a clearly defined and serious injury. *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994). As part of that analysis, "the Court may, in its discretion, examine the discoverability of the subpoenaed information with respect to its relevance, breadth and proportionality, and any concerns regarding privacy or confidentiality, under the Rule 26 rubric." *Ramos v. Walmart, Inc.*, 2023 WL 2327208, n. 3 (D.N.J. Mar. 2, 2023) (construing motion to quash as motion for protective order, and limiting nonparty subpoenas based on relevance).

"[T]he relevance of the subpoenaed discovery is an important factor in deciding a motion for a protective order." *Price v. Cnty. of Salem*, 2024 WL 1006263, at *4 (D.N.J. Mar. 8, 2024) (collecting cases). "[The] party seeking discovery bears the initial burden of demonstrating the requested discovery is relevant to its claim or defense." *Contour Data Solutions*, 2022 WL 3907530, at *2. If the discovery is sought from a nonparty, a "stronger showing of relevance" is required. *Burns v. SeaWorld Parks & Enter., Inc*., 2023 WL 11884592, at *2 (E.D. Pa. Nov. 4, 2023) (internal citation omitted).

Among other limitations, a court may determine the relevance of information sought via a nonparty subpoena based on the geographic connection between the evidence sought and the plaintiffs' allegations. *See Price*, 2024 WL 1006263, at *6 (granting protective order as to nonparty subpoena seeking "evidence of how a correctional facility in a different county…, addressing a

3

different prison population is run."). The court may also take into account the temporal connection between the evidence sought and the plaintiff's claims. *See Petroleum Marketing Group*, 2022 WL 20656112, at *4 (limiting the relevant time period of a third-party subpoena because the requests were too broad in proportion to the needs of the case); *In re Novartis and Par Antitrust Litigation*, 2019 WL 5722055, at *9 (E.D. Pa. Nov. 5, 2019) (limiting the relevant time period of a nonparty subpoena based on burden to the producing party).

## FACTS AND PROCEDURAL HISTORY

In August 2024, while Defendants' motion to compel arbitration of two non-Pennsylvania plaintiffs was pending, Plaintiffs served nonparty subpoenas on seven state attorneys general and departments of motor vehicles. *See generally* ECF 77 (Joint Letter to Court). Those subpoenas sought, among other things, all consumer complaints about Carvana or Bridgecrest relating to delays in processing title and registration in the various jurisdictions in which subpoenas were served; Defendants' responses to related inquiries; related fines or penalties; and all records that would show certain metrics relating to submission of title and registration paperwork for hundreds of thousands of Carvana customers in those states. Importantly for these purposes, the subpoenas sought information running through the present, and six of the seven subpoenas were directed to state authorities outside Pennsylvania.

In a September 2024 pre-conference submission, Defendants observed that their motion to compel arbitration was pivotal as to the scope of this action because, if granted, it would not only limit putative class membership, but also narrow the scope of discovery and moot the six subpoenas directed outside Pennsylvania. *Id.* at 2. Shortly thereafter, this Court granted the motion and stayed the case as to the two non-Pennsylvania plaintiffs. *See* ECF 80. Plaintiffs then voluntarily withdrew the subpoenas at issue and filed an amended complaint that abandoned their putative national classes and brought claims on behalf of Pennsylvania residents only. *See* ECF 87, at ¶ 88.

4

On March 19, 2025, Plaintiffs served a new subpoena on PennDOT, and on April 3, 2025, Plaintiffs served new nonparty subpoenas to five of the previous six non-Pennsylvania subpoena recipients (excluding North Carolina).[2] *See generally* Ex. G (the PennDOT subpoena); Ex. B to Ex. F (the State Subpoenas). Defendants noted their objections to the State Subpoenas, and the parties endeavored, with partial success, to meet and confer on scope as to the PennDOT subpoena.[3] The return dates for all of these subpoenas have been extended on consent pending resolution of Defendants' objections.

On April 25, 2025, Plaintiffs served nonparty subpoenas for documents and testimony on Vitu, Inc., a vendor based in California engaged by Carvana to submit title and registration in jurisdictions across the country. *See generally* Ex. H – Ex. J (the Vitu Subpoenas).[4] The Vitu Subpoenas seek, in relevant part, documents and data similar to those demanded in the State Subpoenas—i.e., documents concerning Carvana vehicle sales outside of Pennsylvania and after November 8, 2022. *See, e.g.*, Ex. I, Request 7, seeking, without limitation, "All records in your possession and control . . . which would provide Delayed Title and Registration Metrics."

