**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DANA JENNINGS, JOSEPH A. FURLONG, on their individual behalf and on behalf of other similarly situated persons, | |
| Plaintiffs, | |
| v. | C.A. No.: 5:21-cv-05400 |
| CARVANA, LLC | |
| Defendant. | |
| | **JURY TRIAL DEMANDED** |
| SYRETTA ANGELIQUE HARVIN, DAVID WEAVER, JR., on their individual behalf and on behalf of other similarly situated persons, | |
| Plaintiffs, | |
| v. | C.A. No.: 2:23-cv-02068 |
| CARVANA, LLC; BRIDGECREST CREDIT COMPANY, LLC, | |
| Defendants. | **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL** |

Pursuant to this Court's Order of October 21, 2025 staying this action, ECF 117,  Plaintiffs Dana Jennings, Joseph A. Furlong, Syretta Angelique Harvin, and David Weaver, Jr. ("Plaintiffs") by counsel, hereby submit this memorandum of law in support of their Motion to Compel.

## I.    INTRODUCTION

Throughout discovery in this matter thus far, Defendants Carvana, LLC ("Carvana") and Bridgecrest Credit Company, LLC ("Bridgecrest") have consistently objected to responding to Plaintiffs' written discovery requests, producing documents and answering deposition questions regarding several key subject matters that are the basis for this motion.  As described below, the requested discovery is relevant and proportional to both class certification and the merits of the claims, and clearly discoverable.  As such, Defendants' objections should be overruled, and they should be compelled to provide the information, documents and testimony requested.

## II.    PROCEDURAL HISTORY

### A.  Background

Plaintiffs filed their Amended Consolidated Class Action Complaint on November 7, 2024 ("ACCAC").[1]  ECF 87.  The ACCAC asserts claims for breach of contract, multiple violations of Pennsylvania's Unfair Trade Practice Consumer Protection Law, 73 P.S. §§201-2(4) ("UTPCPL"), restitution and unjust enrichment, and violation of the Federal Odometer Act, 49 U.S.C. §32701. *Id*.  Plaintiffs assert claims on behalf of: a) a Title Class in connection with Carvana's failure to

---

[1]  Plaintiffs Dana Jennings and Joseph Plaintiffs Dana Jennings and Joseph Furlong originally filed their original Complaint initiating this matter on November 5, 2021 in the Court of Common Pleas of Philadelphia.  ECF 1. Carvana removed the case to this Court on December 9, 2021.  *Id.* On January 13, 2022, Plaintiffs Jennings and Furlong filed an Amended Complaint.  ECF 8.  On January 28, 2022, Carvana filed a Motion to Compel Arbitration and Dismiss. ECF 18.  That motion was denied on September 30, 2025 because the Court found that Carvana's arbitration clause failed to comply with Pennsylvania's "single-document rule" requiring that all agreements between buyers and sellers must be found in the RISC and Carvana's was not.  ECF 36. Carvana appealed, and the case was stayed for sixteen months until the issuance of the Third Circuit's decision.  ECF 48; ECF 50.  The Third Circuit affirmed this Court's order finding Carvana's arbitration provision unenforceable under Pennsylvania law. *Jennings v. Carvana LLC*, 2024 WL 1209746 (3d Cir. Mar. 21, 2024).  After proceedings returned to this Court, the case was consolidated with the separately pending case brought by Plaintiffs David Weaver, Jr. and Syretta Harvin, No. 2:23-cv-02068 (E.D. Pa.), upon stipulation of the Parties as approved by the Court. ECF 72.

transfer and complete timely title and registration; b) a Repossession Class whose vehicles were repossessed after Carvana had not timely transferred title and/or registration; c) a Transit Charge Class in connection with Carvana's failure to provide clear and accurate disclosure of all charges imposed in connection with the use of a Retail Installment Sales Contract ("RISC") in a used car sale as required by Pennsylvania's Consumer Credit Code, 12 Pa. C.S. § 6201 et seq., ("CCC"); and; d) a Transit Charge Subclass for whom Carvana failed to properly itemize fees charged for registration, title, license plate and lien filing in violation of the CCC. *Id.* at ¶¶ 88, 106, 118(a)-(b).