In their responses to Carvana's written discovery (served before non-Pennsylvania claims were abandoned), Plaintiffs have acknowledged that events outside Pennsylvania are irrelevant to this case. When Carvana sought information via interrogatory regarding a discrete set of specific

---

[2]   The North Carolina Division of Motor Vehicles made an initial, limited production on August 29, 2024 after not being informed that the subpoenas were being held in abeyance pending objections.

[3]   Among other things, Plaintiffs agreed to limit the production from PennDOT to de-identified material. Further, Defendants agreed to waive any issues regarding service under Rule 45, and Plaintiffs agreed to waive any timeliness objection to the instant motion.

[4]   Plaintiffs served an amended documents subpoena on May 9.

5

individuals who reside outside Pennsylvania and were identified by Plaintiffs as having information relevant to this action, Plaintiffs responded: "Plaintiff is not seeking a national class and therefore objects to these requests to the extent it seeks information that is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence." *See* Ex. K (Plaintiff Furlong's Responses and Objections to Carvana's First Set of Interrogatories), at Interrogatory 21.

These nonparty subpoenas are inextricably related to another procedural development: in the months since this Court granted Carvana's motion to compel arbitration, the same attorneys who represent Plaintiffs in this action have filed over 50 individual arbitrations, on behalf of non-Pennsylvania residents (or Pennsylvania customers after November 8, 2022), raising claims against Carvana and Bridgecrest that track those advanced in this litigation. Those claimants have an interest in the irrelevant discovery sought here, but would not ordinarily have access to third-party discovery in arbitration. As a result, the discovery at issue poses a serious risk of being used for an improper purpose—to circumvent the limitations on discovery in arbitration—and should also be prohibited under Rule 26(c) for that reason.

## ARGUMENT

**I.     Discovery concerning Carvana's sale of vehicles to non-Pennsylvania residents is irrelevant and disproportional to the needs of the case because the putative classes are limited to Pennsylvania residents.**

Following this Court's order granting Carvana's motion to compel arbitration, Plaintiffs conceded the broad impact of that holding and redefined their putative classes to Pennsylvania residents only. *See* ECF 87, at ¶ 88. Notwithstanding that limited class definition, however, Plaintiffs again improperly seek discovery from DMVs across the country—and from Vitu, one of Carvana's national vendors—regarding Carvana's sale of vehicles to hundreds of thousands of individuals who have no connection to this litigation. That discovery is facially irrelevant to Plaintiffs'

6

claims and disproportional to the needs of the case, and this Court should issue a protective order precluding Plaintiffs from seeking it.

At the outset, courts have precluded nationwide discovery in circumstances like these, where plaintiffs' claims are fundamentally state-specific. *See, e.g.*, *Heller v. HRB Tax Grp.*, 287 F.R.D. 483, 486 (E.D. Mo. 2012) (denying nationwide discovery because complaint contained "no factual allegations to substantiate Plaintiff's claims to be national in scope and to justify nationwide discovery"); *Gridley v. State Farm Mut. Auto. Ins. Co.*, 2007 WL 9810994, at *3 (E.D. La. Apr. 11, 2007) ("This Court is not persuaded that the nationwide discovery sought is reasonably related to the class certification issues presented by the putative Louisiana class. As aforestated, plaintiff seeks only to certify a Louisiana class and thus discovery must be delimited accordingly."). The same rationale applies here, where Plaintiffs have affirmatively limited their putative classes to Pennsylvania residents, and have cited that limitation to narrow their own discovery obligations.

Plaintiffs argue that based on their claim under the Pennsylvania Unfair Trade Practices and Consumer Protection Law (73 P.S. § 201-1, *hereinafter* "UTPCPL"), they are entitled to discovery relating to Carvana's conduct *outside* Pennsylvania as evidence of a "pattern and practice" of delayed title and registration *inside* Pennsylvania. *See* ECF 77, at 2. But liability under the UTPCPL can be predicated only on in-state conduct—not only expressly by class definition (as it is defined here), but as a matter of law. *See, e.g., Rios v. Cabrera*, 2010 WL 5111411, at *3 (M.D. Pa. Dec. 9, 2010) ("Ms. Rios, as a New York consumer, cannot invoke Pennsylvania consumer protection statutes regarding conduct occurring outside Pennsylvania."). Consumer complaints or state investigations *outside* Pennsylvania therefore are irrelevant to demonstrating a "pattern or practice" in connection with Plaintiffs' UTPCPL claims.