Following a stay for an unsuccessful mediation in December of 2024, on March 5, 2025, the Court entered a scheduling order setting deadlines for Defendants' response to the ACCAC, fact discovery, expert discovery, and class certification briefing.  ECF 92.  Carvana filed a partial motion to dismiss the allegations supporting the Transit Charge Class and Subclass.  ECF 97.  That motion is fully briefed and awaiting decision.

### B. Discovery Efforts Leading to the Current Motion Practice

As described more fully in the contemporaneously filed Declaration of James A. Francis ("Francis Decl."),[2] the Joint Motion to Stay, ECF 113, and the briefing below, Plaintiffs have diligently pursued discovery related to the Rule 23 elements of class certification and the merits of her claims since March of 2025 when this case was returned to active litigation.  They have served multiple sets of written discovery, have taken the depositions of six Carvana employees in Arizona and served third-party discovery.  Francis Decl. at ¶¶ 2, 4, 7, 11, 12, 16-22, 24-25, 27-28. Carvana served objections and failed to respond to many of her written discovery requests as described below, and objected to numerous questions at depositions on the basis of attorney-client privilege with instructions to its witnesses not to answer questions (the "disputed discovery").  *Id.*

---

[2] References to Exhibits herein ("Ex.") refer to the exhibits attached to the Francis Decl.

at ¶¶ 14-15, 29-33, 42.

Making every effort to avoid burdening the Court with unnecessary discovery disputes, Plaintiffs' counsel participated in upwards of 10 lengthy video-conference meet and conferrals with Defendants' counsel to try to work through its objections. *Id.* at ¶¶ 3, 5, 9, 15, 23, 26, 31, 42. Plaintiffs' counsel revised and reworded discovery requests to be clearer and narrower, compromised on relevant time periods pending Carvana's motion for protective order at the time, and agreed to confidentiality and redactions, to no avail. *Id.* at ¶¶ 5-6, 15; *see also* Ex. 4; Ex. 10. Even then, Plaintiffs held off on motion practice, and sought to bypass the disputed discovery through the taking of Rule 30(b)(6) depositions. Defendants' counsel then communicated that they would not be producing any witnesses on the vast majority of the topics set forth in the 30(b)(6) notices, and would be filing the forthcoming motions for protective order to prevent Plaintiffs from taking the depositions. Francis Decl. at ¶¶ 19-23, 26-30.[3] As such, this motion is ripe.

### III.    FACTUAL BACKGROUND

#### A. <u>Carvana's National Problem With Title Delays and Registration Processing</u>

This case targets, among other things, Carvana's failure to timely and properly transfer title and registration ("TNR Delays" or "Problem") to a class of Pennsylvanians who purchased vehicles from it and paid it title and registration fees (the "Title Class". ECF 87 at pp. 1-2, ¶ 88. This class includes individuals like Plaintiff Dana Jennings, who purchased her vehicle through Carvana in a transaction completed on January 2, 2021, financed with a standard Pennsylvania RISC. Ex. 20. The vehicle was not registered with PennDOT at the time of sale, nor was title

---

[3]    In addition to the discovery matters described in the motion, at the time the Court granted the Parties' motion to vacate deadlines and stay this matter, the Parties were also in the process of discussing custodial ESI searches pursuant to the agreed ESI order (ECF 99) to address certain of Plaintiff's document requests. In light of the stay order, and because disposition of the present motion may inform the scope of such searches, the Parties have put those efforts on hold.

transferred into her name within thirty days as required under Pennsylvania law. Rather, Carvana repeatedly obtained temporary permits from other states (Arizona and Tennessee),[4] for nearly ten months, until Pennsylvania registration and title transfer were completed on November 19, 2021. Ex. 19.