7

Moreover, any attempted comparison between Carvana's title and registration activity in other jurisdictions is likely to require highly tangential and inefficient discovery detours into state regulatory regimes that have nothing to do with this case. The various non-Pennsylvania states from which Plaintiffs seek discovery impose obligations and compliance periods different than Pennsylvania's relating to a dealer's submission of title and registration paperwork. *Compare, e.g.*, 625 ILCS 5/3-402(C) (requiring application for registration no more than 45 days after the purchase of a vehicle) *with* 75 Pa. C.S. § 1103.1 (requiring application for title and registration within 20 days of sale, subject to 10-day grace period). As such, there is no meaningful connection between activities in those states and Carvana's title and registration activity in Pennsylvania. If the discovery at issue is produced, Carvana would be materially prejudiced by the likely need to litigate the dissimilarities between its operations in Pennsylvania and those elsewhere.

The proposed discovery is also not proportional to the needs of the case. Plaintiffs intend to use it to establish a "pattern or practice" under the UTPCPL, but the case already implicates tens of thousands of vehicle sales within Pennsylvania over a three-year period—far more than enough to establish Carvana's patterns or practices during the time, without resort to additional evidence having no connection to the putative class. The burden associated with this discovery on the many nonparties who will be forced to respond to it, too, is highly disproportional to any marginal utility of that evidence. And as noted *supra*, Plaintiffs' own discovery responses emphasize their agreement that this is no longer a putative national class action and that discovery relating to individuals outside Pennsylvania is irrelevant to the case. This Court should hold Plaintiffs to their objection.

The proposed out-of-state discovery is noteworthy for another reason: although it is not useful to Plaintiffs here, Plaintiffs' counsel may seek to offer, or otherwise use, it in parallel individual arbitrations outside Pennsylvania where it would be otherwise difficult to develop. *See* 9 U.S.C. § 7 (prohibiting prehearing nonparty discovery); *Hay Grp., Inc. v. E.B.S. Acquisition Corp.*, 360 F.3d 404, 411 (3d Cir. 2004) (holding Federal Arbitration Act does not authorize arbitrator to issue pre-hearing discovery subpoenas to nonparties). This Court should not permit Plaintiffs' counsel to use discovery in this case for the improper purpose of developing evidence for use in arbitration.

In sum, Defendants seek a protective order requiring that Plaintiffs withdraw all non-PA State Subpoenas in their entirety (because those subpoenas seek discovery concerning only non-Pennsylvania residents), and withdrawal of the Vitu Subpoena insofar as it seeks discovery relating to non-Pennsylvania residents.

**II.    Discovery concerning Carvana's sale of vehicles to Pennsylvania residents after November 7, 2022 is irrelevant and disproportional to the needs of the case because all claims relating to those sales are subject to arbitration.**

The district court may, in its discretion, issue a protective order limiting the relevant time period of discovery where "discovery of such . . . information . . . is not proportional to the needs of the case and would result in the production of information irrelevant to [a party's] claim." *Petroleum Marketing Group,* 2022 WL 20656112, at *4. That includes where the information sought is not temporally relevant to the claims or defenses of the party seeking the discovery. *See Staff4Jobs, LLC v. List Logistics, LLC*, 2020 WL 13580942, at *4 (D.N.J. Oct. 19, 2020) (granting motion for protective order as to documents that predated plaintiff's claims).

Here, many of the requests in the subpoenas at issue seek information regarding vehicle sales after November 7, 2022. For example, item 1 of each State Subpoena requests "[a]ll consumer complaints about Carvana or Bridgecrest regarding delays in the processing of titles and

9

registrations for vehicles sold or financed by Carvana or Bridgecrest from January 1, 2018, *to the present* that you have received." (emphasis added).[5] *See* Ex. B to Ex. F. Item 5 of each State Subpoena requests "[a]ll records in your possession and control from November 5, 2019, *to the present* which relate to Carvana's collection of title and registration fees on behalf of your state from consumers who purchased vehicles in your state, but those fees and sums were either [never or untimely transmitted by Carvana]." *Id.* Further, several requests—such as numbers 3, 4, 5, 6, 8, and 12 of the PennDOT subpoena—are not constrained by *any* time period. *See* Ex. G.