1.      **Carvana's Business Model Results in National TNR Delays**

Carvana emerged onto the used car market in 2013 with a national e-commerce sales model allowing it to sell cars online and deliver them to consumers nationwide.[5] Its business model seeks to apply a uniform online car-buying experience to what has traditionally been, and remains, a state-by-state governed and specific in-person process. Specifically, across the nation, each state has its own laws, vehicle-titling and registration requirements and processes.[6] Not long after its introduction into the used-car market, flaws with the application of Carvana's "one-size fits all" approach emerged all over the country, with various states suspending it and/or imposing other sanctions related specifically to its repeated failure to timely transfer title and complete vehicle registration including the following:

- Between June 2021 and July 2022, the Maryland Motor Vehicle Administration imposed on Carvana 386 late title fee infractions totaling $17,121 in fines on 10% of cars Carvana sold in the state during that timeframe.[7]
- On May 10, 2022, the Illinois Secretary of State suspended Carvana's sales license due to mishandling of paperwork related to its vehicle sales, including the misuse of issuing out-of-state temporary registration permits and for failing to transfer titles.[8]

---

[4] Surprisingly, it appears that Carvana's practices for obtaining these "temporary operating permits" or "TOPs" from other states included Carvana personnel calling state officials and impersonating consumers in order to get further TOPs issued. *See* Ex. 9, Deposition of Andrew Sterbenz ("Sterbenz Dep.") at 124:19-23, 126:20-127:20; Ex. 21 (Deposition Exhibit 10 containing script for personnel to use stating "Hi, my name is [insert customer's name here]. I just purchased a vehicle from an out-of-state dealership and my temporary operating plate is about to expire…").

[5] *See* https://www.carvana.com/buying-a-car-online-how-it-works (last accessed Oct. 30, 2025); https://investors.carvana.com/news-releases/2023/02-21-2023-140106315 (last accessed Oct. 30, 2025).

[6] *See id.* at "How does registration work?"

[7] *See https://www.wmar2news.com/matterformallory/maryland-joins-other-states-in-fining-carvana-for-title-delays* (last accessed Oct. 30, 2025).

[8] *See* https://www.repairerdrivennews.com/2023/01/26/illinois-reaches-settlement-agreement-with-carvana-operations-allowed-to-continue/#:~:text=Illinois%20began%20investigating%20Carvana's%20practices,by%20the%20state's%20vehicle%20code (last accessed Oct. 30, 2025).

- In October 2022, Michigan Department of State suspended the license of a Carvana dealership for "imminent harm to the public" and for untimely delivery of titles.[9]
- In August 2021, the North Carolina Department of Motor Vehicles suspended Carvana's dealers license in Raleigh for, among other violations, failing to deliver titles to the DMV and issuing out-of-state temporary tags to North Carolina purchasers.[10]
- In December 2021, the Florida Department of Highway Safety and Motor Vehicles sent an email to Carvana stating its concern with Carvana's apparent inability to apply for title within 30 days of the sale for hundreds of Carvana vehicles.[11]

**2. PennDOT's Suspension of Carvana's Titling and Registration Operations and Carvana's Response**

In late 2022, the Pennsylvania Department of Transportation ("PennDOT") suspended Carvana's license at its Ridgeville and Philadelphia dealer locations for its untimely and deficient processing of title and registration related to sales of vehicles to Pennsylvania residents.  Ex. 23. The Notices of Suspension specifically identified over 40 individuals with title and registration defects causing completion delays. *Id.*

Redacted

Redacted

Redacted

Redacted

---

[9] *See* https://www.freep.com/story/money/cars/2022/10/10/state-suspends-carvana-car-dealer-license/69552472007/ (last accessed Oct. 30, 2025).

[10] *See* https://abc11.com/post/carvana-wake-county-suspended-car-vending-machine/10943046/ (last accessed Oct. 30, 2025)

[11] *See* https://www.wfla.com/news/florida-files-new-complaints-against-carvana-over-title-delays/ (last accessed Oct. 30, 2025).

Redacted

**B.** Redacted

Redacted

Redacted

Redacted

Redacted

Redacted

Redacted

Redacted

7

Redacted

## IV.   LEGAL STANDARD

Discovery allows the parties to obtain "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Federal Rule of Civil Procedure 26 "vests the trial judge with broad discretion to tailor discovery[.]" *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998). The scope of discovery is "unquestionably broad." *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999). "[W]here a party receives evasive or incomplete answers to a discovery request, they are permitted to bring

8

a motion to compel disclosure" under Fed. R. Civ. P. 37. *In re Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2006 WL 1479819, at *2 (E.D. Pa. May 26, 2006). "The party resisting disclosure bears the burden of persuasion." *Id.* The resisting party "must show specifically" how the information requested "is not relevant or how each question is overly broad, burdensome or oppressive." *Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982).