This action is currently proceeding in litigation, and not individual arbitrations, because prior to November 8, 2022, Carvana's Pennsylvania RISC and arbitration agreement, although signed simultaneously by vehicle buyers, were contained in separate documents. Carvana initially moved to compel arbitration of Plaintiff Jennings' claim, which the District Court denied on the basis of Pennsylvania's "one-document rule," and which the Third Circuit subsequently affirmed. *See Jennings v. Carvana*, 2024 WL 1209746, at *1 (3d Cir. Mar. 21, 2024); 12 Pa. C.S. § 6221(a)(2).

While that dispute was pending, on November 8, 2022, Carvana implemented a new RISC that included an arbitration clause in a single document for Carvana-financed vehicle sales to Pennsylvania residents. *See* Declaration of Bryan Iams, at ¶ 4, and Ex. A (exemplar RISC). The new RISC was used in connection with all Carvana-financed vehicle sales by Carvana in Pennsylvania from November 8, 2022 through the present. *See id.* at ¶ 4. That document, by combining the RISC and the arbitration clause in the same form, resolves the sole issue that, as determined by the Third Circuit, precluded enforcement of the arbitration agreement signed by the named Plaintiffs in this

---

[5] For this and all other requests, Plaintiffs have agreed to a revised beginning date of November 5, 2019, which tracks their class definitions.

10

action. Thus, the claims of any person who bought a vehicle from Carvana in Pennsylvania from November 8, 2022 to the present—like all individuals who bought a vehicle from Carvana outside Pennsylvania—would be subject to arbitration.[6]

Plaintiffs contend that even if such claims would be subject to arbitration, events surrounding those sales might be relevant for the same reason they believe out-of-Pennsylvania sales are relevant, i.e., to establish a pattern or practice under the UTPCPL. That argument fails for the same reasons set forth above. Any information regarding vehicle sales that post-date November 8, 2022 do not tend to "make a fact [of consequence] more or less probable that it would be without the evidence." Fed. R. Evid. 401.

Further, the discovery is highly disproportional to the needs of the case given that, as above, any relevant practices can be identified based on Carvana's volume of vehicle sales within the three-year period between November 2019 and November 2022. *See Petroleum Marketing Group*, 2022 WL 20656122, at *4 (limiting relevant time period of nonparty subpoena). There is no marginal value in the production of information relating to the sale of tens or hundreds of thousands of vehicles (depending on whether the scope is Pennsylvania-specific or national) postdating the sales that are genuinely at issue in this matter. *See In re Novartis and Par Antitrust Litigation*, 2019 WL 5722055, at *9 (E.D. Pa. Nov. 5, 2019) (limiting the relevant time period of nonparty subpoena as "too broad and unduly burdensome").

Because any information relating to vehicle sales that occurred after November 7, 2022 has no relevance to any claim and would be disproportional to the needs of the case, this Court should

---

[6] A motion to compel arbitration of any such individuals' claims would be premature given that no such individuals are currently before this Court (unlike out-of-state former Plaintiffs Riedel and Thorne, as to whom Defendants successfully moved to compel arbitration). All current named Plaintiffs are Pennsylvania residents whose vehicle sales occurred before November 8, 2022.

11

issue a protective order limiting discovery to vehicle sales that occurred between November 5, 2019 and November 7, 2022.

## CONCLUSION

Because the subpoenas at issue seek discovery that is highly overbroad both geographically and temporally, and is irrelevant and disproportional to the needs of the case, Defendants respectfully ask that the Court grant the motion and issue an appropriate protective order.

| | |
|---|---|
| Date: May 22, 2025 | */s/ Thomas F. Burke* |
| | Daniel JT McKenna (PA ID 93930) |
| | Thomas F. Burke (PA ID 320311) |
| | Katherine L. Oaks (PA ID 321500) |
| | **BALLARD SPAHR LLP** |
| | 1735 Market Street, 51st Floor |
| | Philadelphia, PA 19103 |
| | Phone: (215) 665-8500 |
| | Facsimile: (215) 864-8999 |
| | mckennad@ballardspahr.com |
| | burket@ballardspahr.com |
| | oaksk@ballardspahr.com |
| | |
| | *Counsel for Defendants* |