## V.    ARGUMENT

Through this motion, Plaintiffs seek targeted class certification and merits discovery that is relevant to the claims asserted in the ACCAC. Each of the requests for which Plaintiffs seek to compel production is set forth in detail in chart format at Exhibit 26.[12] The information and documents are within Defendants' possession, discoverable on multiple grounds and critical to identifying the members and sizes of the Title Class, the Repossession Class, the Transit Charge Class, and the Transit Charge Subclass. ECF 87 at ¶ 88.

Each of Carvana's objections to producing this material fails to hold water. Much as Carvana protests that its records do not mean what they say on their face, it is clear that Carvana maintains several types of objective records which bear on whether Carvana timely transferred title and completed registration in connection with finances vehicle sales to Pennsylvania consumers, and whether the associated RISC properly disclosed the transit and other charges imposed. In addition, Carvana's largely unsupported and blanket burden objections entirely fail to demonstrate that production of the requested material exceeds the scope of permissible discovery, particularly because Plaintiffs have offered to shoulder the cost and burden associated with reviewing the underlying records. Because the requested material provides objective evidence of class membership, bears on the merits of Plaintiffs' claims, or both, the material is discoverable

---

[12] Plaintiffs are prepared to submit a version of the chart to chambers in native Excel format upon request.

and must be produced.

### A. Carvana's Objections to Discovery Beyond November 2022 Should Be Overruled for the Same Reason that the Court Denied its Motion for Protective Order

As the Court is aware from briefing on Carvana's Motion for Protective Order relating to the subpoena that Plaintiffs served on PennDOT (ECF 104), Carvana has asserted that November 7, 2022 is the end of the relevant time for discovery in this case, because that is when it changed its form RISC used in Pennsylvania to include a mandatory arbitration clause. *See* ECF 104-1 at pp. 1-2, 10-11. In addition to asserting the November of 2022 limitation on the scope of the PennDot subpoena, Carvana has asserted the same objection to many of Plaintiffs' written discovery requests, and instructed its witnesses to limit their deposition testimony to that time period. *See* Francis Decl. at ¶ 33. In addition to the fact that Carvana has failed to demonstrate that its arbitration clause is enforceable and failed to assert any specific undue burden in providing discovery beyond November of 2022, the Court should overrule Carvana's objections to Plaintiffs' written discovery and deposition questions for the same reason it denied its motion for protective order (ECF 116), and order responses thereto.[13]

### B. Carvana's Objections Regarding the Necessity of a Manual Review Should be Overruled on Multiple Grounds

Carvana has asserted objections to numerous written discovery requests of Plaintiffs on the grounds of burden that the information or document requested would require it to conduct a "manual review" of its records. *See* Francis Decl. at ¶ 32. These objections are unsupported, baseless, improper and should be overruled.[14]

---

[13] *See* ECF 116 (finding that data from after November 2022 remains relevant to identifying Carvana's practices, and the issues of "liability, intent, or continuing conduct.")

[14] When asserting burden associated with producing requested material longstanding precedent requires the party resisting discovery to "show specifically" how a discovery request is unduly burdensome. *Josephs v. Harris Corp.,* 677 F.2d 985, 992 (3d Cir.1982); *Northern v. City of Philadelphia*, 2000 WL 355526, at *2 (E.D. Pa. Apr. 4, 2000) (party opposing discovery on basis of undue burden must present "evidence revealing the nature of the burden"); *Corradi v. New Jersey State Parole Bd.,* 2019 WL 1795545, at *2 (D.N.J. Apr. 24, 2019) (party opposing discovery

First, putting aside the ironic assertion of burden from a company that publicly represents itself as a sophisticated technology company whose business is "driven by data" and "leading-edge technology," all of the information and records that Plaintiffs seek as forth below (e.g. RISCS, CBD/NCBD data, hold rate data, title and registration documents, customer complaints) are electronically stored and electronically retrievable through automated "bulk reports and bulk redactions." *See* Ex. 22, Oct. 30, 2025 Declaration of Jonathan Jaffe ("Jaffe Decl.") at ¶ 22. *See also id.* at fns. 10, 32 (specifically addressing objections regarding manual extraction).[15] Carvana's assertion that manual review will be required in order to derive relevant information from Carvana's recordkeeping systems, including those storing RISCs, ignores the availability of computerized review, including document management software which makes the extraction and review of even a large volume of documents easily feasible. *See id.* at ¶¶ 19, 21, 22. This is particularly true with respect to highly standardized documents like RISCs, where the relevant information is in clearly-defined fields that are labeled and appear in the same place on each document. Ex. 20.

Second, even if some manual review is needed, that is an insufficient basis to refuse to produce available records in a class action. As the Third Circuit has found, the need to conduct manual review of records retained by a defendant to determine whether objective class membership criteria are met is not a barrier to certification, much less discovery related to class certification. *Kelly v. RealPage, Inc.*, 47 F.4th 202, 222-26 (3d Cir. 2022). Furthermore, Plaintiffs have offered to undertake the necessary review themselves, undercutting Carvana's assertions of burden.

---

has the burden to provide factual support for its objections, including detailing monetary or labor costs; "mere statement by a party" that request is burdensome is insufficient).

[15] Jonathan Jaffe is a data scientist who specializes in analyzing data sets of structured and unstructured data in the litigation context. Ex. 22, Jaffe Decl. at ¶¶ 1-8 and Ex. A thereto.

11

### C.  Carvana Should be Compelled to Provide The Following Discovery

1.  **Plaintiffs' Interrogatories 1 and 2 (1st Set) and 1, 3, and 4 (2d Set), and Plaintiffs' Requests for Production 29 (1st Set) and 49 (2d Set)**

Throughout this litigation, Plaintiffs have consistently sought information relevant to the size of the Title Class (i.e. those who experienced TNR delays greater than 30 days), the magnitude of Carvana's TNR problem, described *supra* at section II.A., and the identity of those individuals falling within the Title Class and/or who otherwise experienced TNR delays. *See* Ex. 2 (Interrogatories ("INTs") 1st Set) #1-2; Ex. 12 (INTs 2d Set) #1, 3, 4; Ex. 1, Requests for Production of Documents ("RPDs" 1st Set) at # 29; Ex. 3, RPDs 2d Set at # 49. These requests are directly relevant to the Rule 23 issues of numerosity, commonality, ascertainability and identifiability, as well as the merits of Plaintiffs' claims (e.g. severity and extent of the TNR problem, Carvana's notice, efforts to resolve it, and continuing conduct).  Notwithstanding the exhaustive efforts of Plaintiffs' counsel to confer on multiple occasions, compromise and refine the requests,[16] Defendants have consistently objected to and refused to provide any responsive information, likely as a calculated effort to prevent Plaintiffs from obtaining class certification. Francis Decl. at ¶ 42.

Each of these discovery requests can and should be responded to without objection.  As for the numerosity interrogatories,[17] Carvana possesses data responsive to each.  Redacted

---

[16] Plaintiffs have repeatedly narrowed and altered the scope of their discovery requests to address Carvana's objections and in an attempt to reach agreement, to no avail. Redacted

Ex. 4 at p. 4.  Plaintiffs' counsel even asked Carvana's counsel if there was any numerosity information that Carvana was willing to provide short of Plaintiffs' requests, and the answer was no.  Francis Decl. at ¶ 15.

[17] See Ex. 2 (INTs 1st Set) at #1 Redacted

Redacted

As for Plaintiffs' RPD #29 (1st Set) and RPD #49 (2d Set) (*see* Ex. 3), the identification and records of Title class members, Redacted

13

Redacted

Moreover, even if there were any ambiguity regarding the testimony of Carvana's witnesses as to TNR Delay data it possesses and can retrieve, Plaintiffs' data science expert who reviewed their testimony, and who has significant experience with most of the systems and data at issue, Redacted

Redacted

Redacted *Id.* at 29:25-31:15; Ex. 22, Jaffe Decl. at ¶¶ 20-24.

If Carvana continues to insist that it is unable to derive answers to these interrogatories, Plaintiffs submit that Carvana should be compelled produce all RISCs associated with Pennsylvania sales during the relevant time-period, and the underlying transactional data associated with those transactions, and Plaintiffs' data science expert will use them to derive requested information.  Ex. 9, Sterbenz Dep. at 46:10-47:18, 80:17-23; Ex. 15, Firman Dep. at 38:9-40:19, 46:12-19, 48:1-49:8; Ex. 22, Jaffe Decl. at ¶¶ 23-24.[18]

2. Redacted

In addition, Carvana should be compelled to produce the data in its possession which documents the volume, frequency and rate of title and registration not being completed in a timely manner, along with magnitude of Carvana's TNR problem, specifically:

Redacted

---

[18] This material is responsive to Plaintiffs' RPD 4th Set # 3 (Ex. 13) and RPDs 2d Set # 37 (Ex. 3).

14

# Redacted

Redacted

Redacted

Because they identify individuals for whom, like Plaintiff Jennings, Carvana encountered problems in delivering timely certificate of title. Redacted

### 4. All Data Points Referenced in the Hoffman Letter

Plaintiffs further move to compel production of all data points referred to in the Hoffman Letter. Redacted

Redacted

Redacted

Carvana's assertions of privilege are baseless, manifestly unfair, prejudicial and should be overruled.

The attorney-client privilege protects communications from a client to an attorney, "for the purpose of securing primarily either (i) an opinion of law, (ii) legal services, or (iii) assistance in some legal proceeding, and (d) not for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client." *Rhone–Poulenc Rorer Inc. v.*

*Home Indem. Co.*, 32 F.3d 851, 862 (3d Cir. 1994); *In re Grand Jury Investigation,* 599 F.2d 1224, 1233 (3d Cir. 1979). The privilege is narrowly construed and the party asserting the privilege "has the burden of demonstrating that the privilege exists and each of the criteria . . . is satisfied." *See Barr Marine Products Co. v. Borg-Warner Corp.,* 84 F.R.D. 631, 636, (E.D. Pa. 1979); *Westinghouse Elec. Corp. v. Republic of Phil.,* 951 F.2d 1414 (3d Cir. 1991).

Defendants' assertion of privilege is wrong for several reasons. First, Plaintiffs are not seeking communications between counsel and Carvana employees, which is an essential element to establishing privilege. Instead, it is the non-privileged facts ▮Redacted▮ ▮▮[19] Second, even if any "communications" were at issue,▮Redacted▮ ▮▮*Sullivan v. Warminster Twp*., 274 F.R.D. 147, 150 (E.D. Pa. 2011) (quoting *Westinghouse*, 951 F.2d at 1427).

Third, as a simple matter of fairness and equity, Carvana should not be permitted to use the data sought in the Hoffman Letter as a sword and a shield, ▮Redacted▮ ▮▮ ▮▮The Court should compel production of all data points referenced in Exhibit 25.

### 5. RISCs Identifying Members of the Transit Charge Class And The Existence And Scope of Carvana's Continuing Conduct

Finally, Plaintiffs request that the Court order Carvana to produce the RISCs underlying transactions related to Pennsylvania consumers which will show membership in the Transit Charge Class and subclass.  For purposes of identifying the number of individuals meeting the definitions

---

[19] *See Rhone-Poulenc Rorer,* 32 F.3d at 862 ("the protection of the privilege extends only to *communications* and not facts") (emphasis in the original); *Celmer v. Marriot Corp.,* No. CIV.A. 03-CV-5229, 2004 WL 1822763, at *2 (E.D. Pa. July 15, 2004) (privilege should not be invoked to protect facts).

of the Transit Charge Class and Subclass, Plaintiffs served several interrogatories on Carvana seeking to identify the number of individuals meeting the criteria set forth in the class definitions. Ex. 2 (INTs 1st Set) at #6-10. Redacted

Redacted Plaintiffs therefore requested that Carvana simply produce all of the RISCs associated with sales by Carvana to Pennsylvania residents within the relevant time period, to permit Plaintiffs to review them to identify information bearing on class membership included therein. Carvana declined, and continues to refuse to provide detailed responses to Plaintiff's interrogatories.

Redacted

Redacted Each of these arguments fails for the reasons discussed above at pp. 10-12. In light of the Court's ruling on the Motion for Protective Order (ECF 116) holding that information regarding Pennsylvania transactions is discoverable where it bears on the existence of continuing conduct, Plaintiffs submit that production of RISCs covering the full time period is warranted because this material bears on the existence of continuing conduct with respect to Carvana's failure to properly itemize and disclose the fees imposed.

---

[20]    They are also responsive to Plaintiff's RPDs (1st Set) at # 29.  Ex. 1.

Redacted

Both of these objections fail. Redacted

*Josephs,* 677 F.2d at 992; *Northern,* 2000 WL 355526, at \*2; *Corradi,* 2019 WL 1795545, at \*2. Redacted

production of 100,000 documents in electronic format is hardly a challenge in this era of sophisticated computer databases and digital document productions, particularly given Carvana's own representations about its sophisticated technology. *See* Ex. 22, Jaffe Decl. at ¶¶ 17-24. *See also* Ex. 16, Deposition of Brian Iams ("Iams Dep.") at 22:13-23:5.

Redacted

Ex. 5 at p. 3. Regardless of any other information Carvana may wish to present, the faces of the RISCs themselves include key information relevant to identifying class members here – the format in which transit charges and amounts paid to public officials were disclosed to consumers. In the face of Carvana's refusal to derive specific answers based on the available objective information on the face of the RISCs, and Plaintiffs' willingness to conduct this objective review themselves, Carvana's objection fails to hold water.

As Plaintiffs have made clear, the RISCs themselves provide evidence regarding whether a delivery price has been included in the total cash price of the vehicle – Plaintiffs' assertion is that vehicle prices ending in $____90.00 already included a transit charge, making any transit charge included duplicative and potentially improperly disclosed depending on the other contents of the RISC. *See* ECF 102 at pp. 1-2, 10-11. While other evidence not on the face of the RISC may also be relevant on this point, the contents of the RISC including the purchase price of the vehicle are also relevant evidence to identifying purchasers who were charged twice. Carvana may identify and produce other information related to these transactions in order to present facts relevant to its defenses in this case if it wishes to, but Plaintiffs here seek only the RISCs themselves.

Redacted

. Ex. 5 at p. 3. Redacted

Second, concerns regarding consumer PII or the use of the RISCs outside this litigation can easily be addressed by a "Confidential" designation under the protective order in this matter, ECF 99, which would limit the use of the information contained therein to the prosecution of this lawsuit, and imposes specific duties on recipients of the information to safeguard it. To the extent any RISCs would be filed with the Court, they would be filed under seal and/or redacted pursuant to L.R. 5.1.3.

## VI.    CONCLUSION

Plaintiffs therefore respectfully request that the Court enter an order compelling Defendants to produce the material described herein within ten (10) days.

Dated: October 31, 2025

DANA JENNINGS, JOSEPH FURLONG, SYRETTA ANGELIQUE HARVIN, and DAVID WEAVER, JR.,

*By their attorneys*

**FRANCIS MAILMAN SOUMILAS, P.C.**

By:   */s/ James A. Francis*
James A. Francis
Lauren KW Brennan
Maria Del Pilar Castillo
1600 Market Street, Suite 2510
Philadelphia, PA 19103
T: (215) 735-8600
F: (215) 940-8000
jfrancis@consumerlawfirm.com
lbrennan@consumerlawfirm.com
pcastillo@consumerlawfirm.com

ROBERT P. COCCO, P.C.
Robert P. Cocco
Pa. Id. No. 61907
1500 Walnut Street, Suite 900
Philadelphia, PA 19102
215-351-0200
bob.cocco@phillyconsumerlaw.com

Robert W. Murphy, Esq.
VSB No. 96230, *admitted pro hac vice*
440 Premier Circle, Suite 240
Charlottesville, VA 22901
Phone: (434) 328-3100
rwmurphy@lawfirmmurphy.com